UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

STANLEY E. JALOWIEC,                    )        CASE NO. 1:03 CV 0645
                                        )
            Petitioner,                 )
                                        )        JUDGE DONALD C. NUGENT
                                        )
        vs.                             )
                                        )
                                        )
MARGARET BRADSHAW, Warden,              )        MEMORANDUM OF OPINION
                                        )              AND ORDER
            Respondent.                 )

        This matter is before the Court upon Petitioner, Stanley E. Jalowiec's ("Jalowiec" or

"Petitioner") Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed with

this Court on November 21, 2005. (ECF 108).  Jalowiec challenges his conviction and death

sentence imposed by the Court of Common Pleas of Lorain County, Ohio.  In addition to the

Amended Petition, the Court has before it Respondent Margaret Bradshaw's ("Bradshaw" or

"Respondent"), Amended Return of Writ (ECF 110), Jalowiec's Traverse, (ECF 187) and the

Respondent's Sur-reply. (ECF 190).  Thus, the matter is fully briefed and ready for disposition.

## FACTUAL BACKGROUND

        On March 8, 1995, the Grand Jury of Lorain County, Ohio indicted Jalowiec for the

aggravated murder of Ronald Lally in violation of R.C. § 2903.01(A), alleging that he had caused

Lally's death purposely and with prior calculation and design.  Included in the indictment were

specifications of aggravating circumstances pursuant to R.C. § 2929.04(A)(8), asserting that Lally

was a witness to a criminal offense and that he was killed, either to prevent his testimony in a

criminal proceeding, or in retaliation for his testifying in a criminal proceeding.  The specifications

further provided that Jalowiec had a firearm during the commission of the offense.

The following facts were set forth by the Ohio Supreme Court in *State v. Jalowiec*, 91 Ohio St.3d 220 (2001):

> On the morning of January 19, 1994, a partially clad male body was found in Woodland Cemetery in Cleveland. Two weeks later, the body was identified as that of Ronald Lally of Elyria. Over a year later, the grand jury indicted defendant-appellant, Stanley E. Jalowiec, for aggravated murder, with firearm and death-penalty specifications. The indictment alleged that Jalowiec purposely killed Lally to prevent him from testifying in criminal proceedings, which had been scheduled to begin on January 19, 1994. Subsequently, a jury found Jalowiec guilty as charged, and he was sentenced to death.
>
> In June 1993, Ron Lally contacted the Elyria police to volunteer as a police informant. Lally signed an agreement to become a confidential informant for the Elyria police and agreed to make controlled drug buys. On June 7, 1993, with the assistance of Officer Scott Ashley and Detective Alan Leiby, Lally made a controlled drug buy of crack cocaine from Danny Smith and his father Raymond Smith while wired with a hidden monitoring device. As a result of the controlled buy, police arrested both Raymond Smith and Danny Smith in August 1993 and charged them with aggravated drug trafficking. Both cases were eventually set for trial on January 19, 1994.
>
> On January 18, 1994, the evening before the murder, Brian Howington and Jalowiec went to several bars in downtown Elyria. (Howington knew Jalowiec because Jalowiec used to visit Howington's aunt, Joann Corrine Fike, when Howington lived with her.) Jalowiec then asked Howington to accompany him to a friend's house on Middle Avenue. There, Howington met Ron Lally and his roommate, and the four of them smoked crack cocaine. Around 11:30 p.m., Jalowiec, Howington, and Lally went to Fike's house and "[s]hot pool, partied some more." About an hour later, Jalowiec got a page and asked Howington if he could borrow Fike's car, a Chrysler LeBaron convertible. Though Howington was hesitant, he relented after Jalowiec persisted. Around 1:00 a.m., Jalowiec and Lally left Fike's house in the LeBaron. The next time Howington saw the car was around 5:00 a.m. when Jalowiec and Raymond Smith returned it to Fike's apartment. At that time, the car was covered with ice, and Jalowiec and Smith told Howington that the car had been washed. Fike testified that Jalowiec told her that he had washed the car because there was blood on it as a result of a fight he had had with someone at Mom's Open Kitchen.
>
> Sharon Hopkins testified that she was at Razzle's bar in Elyria one night in January 1994 with her brother, Terry Hopkins, Raymond Smith, Danny Smith, Michael Smith (another son of Raymond), and several others, including Jalowiec. The group stayed at Razzle's until it closed and then, without Jalowiec, went to eat at Mom's Open Kitchen until around 2:45-3:00 a.m.
>
> After leaving Mom's, Sharon Hopkins rode in Danny Smith's car with several people including Raymond, Danny, and Michael Smith. They traveled on Middle Avenue past the railroad tracks just outside the Elyria city limits and dropped Raymond and

2

Michael Smith off by a wooded area. They drove back over the tracks and pulled into a parking lot. Approximately five to ten minutes later, a convertible drove over the tracks to where they had dropped off Raymond and Michael Smith. Danny Smith said, "That is it." Several minutes later, the convertible drove by again heading toward town, and Danny Smith's car began to follow it. Shortly thereafter, Danny Smith signaled the convertible to pull over and ducked down in the front passenger seat while telling Sharon Hopkins to get out and ask the people in the convertible whether they had picked up Michael Smith. Sharon Hopkins saw Jalowiec get out of the driver's seat of the convertible. Jalowiec responded that Michael Smith was in the car. Although Sharon Hopkins could not see the other occupants, she could tell that there were four people inside the convertible. Danny Smith then drove Sharon Hopkins home.

Later that morning, at around 3:30-4:00 a.m., Danny Smith arrived back at his apartment. Terry Hopkins arrived a little later and noticed that Danny Smith was "nervous and said he was feeling sick to his stomach." Danny Smith told Hopkins that "they had done it, they did it." Hopkins then went back to his sister's apartment across the street from Danny Smith's apartment. Later, Hopkins visited Danny Smith again and also saw Jalowiec, Raymond Smith, and Michael Smith. Jalowiec said, "They stomped him and ran him over with a car." The others there indicated that "they shot him and cut him." According to Hopkins, they were "[k]ind of like bragging about it." Danny Smith told Hopkins they wanted this person killed because he had worn "a wire on him on a drug sale." At approximately 9:55 a.m. on January 19, 1994, Cleveland homicide detective Michael Beaman was summoned to Woodland Cemetery. A male body had been found on a cemetery roadway. Some of the victim's clothing was nearby in a snow bank. There was no identification on or near the victim and police did not learn the identity of the victim, Lally, until a few weeks later.

Dr. Heather Raaf, a forensic pathologist with the Cuyahoga County Coroner's Office, performed the autopsy on Lally. Dr. Raaf testified that teeth in Lally's mouth had been knocked out by a gunshot. Dr. Raaf estimated that Lally had sustained at least eleven blows to his head and that his injuries were consistent with being stomped or struck by a vehicle several times. Dr. Raaf determined that Lally's death resulted from a gunshot wound to the head and multiple blunt impacts to the head.

The drug trafficking cases against Danny and Raymond Smith were subsequently dismissed because Lally, the primary witness in both cases, was dead.

After an extensive police investigation, the grand jury indicted Jalowiec on March 8, 1995, for aggravated murder with a firearms specification. In addition, a death-penalty specification alleged that Jalowiec purposely killed Lally in order to prevent his testimony as a witness in a criminal proceeding.

At trial, the key witness for the prosecution was Michael Smith, son of Raymond Smith and brother of Danny Smith. Michael Smith contacted Detective Leiby in April 1994 because he was bothered about having witnessed the Lally murder. During Raymond Smith's murder trial, Michael Smith had been unavailable to testify, and the prosecution proffered testimony from him that had been elicited in

a deposition. *State v. Smith* (2000), 87 Ohio St.3d 424, 428, 721 N.E.2d 93, 102. However, at Jalowiec's trial, Michael Smith testified as a prosecution witness.

Michael Smith testified that, purely by chance, he had met his father and brother at Mom's Open Kitchen around 2:30 a.m. on the night of the murder. Raymond Smith had made a phone call and indicated to Michael Smith that he was going to leave. Michael agreed to go with his father and left with him and his brother, Danny Smith. The Smiths and Danny Smith's girlfriend got in Danny Smith's car and both Raymond and Michael Smith were dropped off on Middle Avenue. Raymond and Michael waited outside in the cold, even though Michael had no idea what they were waiting for. The LeBaron driven by Jalowiec with Lally as a passenger pulled up to them and stopped. Raymond Smith told Lally to get in the back seat, and Michael Smith got in the back seat on the driver's side. Raymond Smith sat in the passenger side front seat and made introductions.

Shortly thereafter, Raymond Smith brandished a gun and told Lally, "Don't make any sudden moves." The group stopped to buy gas, beer, and cigarettes, then drove on Route 2 toward Cleveland. Raymond Smith asked Lally, "Why did you set my son up?" Lally denied doing so, but appeared to be scared. Smith then told Lally, "We are going to give you some money, get you a bus ticket, you are going to get out of town."

During the trip into Cleveland, all four men were smoking crack cocaine. Lally agreed to leave town, and they drove to East Cleveland to buy some crack for Lally's trip. However, they saw police cars and fire trucks in the neighborhood and decided to drive back towards downtown Cleveland. As they drove, Raymond Smith directed Jalowiec to pull the LeBaron into a Cleveland cemetery.

Inside the cemetery, Raymond Smith got out of the car, put the gun to Lally's face, and ordered him out of the car. He then told Lally, "You will never snitch on nobody again." Michael Smith heard a gunshot and then heard Lally exclaim: "You shot me in my head, you shot me in my head." Raymond then told Michael and Jalowiec to get out and assist him. Jalowiec got out of the car, but Michael remained inside the car and did not look out. He heard "thumps like hitting" and heard Lally plead, "I won't tell nobody, please don't kill me, please don't kill me."

Michael Smith testified that after about two to five minutes of quiet, he could tell that the trunk had been opened and that his father and Jalowiec were trying to put something in the trunk. He heard someone say, "He ain't going to fit, * * * he is too stiff," then he heard something drop. Then Raymond Smith and Jalowiec got back in the car, and Jalowiec started the car and put it in reverse. According to Michael Smith, when Lally's body stopped the car from going any further, Jalowiec drove forward a short distance and then put the car into reverse. Michael Smith could feel the car hit something. Jalowiec did this three times and then drove out of the cemetery. As they drove from the cemetery, Raymond Smith began arguing with Michael Smith: "This is for your brother, why didn't you get out and help?" While driving back to Elyria, Raymond took his gun apart and threw it out the window, piece by piece. Upon arriving in Elyria, they dropped Michael Smith off at Danny Smith's apartment. Linda Luke, a forensic serologist in the coroner's office,

4

conducted tests on stains found on the trunk liner of the Chrysler LeBaron. Luke testified that the DNA in Lally's blood sample was consistent with the blood found on the trunk liner.

After deliberation, the jury found Jalowiec guilty as charged. At the mitigation hearing, Jalowiec made an unsworn statement. Other witnesses also testified on Jalowiec's behalf, including his former live-in girlfriend and several family members, including both of his parents. The prosecution presented seven witnesses in rebuttal. The jury recommended death, and the court sentenced Jalowiec to death.

*State v. Jalowiec*, 91 Ohio St.3d at 220-25.

## PROCEDURAL HISTORY

Petitioner has been unsuccessful in his efforts to have his convictions and death sentence overturned in the Ohio courts.  In order to obtain the proper understanding of this case, an outline of the procedural history in the Ohio courts follows.

Jalowiec was indicted by a Lorain County Grand Jury for the Aggravated Murder of Ronald Lally on March 8, 1995.  Two specifications of aggravating circumstances pursuant to R.C. § 2929.04(A)(8) were included:  (1) that Lally was a witness to a criminal offense, and that he was killed, either to prevent his testimony in a criminal proceeding, or in retaliation for his testifying in a criminal proceeding; and (2) that Jalowiec had a firearm during the commission of the offense.

On March 20, 1995, Jalowiec's court appointed attorneys, Joseph C. Grunda and Edward Cleary, waived his rights to discovery, a bill of particulars and a speedy trial. Apx. I-A, pg. 23.

On June 1, 1995, the State moved to take the deposition of Michael Smith, the eldest son of Raymond and a brother of Danny Smith, two individuals involved in Lally's murder. Apx. Vol. I-A, pg. 128.  After an oral hearing on the Motion, wherein the Motion was granted, the deposition was conducted on June 16, 1995.  Apx. Vol. I-A, pg. 138.

On March 6, 1996, Jalowiec's counsel moved to disqualify Judge Glavis.  Apx. Vol. I-B, pgs. 99-102.  The trial judge denied the Motion on March 7, 1996, as did the Ohio Supreme Court on March 11, 1996.  Apx. Vol. I-B, pgs. 103-05.

On March 11, 1996, the State moved to quash a subpoena to testify issued to Judge Glavis. Apx. Vol. I-B, pgs. 111-12.  After an oral hearing held the same day, the judge quashed the subpoena, finding that Jalowiec failed to demonstrate that such testimony was reasonably relevant to the issue at trial.  Apx. Vol. I-B, pg. 115.

The jury trial began on March 12, 1996.  Tr. Vol. I, pg. 3.  On March 20, 1996, Jalowiec was found guilty of murder and the two specifications.  Tr. Vol. II, pgs. 1013-14.

On April 10, 1996, following a penalty phase trial, the jury found that the aggravated circumstances outweighed the mitigating factors presented by Jalowiec beyond a reasonable doubt and returned a verdict recommending that Jalowiec receive the death penalty.  Tr. Vol III, pg. 345. The court accepted the recommendation and sentenced Jalowiec to death, entering its opinion on April 29, 1996.  Apx. Vol I-B, pgs. 280-85.

## DIRECT APPEAL

On May 24, 1996, Jalowiec's appellate attorneys, Kreig Brusnahan and Patricia Smith, filed a Notice of Appeal to the Ohio Court of Appeals, Ninth Appellate District.  Jalowiec raised the following assignments of error:

### First Assignment of Error
The trial court abused its discretion by dismissing for cause prospective jurors who could fairly consider the possibility of death and failing to dismiss for cause a juror for death whose views in favor of the death penalty precluded fair consideration of life options.
### Second Assignment of Error
The trial court erred by failing to grant appellant's motion for judgment of acquittal under Ohio Rule of Criminal Procedure 29, in that the evidence presented by the

6

State of Ohio was insufficient to sustain a conviction for the offense of aggravated murder, in violation of appellant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

### Third Assignment of Error

The allowance of testimony as to out-of-court statements attributed to Danny Smith [sic ] over defense counsels' objection was prejudicial error and deprived appellant of his rights under the Fifth, Sixth, Eighth and Fourteenth amendments [sic] to the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

### Fourth Assignment of Error

The trial court deprived appellant of his right to a fair trial by improperly admonishing, criticizing and/or correcting defense counsel in front of the jury, depriving appellant of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution.

### Fifth Assignment of Error

The prosecutor improperly commented on the appellant's Fifth Amendment protections.

### Sixth Assignment of Error

The trial court erred by allowing the state to adduce evidence of non-statutory aggravating factors during the sentencing phase of trial.

### Seventh Assignment of Error

Where the court provides the jury with inaccurate trial phase instructions, a defendant is deprived of his protections under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

### Eighth Assignment of Error

The gruesome coroner's photographs are unfairly prejudicial where they are solely used to inflame the passion of the jury.

### Ninth Assignment of Error

Prosecutorial misconduct deprived the appellant a [sic] fair penalty determination phase of his capital trial.

### Tenth Assignment of Error

The trial court's erroneous penalty phase instructions deprived the appellant of a fair and reliable determination of his sentence in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10 and 16 of the Ohio Constitution.

### Eleventh Assignment of Error

The failure of trial counsel to make proper objections, constitutes ineffective assistance of counsel.

### Twelfth Assignment of Error

The argument to the jury that their decision is a mere recommendation is unacceptable as it diminishes the responsibility of the jury.

### Thirteenth Assignment of Error

Imposition of the death sentence violates the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I, of the Ohio Constitution.

On April 15, 1998, the Ninth District Court of Appeals affirmed Jalowiec's conviction and sentence. *State v. Jalowiec*, 1998 WL 178554 (Ohio App. 9th Dist. Apr. 15, 1998).

New counsel, Patricia Milhoff and Nathan Ray, were appointed to represent Jalowiec on his direct appeal as of right to the Ohio Supreme Court on April 24, 1998. Apx. Vol. II, pg. 426. A Notice of Appeal was filed on June 1, 1998. Apx. Vol. III, pg. 3. Thirteen propositions of law were presented to the Ohio Supreme Court. Those propositions of law are as follows:

Proposition of Law I

Appellant Jalowiec's Sixth, Eighth and Fourteenth Amendment rights as guaranteed by U.S. CONST. were violated by the admission at trial of a co-defendant's confession inculpating the defendant.

Proposition of Law II

Appellant Jalowiec was denied his Fifth, Sixth, Eighth and Fourteenth Amendment rights as guaranteed by the U.S. Constitution by the admission of statements of a co-conspirator which did not meet the requirements of 801(D)(2)(e) of the Ohio Rules of Evidence.

Proposition of Law III

U.S. CONST., Amendments Five, Six, Eight, and Fourteen and Article I, Sections 10 and 16 of the OHIO CONST. require that a court grant a motion for judgment of acquittal when the evidence is insufficient to sustain a conviction.

Proposition of Law IV

Jurors viewing a defendant in shackles is a violation of the U.S. CONST., 14th Amendments [sic] and Article I, Section 10 of the OHIO CONST.

Proposition of Law V

The ineffective assistance of counsel provided to Appellant violated his rights to a fair and impartial jury trial and sentence, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. CONST. and the OHIO CONST.

Proposition of Law VI

The 6th and 14th Amend. to the U.S. CONST. and Sections 10 and 16 of the OHIO CONST. guarantee an accused a fair trial and an impartial jury. The improper exclusion for cause of potential jurors because of their views on the death penalty denied appellant Jalowiec these constitutional guarantees.

Proposition of Law VII

The death sentence in appellant Jalowiec's case is unreliable and inappropriate under the 8th and 14th Amend. to the U.S. CONST. and Sections 9, 10, and 16, Article I of the OHIO CONST. and R.C. 2929.05.

Proposition of Law VIII

The proportionality review that this court must conduct in the present capital case pursuant to R.C. 2929.05 is fatally flawed and, therefore, the present death sentence must be vacated pursuant to the 5th, 8th, and 14th Amend. to the U.S. CONST. and Sections 5 and 10, Article I of the OHIO CONST. and R.C. 2929.05.

Proposition of Law IX

Improper penalty phase jury instructions violate an individuals [sic] rights as guaranteed by the U.S. CONST. Amend. 5, 6, 8, and 14 and Ohio Const. Article I Section 10.

Proposition of Law X

Ohio's death penalty law, OHIO REV. CODE 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.04 and 2929.05 violate U.S. CONST. Amend. V, VI, VIII, and XIV and Article I, Sections 1, 2, 5, 9, 10 and 16.

Proposition of Law XI

Appellant Jalowiec was denied his 6th, 8th, and 14th Amendment rights as guaranteed by the U.S. CONST. and Sections 8 and 10, Article I of the OHIO CONST. to a fair trial, due process and a reliable determination of his guilt and sentence when gruesome, prejudicial and cumulative photographs were admitted into evidence even though their prejudicial effect outweighed their probative value.

Proposition of Law XII

To allow evidence of nonstatutory aggravating factors during the sentencing phase of appellant's trial violated his rights guaranteed by the U.S. CONST. Amend. 6, 8, and 14 and OHIO CONST. Article I, Section 10.

Proposition of Law XIII

The trial court's jury instruction in the fact-finding phase denied petitioner his rights to be free from cruel and unusual punishment, to a fair trial, to the effective assistance of counsel, to a fair and impartial jury and the due process of law under the Fifth, Sixth, Eighth and Fourteenth Amend. to the U.S. CONST. and Article I, Section 10 of the OHIO CONSTITUTION.

On April 4, 2001, the Ohio Supreme Court affirmed Jalowiec's conviction and sentence.

*State v. Jalowiec*, 91 Ohio St.3d 220 (2001).

**POST-CONVICTION RELIEF**

Attorney Patricia Smith filed a Petition for Post-conviction Relief pursuant to R.C. § 2953.21(A)(2) on March 17, 1997.  Apx. Vol. IV-A, pgs. 45-173.  On April 17, 1997, she filed an Amended Petition in the trial court.  Apx. Vol. IV-A, pgs. 181-317.  Then, on August 16, 1997, she

9

filed a Second Amended Petition.  Apx. Vol. IV-A, pgs. 323.  On March 30, 1998, Jalowiec filed

a *pro se* motion to strike counsel's Petition and Amendments and allow him to file a *pro se* Petition

for Post-conviction Relief.  Apx. Vol. IV-A, pgs. 362-79.  It appears that this Motion was never

ruled on, but Jalowiec did file Amended Petitions.

On February 22, 2000, a Third Amended Petition for Post-conviction Relief was filed *pro*

*se* in the trial court, Apx. Vol. IV-B, pgs. 1-256, and, on March 28, 2000, Jalowiec filed a Motion

for Discovery and Oral Hearing.  Apx. Vol IV-B, pgs 257-267.  His Third Amended Petition

contained the following fourteen assignments of error:[1]

First Assignment of Error
The trial court abused its discretion by dismissing for cause prospective jurors who
could fairly consider the possibility of death and failing to dismiss for cause a juror
whose death views in favor of the death penalty precluded fair consideration of his
options.

Second Assignment of Error
The trial court erred by failing to grant appellant's motion for judgment of acquittal
under Ohio Rules of Criminal Procedure 29, in that the evidence presented by the
State of Ohio was insufficient to sustain a conviction for the offense of aggravated
murder, in violation of the appellant's rights under the Fifth, Sixth, Eighth, and
Fourteenth Amendments to the United States Constitution and Article I, Sections 10
and 16 of the Ohio Constitution.

Third Assignment of Error
The allowance of testimony as to out-of-court statements attributed to Danny Smith
over defense counsel's objection was prejudicial error and deprived appellant of his
rights under the Sixth, Eighth, and Fourteenth Amendments to the United States
Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

Fourth Assignment of Error
The trial court deprived appellant of his right to a fair trial by improperly
admonishing, criticizing and/or correcting defense counsel in front of the jury,
depriving appellant of his rights under the Fifth, Sixth, Eighth, and Fourteenth
Amendments to the United States Constitution and Article I, Sections 10 and 16 of
the Ohio Constitution.

---

[1]  The assignments of error in the First, and First and Second Amended Petitions for Post-
conviction Relief contain the same assignments of error, except that the Third Amended Petition
includes an additional assignment of error, i.e., the fourteenth assignment of error.

### Fifth Assignment of Error

The prosecutor improperly commented on the appellant's Fifth Amendment protection.

### Sixth Assignment of Error

The trial court erred by allowing the state to adduce evidence of non-statutory aggravating factors during the sentencing phase of trial.

### Seventh Assignment of Error

Where the court provides the jury with inaccurate trial phase instructions, a defendant is deprived of his protections under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

### Eighth Assignment of Error

The gruesome coroner's photographs are unfairly prejudicial where they are solely used to inflame the passion of the jury.

### Ninth Assignment of Error

Prosecutorial misconduct deprived the appellant a fair penalty determination phase of his capital trial.

### Tenth Assignment of Error

The trial court's erroneous penalty phase instructions deprived the appellant of a fair and reliable determination of his sentence in violation of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

### Eleventh Assignment of Error

The failure of trial counsel to make proper objections, constitutes ineffective assistance of counsel.

### Twelfth Assignment of Error

The argument to the jury that their decision is a mere recommendation is unacceptable as it diminishes the responsibility of the jury.

### Thirteenth Assignment of Error

Imposition of the death sentence violates the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I, of the Ohio Constitution.

### Fourteenth Assignment of Error

The petitioner was denied the effective assistance of counsel in the trial or guilt-innocense [sic] stage as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

Apx. Vol IV-B, pgs. 5, 6, 36.  On April 12, 2001, the trial court dismissed Jalowiec's Petition

without a hearing and without permitting discovery.  It did so on the grounds that the Petition was

untimely filed, successive, and barred by the doctrine of *res judicata.*  Alternatively, the trial court

found that the claims were rebutted by the testimony at the trial and further were rejected by the

court of appeals when the court found sufficient evidence to sustain the conviction. *State v. Jalowiec*, Lorain County Common Pleas Court No. 95CR046840, journal entry (April 12, 2001). Apx Vol. IV-B, pgs. 282-85.

Jalowiec appealed the denial of his Third Amended Petition for Post-conviction Relief to the court of appeals on May 11, 2001. Apx. Vol. VII, pgs. 8-18. His attorney, Patricia Smith, filed a second Notice of Appeal on May 14, 2001. On July 2, 2001, her Motion to Withdraw as Counsel was granted. Apx Vol. VII, pg. 67. The appeals were consolidated on July 10, 2001. Jalowiec, representing himself, presented the following six assignments of error:

First Assignment of Error
The trial court erred in dismissing Appellant's post-conviction petition where petition presented sufficient operative facts, via evidence de hors the record, to merit an evidentiary hearing, thus violating his rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 1, 9, 10, 16, and 20 of the Ohio Constitution.

Second Assignment of Error
Ohio's post-conviction procedures do not afford an adequate corrective due process nor do they comply with due process or equal protection under the Fourteenth Amendment.

Third Assignment of Error
The trial court erred in failing to afford appellant the assistance of experts and discovery in violation of his rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 9, 10, 16 and 20 of the Ohio Constitution.

Fourth Assignment of Error
The trial court erred in issuing inadequate and erroneous findings of fact and conclusions of law in regard to Petitioner Jalowiec's Petition for Post-conviction Relief, thus violating his rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution; and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

Fifth Assignment of Error
The trial court erred in relying on O.R.C. § 2953.23 to deny appellant's Third Amended Petition for Post-conviction Relief in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

Sixth Assignment of Error

The cumulative errors evident in Appellant's substantive claims merits [sic] reversal or remand for a proper post-conviction process.

The court of appeals affirmed the trial court's decision on March 6, 2002.  Apx. Vol. VII, pg. 354-59. *State v. Jalowiec*, 2002 WL 358637 (Ohio App. 9th Dist. Mar. 6, 2002).

Jalowiec appealed this decision to the Ohio Supreme Court, but his case was not accepted for review.  *State v. Jalowiec,* 96 Ohio St.3d 1439 (2002).

On July 17, 2002, Jalowiec filed a *pro se* Second Petition for Post-conviction Relief (fourth amended) raising the following three claims:

First Claim for Relief
The Petitioner [sic] violated due process pursuant to constitutional standards of reliability for imposition of a death sentence under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Ohio Constitution by failing to disclose Mental Health records of Michael Smith documenting his lack of competency to testify and very serious impeachment evidence.

Second Claim for Relief
The failure of defense counsel to conduct an investigation into the background of Michael Smith, the State's key witness and to adequately represent the Petitioner at the guilt-innocense [sic] determination stage resulted in a sentence of death that does not comply with the minimum constitutional standards of reliability required under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

Third Claim for Relief
Ohio's post-conviction scheme, Ohio Rev. Code §§ 2953.21, *et seq*., fails to provide an adequate and effective process for reviewing constitutional challenges to a conviction or sentence, and because Ohio Rev. Code § 2953.32(A)(2) is facially unconstitutional as applied to Petitioner, Petitioner was deprived of his rights to due process, equal protection, the effective assistance of counsel, and to be free from cruel and unusual punishment by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

Apx.Vol. IX, pgs. 38 -71.  The trial court denied this Motion on August 15, 2002.  *State v. Jalowiec*, Lorain Common Pleas Court No. 95CR046840, journal entry (Aug. 15, 2002); Apx. Vol. IX, pgs. 263-67.

13

On September 6, 2002, Jalowiec filed a *pro se* Notice of Appeal from the trial court's denial

of his Second Petition for Post-conviction Relief, raising the following six assignments of error:

First Assignment of Error

The trial court erred in dismissing appellant's Second Post-conviction Petition filed pursuant to O.R.C. § 2935.23(A)(1)(a) & (2) where the petition meets the necessary prerequisites mandated by O.R.C. § 2935.23 in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Second Assignment of Error

A petitioner, in a second post-conviction petition proceeding is entitled to an evidentiary hearing and discovery when the second petition meets the necessary prerequisites pursuant to O.R.C. § 2953.23 and when the claims raise a constitutional violation which is supported by specific factual allegations not capable of determination from the original record.

Third Assignment of Error

Where a claim in a second post-conviction petition met the necessary requirements set forth in O.R.C. § 2953.23 and the post-conviction petition is supported by evidence dehors the record as well as evidence appearing in the record, the doctrine of res judicata does not apply.

Fourth Assignment of Error

The failure of the State to disclose exculpatory impeachment evidence regarding their key material witness, Michael Smith, is a violation of the United States Constitution and *Brady v. Maryland*, (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and renders the underlying conviction and sentence void or voidable.

Fifth Assignment of Error

A post-conviction petitioner is entitled to discovery, expert assistance and funds to retain such expert assistance when his second post-conviction petition meets the necessary requirements set forth in § 2953.23 and when the petition is supported by specific factual allegations not capable of determination from the original record and the claims raise a constitutional violation, the trial court violated petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Section 39, Article I of the Ohio Constitution.

Sixth Assignment of Error

Ohio's post-conviction procedures do not afford an adequate corrective process nor do they comply with due process or equal protection and § 2953.23 is facially unconstitutional as applied to appellant because it deprives him of due process, equal protection, and to be free from cruel and unusual punishment as guaranteed by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Apx. Vol. X, pg. 4, *State v. Jalowiec*, 2003 WL 21396681 (Ohio App. 9th Dist. Jun. 18, 2003).  The

court ruled that Jalowiec failed to meet the requirements of R.C, § 2953.21, and dismissed it as

14

untimely or successive.  *Id.*  The Ohio Supreme Court refused to allow an appeal based on the same

six grounds as set forth in the court of appeals.  *State v. Jalowiec*, 100 Ohio St.3d 1431 (2003).

## MURNAHAN APPEAL

Earlier, on July 8, 1999, Jalowiec filed a Motion for Leave to File a Delayed Reopening With

Good Cause Shown in the Ninth District Court of Appeals pursuant to Ohio App. R. 26(B) and *State

v. Murnahan,* 63 Ohio St.3d 60 (1992), claiming that his appellate counsel were ineffective.  Apx.

Vol. V, pgs. 8-11.  The following twenty-two propositions of law were raised:

Proposition of Law I
Defendant was denied due process of law and a fair trial when the trial court lacked
subject matter jurisdiction and venue to indict or hear the case in Lorain County for
a murder which occurred in Cleveland, Cuyahoga County Ohio in violation of the
5, 6, 8 and 14th Amendments to the U.S. Constitution and Article I, Section 10 of the
Ohio Constitution.

Proposition of II
Defendant was denied due process of law and a fair trial when the trial court
exhibited unmitigated bias toward the defendant thru [sic] its abuse of discretion in
questionable rulings affecting substantial rights of defendant in violation of the 5, 6,
8, and 14th Amendments to the U.S. Constitution and Article I, Section 10 of the
Ohio Constitution.

Proposition of Law III
Defendant was denied his constitutional right to be tried by an impartial jury by
reason of prosecutor misconduct sanctioned by the trial court in violation of the 5,
6, 8, and 14th Amendments to the U.S. Constitution and Article I, Section 10 of the
Ohio Constitution.

Proposition of Law IV
Defendant was prevented from receiving a fair trial and due process by reason of bias
from the court in failing to strike potential jurors for cause as obvious bias was
demonstrated in voir dire in violation of the 5, 6, 8, and 14th Amendments to the U.S.
Constitution and Article I, Section 10 of the Ohio Constitution.

Proposition of Law V
Defendant was denied due process of law and a fair trial when the prosecutor
testified in opening statements in violation of the 5, 6, 8, and 14th Amendments to the
U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

Proposition of Law VI
Defendant was denied due process of law and a fair trial when the court permitted
Sandra Williams, Officer John Homoki, Lynn Altpater, Terry Hopkins and Michael

Smith to relate hearsay as evidence in violation of the 5, 6, 8, and 14th Amendments to the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

### Proposition of Law VII

Defendant was denied rights of due process and a fair trial by instances of exhibits introduced into evidence whose sole purpose was to inflame the jury in violation of the 5, 6, 8, and 14th Amendments to the U.S. Constitution.

### Proposition of Law VIII

Defendant was denied due process of law when the court permitted the coroner to testify as to [sic] the possibilities of the trunk and upper head wounds offered into evidence could have been caused to the body of the decedent in violation of the 5, 6, 8, and 14th Amendments to the U.S. Constitution.

### Proposition of Law IX

Defendant was denied a fair trial due to improper argument by the prosecutor which placed the credibility of the prosecutor in issue and the prosecutor attesting to the veracity of State's witnesses, violating constitutional rights of defendant in violation of the 5, 6, 8, and 14th Amendments to the U.S. Constitution.

### Proposition of Law X

Defendant was denied due process of law when the court amended the indictment so as to charge the defendant with the substantive offense of conspiracy and other flawed instructions, in direct violation of the 14th Amendment.

### Proposition of Law XI

Defendant was denied due process of law when the trial court refused to record the entire proceedings in violation of the 5, 6, 8, and 14th Amendments to the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

### Proposition of Law XII

Defendant was denied his right to due process under the U.S. Constitution and Amendments 6 and 14 and a fair trial by reason of the trial court not dismissing jurors for cause in violation of the 5, 6, 8, and 14th Amendments to the U.S. Constitution.

### Proposition of Law XIII

Defendant was denied due process by the trial court when the court violated Criminal Rules 24(A) and 24(B) and other instances during selection of jurors thus violating defendant's constitutional rights under V, VI and XIV Amendments.

### Proposition of Law XIV

There is insufficient evidence to constitutionally sustain or substantiate defendant's capital murder conviction in violation of the 5, 6, 8, and 14th Amendments to the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

### Proposition of Law XV

The defendant was denied due process of law and a fair trial in violation of the 5, 6, 8, and 14th Amendments to the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when the prosecutor was allowed to deliberately lie and misstate evidence to the jury during closing arguments.

### Proposition of Law XVI

Defendant was denied his constitutional rights of due process and fair trial when trial court, prosecutor Rosenbaum and defense counsel Grunda violated codes of Professional Responsibility with prior calculation and design while sworn to uphold interests of justice in violation of the 5, 6, 8, and 14th Amendments to the U.S. Constitution.

### Proposition of Law XVII

Defendant was denied his constitutional rights to effective assistance of trial counsel as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when counsels' performance was so deficient to be effective assistance.

### Proposition of Law XVIII

Defendant was denied his constitutional rights to effective assistance of appellate counsel in his first death penalty direct appeal as of right in violation of the Sixth and Fourteenth Amendments to the United States Constitution, Section 10 and 16, Article I of the Ohio Constitution and O.R.C. 2929.05 by counsel's failure to raise and/or adequately address substantial and well-established criminal law issues on appeal.

### Proposition of Law XIX

The defendant was denied due process and a fair trial in violation of the 5, 6, and 14th Amendments to the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when Judge Kosma J. Glavis presided at trial after hearing prejudicial testimony that Michael Smith the State's key witness was subjected to death threats allegedly made by the defendant or his two co-defendants.

### Proposition of Law XX

The defendant was denied due process and a fair trial in violation of the 6 and 14th Amendments to the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution due to an actual conflict of interest between the defendant and counsel Joseph C. Grunda.

### Proposition of Law XXI

Defendant was denied due process and a fair trial in violation of the 5, 6 and 14th Amendments to the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when counsel, who was representing the defendant under a conflict of interest, used trickery and deception to waive defendant's speedy trial rights and discovery and bill of particulars.

### Proposition of Law XXII

Defendant was denied due process, a fair trial and compulsory process in direct violation of the VI and XIV Amendments to the U.S. Constitution when he was prevented from calling Judge Glavis as a witness.

The court of appeals denied the *Murnahan* application on August 18, 1999, on the ground that it was not timely filed. *State v. Jalowiec,* 96CA006445, unreported, journal entry (Aug. 18, 1999). Apx. Vol. V, pgs.22-23.

17

On September 24, 1999, Jalowiec filed an appeal of the denial of his *Murnahan* application to the Ohio Supreme Court, which affirmed the court of appeal's decision. *State v. Jalowiec*, 92 Ohio St.3d 421 (2001).

## HABEAS CORPUS

Following the Supreme Court of Ohio's decision, the Petitioner filed a Notice of Intention to File Habeas Corpus Petition on April 9, 2003 (ECF 1). Subsequently, the Petitioner filed a Petition for Writ of Habeas Corpus in this Court on July 2, 2003 (ECF 19). Respondent filed a Return of Writ on September 2, 2003 (ECF 25). Petitioner filed his Traverse on December 15, 2003 (ECF 60), and Respondent filed a reply to the Traverse on December 29, 2003 (ECF 65). On November 21, 2005, Jalowiec filed an Amended Petition for Writ of Habeas Corpus (ECF 108). The following issues were raised in the Amended Petition:

### A. TRIAL COURT ERROR
#### FIRST CLAIM FOR RELIEF

Petitioner was denied due process of law and a fair trial when the trial court lacked subject matter jurisdiction, personal matter jurisdiction and venue to indict or hear the case in Lorain County for a homicide which occurred in Cleveland, Cuyahoga County, Ohio in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

#### SECOND CLAIM FOR RELIEF

Petitioners Fifth, Sixth, Eighth and Fourteenth Amendment rights to the United States Constitution were violated by the trial court's failure to grant the motion for judgment of acquittal when the evidence against Petitioner was insufficient to sustain a conviction.

#### THIRD CLAIM FOR RELIEF

There is insufficient evidence to constitutionally sustain or substantiate Petitioner's capital murder conviction in violation of Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

#### FOURTH CLAIM FOR RELIEF

Petitioner's Sixth, Eighth, and Fourteenth Amendment rights were violated by the admission at trial of a co-defendant's confession inculpating Petitioner in the offense.

#### FIFTH CLAIM FOR RELIEF

Petitioner was denied due process of law and a fair trial when the court permitted impermissible hearsay evidence through the testimony of numerous significant state's witnesses in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

#### SIXTH CLAIM FOR RELIEF

Petitioner Jalowiec was denied his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by the admission of statements of a co-conspirator which did not meet the requirements of Evidence Rule 801 (D)(2)(e) and which violated Petitioner's right to confront the witnesses against him.

## SEVENTH CLAIM FOR RELIEF

The trial court erroneously permitted the coroner to testify as to how the victim's trunk and upper head-wounds could have been inflicted in violation of Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution.

## EIGHTH CLAIM FOR RELIEF

The trial court erred in effectively amending the indictment so as to charge the Petitioner with the substantive offense of conspiracy and other flawed instructions, in direct violation of Petitioner's constitutional rights under the 14th Amendment to the United States Constitution.

## NINTH CLAIM FOR RELIEF

The Jurors' viewing of Petitioner in shackles violated his Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

## TENTH CLAIM FOR RELIEF

Petitioner was denied due process of law when the trial court refused to record all proceedings in violation of the Petitioner's Sixth and Fourteenth Amendments to the United States Constitution.

## ELEVENTH CLAIM FOR RELIEF

Plaintiff was denied his constitutional rights to due process of law and fair trial due to multiple errors committed by the trial court in violation of Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## TWELFTH CLAIM FOR RELIEF

Petitioner was denied due process of law and a fair trial when the trial court exhibited unmitigated bias towards the Petitioner through its abuse of discretion in multiple rulings which collectively affected Petitioner's substantial rights in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## THIRTEENTH CLAIM FOR RELIEF

The trial court's admission of gruesome, prejudicial and cumulative photographs into evidence denied Petitioner his right to a fair trial, due process of law, and a reliable determination of his guilt and sentence as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

## FOURTEENTH CLAIM FOR RELIEF

The trial court's introduction of Exhibits into evidence whose sole purpose was to inflame the jury denied Petitioner his rights to due process and a fair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

## FIFTEENTH CLAIM FOR RELIEF

The trial court's jury instructions in the fact-finding phase denied Petitioner his rights to be free from cruel and unusual punishment and to a fair trial and impartial jury and to due process of law under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## SIXTEENTH CLAIM FOR RELIEF

Improper penalty phase instructions violated Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

19

## SEVENTEENTH CLAIM FOR RELIEF

To allow evidence of non-statutory aggravating factors during the Petitioner's trial violated his rights guaranteed him by the Sixth, Eighth and Fourteenth Amendments of the United States Constitution.

## EIGHTEENTH CLAIM FOR RELIEF

The introduction of numerous instances of improper aggravating circumstances render Petitioner's conviction and sentence unreliable and unconstitutional.

## NINETEENTH CLAIM FOR RELIEF

Petitioner's rights to a fair and impartial jury were denied when potential jurors were excluded because of their views against the death penalty in violation of the Sixth and Fourteenth Amendments.

## B. PROSECUTORIAL MISCONDUCT

## TWENTIETH CLAIM FOR RELIEF

Petitioner was denied his rights to a fair trial, due process of law, and to be free from cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, when the state withheld favorable and exculpatory *Brady, Napue, and Kyles* materials.

## TWENTY-FIRST CLAIM FOR RELIEF

Petitioner was denied a fair trial due to prosecutorial misconduct and improper arguments by the prosecutor that placed the credibility of the prosecutor in issue and the prosecutor vouching for the credibility of the state's witnesses, violating the Sixth and Fourteenth Amendments to the United States Constitution.

## TWENTY-SECOND CLAIM FOR RELIEF

The Petitioner was denied due process and a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when the prosecutor committed multiple acts of misconduct during closing argument, including misstating and misrepresenting evidence, arguing facts not in evidence, mischaracterizing defense arguments, and denigrating defense counsel.

## TWENTY-THIRD CLAIM FOR RELIEF

Petitioner was denied due process of law and a fair trial when the prosecutor testified in opening statements in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

## TWENTY-FOURTH CLAIM FOR RELIEF

The Prosecuting attorney used witnesses' testimony against Petitioner at the trial and violated the rule of *Brady v. Maryland*, when he failed to reveal discrepancies between the statements and testimony of various state witnesses in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## TWENTY-FIFTH CLAIM FOR RELIEF

The prosecution failed to provide pertinent impeachment evidence regarding their key material witness, Michael Smith, who testified against Petitioner in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and *Brady v. Maryland*, 373 U. S. 83 (1963).

## TWENTY-SIXTH CLAIM FOR RELIEF

Petitioner was denied his constitutional right to be tried by an impartial jury by reason of prosecutorial misconduct sanctioned by the trial court in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL
### TWENTY SEVENTH CLAIM FOR RELIEF

Petitioner was denied the effective assistance of counsel in the culpability phase of his trial when counsel failed to investigate the facts of the case and failed to present an available alibi defense in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

### TWENTY-EIGHTH CLAIM FOR RELIEF

Defense counsel committed multiple acts of deficient performance to the prejudice of Petitioner in the culpability phase of his trial, including failing to seek discovery and inadequately cross-examining state's witnesses, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

### TWENTY-NINTH CLAIM FOR RELIEF

Petitioner was denied the effective assistance of counsel in the culpability phase of his trial as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution in that defense counsel failed to move for a change of venue based on extraordinary pretrial publicity.

### THIRTIETH CLAIM FOR RELIEF

Petitioner was denied the effective assistance of counsel in the trial or guilt-determination phase in that counsel failed to investigate, obtain, and utilize evidence supporting Petitioner's actual innocence, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

### THIRTY-FIRST CLAIM FOR RELIEF

Petitioner was denied the effective assistance of counsel in the culpability phase of his capital trial when lead trial counsel Joseph C. Grunda represented Petitioner while also representing an important state's witness in another criminal case, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

### THIRTY-SECOND CLAIM FOR RELIEF

Petitioner was denied the effective assistance of counsel in the culpability phase of his trial when they failed to adequately and reasonably conduct *voir dire* regarding pre-trial publicity as is guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

### THIRTY-THIRD CLAIM FOR RELIEF

Petitioner was denied the effective assistance of counsel in the culpability phase as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution in that counsel failed to request a jury instruction regarding the pretrial publicity related to Petitioner's and Raymond Smith's trials.

### THIRTY-FOURTH CLAIM FOR RELIEF

Petitioner was denied the effective assistance of counsel in that counsel failed to conduct an investigation into the background of key state's witness Smith and to adequately represent Petitioner at the culpability phase of his trial resulting in a conviction that does not comply with the minimum constitutional standards of reliability required under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

### THIRTY-FIFTH CLAIM FOR RELIEF

The cumulative ineffective assistance of trial counsel violated Petitioner's rights to a fair and impartial jury trial as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

### THIRTY-SIXTH CLAIM FOR RELIEF

Petitioner was denied effective assistance of trial counsel when his attorneys failed to investigate, prepare and present compelling mitigation evidence during the penalty phase of his capital trial, in violation of his rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

### THIRTY-SEVENTH CLAIM FOR RELIEF

Petitioner was denied the effective assistance of counsel in the penalty phase when they failed to gather significant documentation revealing Petitioner's history, background, and character and failed to hire and prepare the defense psychologist in violation of Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

### THIRTY-EIGHTH CLAIM FOR RELIEF

Petitioner was denied the effective assistance of counsel in that they failed to obtain the expert assistance of a neuropsychologist to examine Petitioner in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

### THIRTY-NINTH CLAIM FOR RELIEF

Petitioner was denied the effective assistance of counsel at the penalty phase in that trial counsel failed to interview the state's mitigation rebuttal witnesses and/or present these witnesses on the Petitioner's behalf in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

### FORTIETH CLAIM FOR RELIEF

Petitioner was denied his constitutional right to effective assistance of counsel during the *voir dire* process at his capital trial.

### D. MISCELLANEOUS ERRORS

### FORTY-FIRST CLAIM FOR RELIEF

Petitioner Jalowiec's death sentence in this case is unreliable and inappropriate under the Eighth and Fourteenth Amendments to the United States Constitution because of trial court error, prosecutorial misconduct, and ineffective representation by trial counsel.

### FORTY-SECOND CLAIM FOR RELIEF

Petitioner was denied his right to the effective assistance of appellate counsel in his first death penalty direct appeal in violation of the Sixth and Fourteenth Amendments to the United States Constitution by counsel's failure to raise and/or adequately address substantial and well established criminal law issues on appeal.

### FORTY-THIRD CLAIM FOR RELIEF

The Petitioner was denied his right to due process in violation of the Fifth, Sixth, Eighth and Fourteenth Amendment [sic] to the United States Constitution when the Ohio Supreme Court applied improper standards of review in denying relief for federal constitutional violations.

### FORTY-FOURTH CLAIM FOR RELIEF

Ohio's-conviction Relief procedures constitute a meaningless ritual in deprivation of Petitioner's rights to due process, equal protection, adequate trial and appellate review, and freedom

from cruel and unusual punishment in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

FORTY-FIFTH CLAIM FOR RELIEF

Ohio's Death Penalty Statutory scheme is unconstitutional on its face and as applied to Petitioner as it results in the deprivation of rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

FORTY-SIXTH CLAIM FOR RELIEF

The cumulative effect of all the errors at pretrial, trial, sentencing and appellate proceedings violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

E. ACTUAL INNOCENCE<br>FORTY-SEVENTH CLAIM FOR RELIEF

Petitioner is actually innocent; execution of the sentence of death would violate the Eighth and Fourteenth Amendments to the United States Constitution and fundamental considerations of justice.

The State of Ohio filed its Amended Return of Writ on December 21, 2005.  (ECF 110). Jalowiec's Traverse was filed on June 25, 2007 (ECF 187), and the Respondent filed a Sur-reply on July 10, 2007 (ECF 190).  On March 13, 2006, the Court granted Jalowiec's Motion for Discovery. (ECF 117).  Motions for Evidentiary Hearing and to Expand the Record were filed on January 23, 2007.  (ECF 156, 158).  On February 7, 2007, Jalowiec moved to Supplement his Motion to Expand the Record.  (ECF 170).  The Court granted the Motion to Expand the Record (ECF 182), and ruled that the Motion for Evidentiary Hearing was premature on March 15, 2007 (ECF 183).

**DISCUSSION**

A person held in custody under a state court judgment may challenge the legality of that custody in federal court through a Petition for Writ of Habeas Corpus.  28 U.S.C. § 2254.  Section 2254 allows the state prisoner to challenge his custody "on the ground that [it is] in violation of the Constitution or laws or treaties of the United States."  *Id.*  The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA" or "Act"), effective April 24, 1996, amended Chapter 153 of Title 28, which concerns the procedures for the federal habeas remedy generally, and added Chapter

23

154, which sets forth special procedures applicable to capital habeas cases, but only in states that

meet certain eligibility requirements.[2]  The instant case involves the provisions of Chapter 153.

Because the Petition for Writ of Habeas Corpus was filed on July 2, 2003, well after the April 24,

1996 effective date, the Act's revisions are applicable.

## STATUTE OF LIMITATIONS

Section 101 of the AEDPA amends 28 U.S.C. § 2244 to impose a one-year limitation to file

habeas petitions pursuant 28 U.S.C. § 2254.  The limitations period runs from the latest of:

> A) the date on which the judgment became final by the conclusion of direct review
> or the expiration of the time for seeking such review;
> B) the date on which the impediment to filing an application created by State action
> in violation of the Constitution or laws of the United States is removed, if the
> applicant was prevented from filing by such State action;
> C) the date on which the constitutional right asserted was initially recognized by the
> Supreme Court, if the right has been newly recognized by the Supreme Court and
> made retroactively applicable to cases on collateral review; or
> D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  However, time during which a properly filed application for state post-

conviction or other collateral review pertinent to the claim is pending is not to be counted toward

any period of limitation under this subsection.  28 U.S.C. § 2244(d)(2).

In order to determine whether the Petition was timely filed, it is necessary to review the

procedural history of this case.  That history is as follows:

March 17, 1997: Petitioner files a Post-conviction Petition in the trial court;

April 17, 1997: Petitioner files an Amended Post-conviction Petition in the trial court;

---

[2]  Ohio does not meet these requirements and thus does not qualify for opt-in treatment. *Hamblin v. Anderson*, 947 F. Supp. 1179, 1180-82 (N.D. Ohio 1996), *rev'd on other grounds by Hamblin v. Mitchell*, 354 F.3d 482 (6th Cir. 2003), *cert. denied*, 543 U.S. 925 (2004).

August 16, 1997: Petitioner files a Second Amended Post-conviction Petition in the trial court;

July 8, 1999: Petitioner files a Motion for Delayed Reconsideration pursuant to Ohio R. App. P. 26;

August 18, 1999: the court of appeals denies the Motion for Delayed Reconsideration;

February 22, 2000: Petitioner files a Third Amended Post-conviction Petition in the trial court;

April 4, 2001: the Supreme Court of Ohio affirms Petitioner's convictions and sentences;

April 12, 2001: the trial court dismisses the Post-conviction Petition;

August 8, 2001: the Ohio Supreme Court affirms the court of appeals' decision denying the Motion for Delayed Reconsideration;

October 9, 2001: the United States Supreme Court denies the Petition for Writ of Certiorari;

March 6, 2002: the court of appeals affirms trial court's dismissal of the Third Amended Post-conviction Petition;

July 3, 2002: the Ohio Supreme Court refuses to accept the Third Amended Post-conviction Petition;

August 15, 2002: the trial court dismisses the Second Amended Post-conviction Petition;

September 6, 2002: Petitioner appeals trial court's dismissal of his Second Amended Post-conviction Petition;

June 18, 2003: the court of appeals affirms the decision of the trial court dismissing his Second Amended Post-conviction Petition;

On July 2, 2003: Petitioner files his Petition for Writ of Habeas Corpus;

October 15, 2003: the Ohio Supreme Court refuses to accept appeal from the court of appeals' dismissal of his Second Amended Post-conviction Petition.

The Supreme Court of Ohio's decision of October 15, 2003, refusing to accept the appeal

from the court of appeals' dismissal of his Second Amended Post-conviction Petition, occurred after

the filing of Jalowiec's Petition.  Accordingly, the Petition was filed within the one-year statute of limitations.

## EXHAUSTION AND PROCEDURAL DEFAULT

The Court must next determine whether the claims are properly presented for review. Federal claims that were evaluated on the merits in some fashion by a state court are properly brought before a federal court for habeas review.  Federal claims that were not so evaluated, either because they were not presented to the state court or because they were presented improperly, generally are not cognizable on federal habeas review.

A petitioner's failure to present a federal claim to the state courts for initial resolution involves an issue of exhaustion of state court remedies.  Invoking principles of comity and federalism, federal courts have long required state prisoners to exhaust the "available state remedies" before addressing the merits of a federal claim on federal habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (citations omitted).  As the Supreme Court reiterated in *Coleman*:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490-491(1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." *Ex parte Royall,* 117 U.S. 241, 251 (1886). Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Darr v. Burford,* 339 U.S. 200, 204 (1950).

*Id.* (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).  The exhaustion doctrine is codified in both the former and revised provisions of section 2254(b).[3]

The Respondent concedes that all of Jalowiec's grounds for relief have been exhausted.

Even if a petitioner presents a federal claim to the state courts for resolution, that claim generally is inappropriate on federal habeas review if the state courts refused to address the merits of the claim because the petitioner failed to follow a state procedural rule.  This is called the procedural default rule.  As the Supreme Court noted in *Coleman*, "[j]ust as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."  *Id.* at 731-32.  Where a state prisoner procedurally defaults a federal claim in state court, it is said that an "independent and adequate state ground support[s] [the] habeas petitioner's custody[.]"  *Id.* at 731.[4]

Application of the procedural default rule is necessary in the context of federal habeas corpus, because "[a] habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."

---

[3]  The Antiterrorism Act amended section 2254(b), however, to specifically allow federal courts to *deny a habeas petition on the merits* even in the absence of exhaustion. *See* 28 U.S.C. § 2254(b)(2). This amendment promotes judicial efficiency and economy, for if a claim is meritless, it will not acquire merit by virtue of exhaustion. Allowing the federal court to review such a claim on the merits prior to exhaustion preserves judicial resources without unduly undermining the authority of the state court to consider the claim.

[4]  However, "if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition." *Coleman*, 501 U.S. at 735.

27

*Id.* at 732 (citations omitted). In other words, without the procedural default rule, "habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the State's interest in correcting their own mistakes is respected in all federal habeas cases." *Id.*

A habeas petitioner may avoid application of the procedural default rule (or "excuse" the default) by demonstrating what is called "cause and prejudice" – cause for the procedural default and prejudice resulting from the alleged constitutional violation. *Id.* at 750. In the absence of cause and prejudice, a habeas petitioner may "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* The miscarriage of justice exception may be satisfied by submitting evidence showing that a constitutional violation has lead to the conviction of one who is actually innocent. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Schlup v. Delo*, 513 U.S. 298, 315 (1995). Jalowiec has raised the constitutional claim of actual innocence in his forty-seventh claim for relief.

The cause element of the cause and prejudice test requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor *external to the defense* impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (emphasis added). An example of sufficient cause is "a showing that the factual or legal basis for a claim was not reasonably available to counsel, * * * or that 'some interference by officials' * * * made compliance impracticable.'" *Id.* (quoting *Murray*, 477 U.S. at 488). An error by counsel will not constitute adequate cause, unless the error amounts to constitutionally ineffective assistance of counsel. *Id.* at 753-54.

28

## PROCEDURAL DEFAULT, OHIO LAW

Under Ohio law, all claims that were known, or that should have been known, by the defendant at the time of trial or direct appeal must be raised on direct appeal from the judgment of conviction.  If they are not so raised, they are waived.[5]  If a defendant fails to raise an unknown claim, or that a claim that could not reasonably have been known to the defendant until after the judgment of conviction, Ohio provides an avenue of relief through its post-conviction statute, Ohio Revised Code § 2953.21.  That section, entitled "Petition to Vacate or Set Aside Sentence," provides in relevant part as follows:

> (A)(2) A petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or the date on which the trial transcript is filed in the supreme court if the direct appeal involves a sentence of death. If no appeal is taken, the petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal.

Ohio Rev. Code § 2953.21(A)(2).

This post-conviction statute has been interpreted to bar post-conviction consideration of any claim that was raised or could have been raised before the judgment of conviction or on direct review of that judgment.  *See State v. Perry*, 10 Ohio St. 2d 175, 180 (1967); *State v. Roberts*, 1 Ohio St. 3d 36, 38-39 (1982)(citing *Perry*).  Accordingly, claims that are capable of resolution by

---

[5]  *See State v. Perry*, 10 Ohio St. 2d 175, 180 (1967) ("Under the doctrine of *res judicata*, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment."); *State v. Cole*, 2 Ohio St. 3d 112, 113 (1982) (quoting *Perry*); *see also State v. Glaros*, 170 Ohio St. 471, 471 (1960) (syllabus note 1) ("It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.").

an examination of the trial court record, rather than evidence *dehors* the record, are inappropriate on a petition for post-conviction review.  As the Supreme Court of Ohio stated in *Perry*:

> Constitutional issues cannot be considered in post-conviction proceedings under Section 2953.21 et seq., Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him.
>
> * * *
>
> [W]e are of the opinion that our courts should apply th[e] doctrine [of *res judicata*] in determining whether post-conviction relief should be given. Under the doctrine of *res judicata*, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.

*Perry*, 10 Ohio St. 2d at 176 (syllabus note 7), 180.

The United States Court of Appeals for the Sixth Circuit has established a four-step analysis to determine whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135 (6th Cir.1986).  Under this test, this Court must determine:  (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and, if the previous elements are met, (4) whether the petitioner has demonstrated "cause" and "prejudice."

Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown.  *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005) (citing *State v. Smith*, 89 Ohio St.3d 323, 332 (2000)).  The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an

adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.*; *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Stojetz v. Ishee*, 2006 WL 328155 *12 (S.D. Ohio Feb. 10, 2006).

A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams*, 380 F.3d at 968; *Hinkle*, 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar, instead of rejecting the claim on the merits. *Hinkle*, 271 F.3d at 244 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

## APPLICATION TO PETITIONER'S CLAIMS

Petitioner raises forty-seven claims for relief. Section I below will address the procedural default arguments. As discussed in that section, Petitioner's grounds 1(b), 4, 5(b), 6, 7, 8, 9, 10, 11(a),(b), 12, 13(b)[6], 14(a), 15, 16, 19(b), 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35(a),(b), (f), (i), (j), 36, 37, 38, 39, 41, 43, 44, and 46 are procedurally defaulted and, accordingly, are dismissed. The Court nevertheless addresses the merits of those defaulted claims in section II, on the grounds that such a course of action best promotes the vital interests in judicial efficiency and economy. Petitioner's grounds 1(a), 2, 3, 5(a)[7], 13(a), 14(b), 17, 19(a), 35(c), (d), (e), (g), (h), 40, 42, 45 and 47 are not procedurally defaulted and are properly before this Court. The Court will address those claims in section III.

---

[6] Claim 13(b) will be discussed in section III.

[7] Claim 5(a) will be discussed in section II.

## I. PROCEDURAL DEFAULT

## FIRST CLAIM FOR REVIEW - SUB-CLAIMS (a), (b)

In his first claim for relief, Jalowiec alleges that he was denied due process of law and a fair trial because the trial court lacked subject matter jurisdiction, personal jurisdiction and venue to indict or hear the case in Lorain County for a homicide that occurred in Cuyahoga County.  This claim, as presented in this Court, involves sufficiency of the indictment (sub-claim(b)), as it pertains to jurisdiction and venue.

It is well settled that the claim must be presented to the state courts under the same theory in which it is later presented in federal court.  *Lott v. Coyle*, 261 F.3d 594, 607, 611, 617, 619 (6th Cir. 2001)(citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). *See Sneed v. Johnson*, 2007 WL 709778 * 33 N.D. Ohio Mar. 2, 2007)(claims first raised in an application to reopen are procedurally defaulted, because they were never presented to the Ohio courts under the same theory as they were raised in the petition); *Stojetz v. Ishee*, 389 F. Supp.2nd 858, 898-99 (S.D. Ohio 2005)(underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening).  The sufficiency of the indictment, however, was not part of the issue on direct appeal.  The latter was raised for the first time in Jalowiec's *Murnahan* appeal as an ineffective assistance of appellate counsel claim, but it was never specifically addressed.  The Court finds the portion of this claim as to the sufficiency of the indictment to be procedurally defaulted.  Accordingly, it will be addressed in section II.

Lack of subject matter jurisdiction, personal jurisdiction and venue to indict were raised in the Supreme Court of Ohio on direct appeal.  (Sub-claim (a)).  Although the court denied the Petitioner's claim on its merits, Petitioner nonetheless properly presented the claim to the Ohio

courts.  For this reason, Petitioner's subject matter jurisdiction, personal jurisdiction and venue issues are exhausted, but not procedurally defaulted. They will be discussed in section III.

## SECOND CLAIM FOR RELIEF

In his second claim for relief, Petitioner alleges that he was deprived his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments, when the trial court failed to grant his Motion for Judgment of Acquittal.  According to Petitioner, his Motion should have been granted because there was insufficient evidence of venue and prior calculation and design.  Petitioner presented this claim to the Supreme Court of Ohio on direct appeal.  Although the court rejected his claim, it was properly presented to the state court, and it is exhausted but not procedurally defaulted.

## THIRD CLAIM FOR RELIEF

In his third claim for relief, Petitioner again argues that there was insufficient evidence of prior calculation and design to support his conviction for aggravated murder.  He presented this claim to the Supreme Court of Ohio on direct appeal.  Although the court rejected his claim, it was properly presented to the state court, and it is exhausted but not procedurally defaulted.

## FOURTH CLAIM FOR RELIEF

In his fourth claim for relief, Petitioner alleges a violation of his Sixth, Eighth and Fourteenth Amendment rights.  According to Petitioner, these constitutional violations occurred when:  (1) in the opening statement of the guilt phase, the prosecutor erroneously referred to a statement made by Raymond Smith to Detective Leiby; (2) Detective Leiby erroneously testified about the statement as a rebuttal witness during the sentencing phase; and (3) two taped statements by Raymond Smith were erroneously admitted as rebuttal evidence.

33

In reviewing Petitioner's claim, the Supreme Court of Ohio determined that Petitioner procedurally defaulted his claim.  More specifically, the Court determined that Petitioner failed to object to the prosecutor's reference and the introduction of this evidence at trial.  Alternatively, the Supreme Court of Ohio determined that no plain error exists.  In this instance, the Supreme Court of Ohio did not excuse the procedural default – it merely supplemented its holding by reviewing the claim under a plain-error analysis.

In *Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000), petitioner Scott argued that, by conducting a plain error review, the Supreme Court of Ohio excused the procedural default and therefore did not enforce the procedural bar.  The Sixth Circuit found Petitioner's argument unpersuasive, stating "[a] plain error analysis is not tantamount to a review on the merits, so the Ohio Supreme Court did not wholly overlook [Petitioner's] procedural default."  *Id.*  As in *Scott*, in this case, the Supreme Court of Ohio did not excuse the procedural default and did, in fact, enforce the procedural bar.

Because the Supreme Court of Ohio's enforcement of the procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review, Petitioner has defaulted this claim.

## FIFTH CLAIM FOR RELIEF - SUB-CLAIMS (a), (b)

In his fifth claim for relief, Petitioner asserts that the trial court erred in allowing, over objection, testimony by several witnesses concerning statements made to them by co-defendant Danny Smith.  In the Supreme Court of Ohio, Petitioner complained about the testimony of Sandra Williams, Lynn Altpater, Terry Hopkins and Sharon Hopkins.  (Sub-claim (a)).  He did not challenge the testimony of Officer Homoki and Michael Smith. (Sub-claim (b)).

34

Petitioner presented this claim as to Officer Homoki and Michael Smith in his *Murnahan* appeal as an ineffective assistance of appellate counsel claim.  Although the court stated that the claim was reviewed, it was never specifically addressed.  Petitioner's claim as to Officer Homoki and Michael Smith, however, must be presented to the state courts under the same theory in which it is later presented in federal court.  *Lott*, 261 F.3d at 607, 611, 617, 619 (citing *Wainwright*, 433 U.S. at 87); *Wong*, 142 F.3d at 322.  *See Stojetz*, 389 F. Supp.2nd at 898-99 (underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at * 33 (claims first raised in an application to reopen are procedurally defaulted because they were never presented to the Ohio courts under the same theory as they were raised in the petition).  The Court finds Petitioner's claim as to the testimony of Officer Homoki and Michael Smith is procedurally defaulted.  Hence, it will be addressed in section II.  The remainder of this claim, pertaining to the testimony of Sandra Williams, Lynn Altpater, Terry Hopkins and Sharon Hopkins, is preserved for federal habeas review and will be discussed in section III.

## SIXTH CLAIM FOR RELIEF

In his sixth claim for relief, Jalowiec contends that the admission of a co-conspirator's statements did not meet the requirements of Ohio Evid. R. 801(D)(2)(e), which violated his right to confront the witnesses against him.  Specifically, he alleges that the statements should not have been admitted under the Ohio rule, because the State failed to make a *prima facie* case of conspiracy as to Lally's murder.  Although this claim was presented to the Ohio Supreme Court, Jalowiec failed to support it with federal constitutional law.  Apx. Vol. III, pgs. 138-43.  Errors involving state evidentiary matters, especially rulings regarding the admission or exclusion of evidence, usually are

35

not reviewable in federal habeas corpus actions. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990); *Jones v. Smith*, 244 F. Supp.2d 801, 814 (E.D. Mich. 2003). A federal constitutional claim must be presented to the state court in order for the federal court to consider the claim in habeas review. *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003). *See Slaughter v. Parker*, 467 F.3d 511, 514 (6th Cir. 2006), *cert. denied by Leonard v. Simpson*, 127 S. Ct. 2914 (2007)(habeas claim must be asserted in terms of the denial of a specific constitutional right); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law). Although it will be reviewed on its merits, the Court finds Petitioner's claim is procedurally defaulted. It will be addressed in section II.

## SEVENTH CLAIM FOR RELIEF

In his seventh claim for relief, Jalowiec contends that the trial court erroneously permitted the coroner to testify as to how the victim's trunk and upper head wounds could have been inflicted. This claim was presented for the first time in Jalowiec's *Murnahan* appeal as an ineffective assistance of appellate counsel claim, but it was never specifically addressed. However, the claim must be presented to the state courts under the same theory in which it is later presented in federal court. *Lott*, 261 F.3d at 607, 611, 617, 619 (citing *Wainwright*, 433 U.S. at 87); *Wong*, 142 F.3d at 322 (Cir. 1998). *See Stojetz*, 389 F. Supp.2nd at 898-99(underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at * 33 (claims first raised in an application to reopen are procedurally defaulted because they were never presented to the Ohio courts under the same theory as they were raised in the

petition). Therefore, it is procedurally defaulted. Although it will be reviewed on its merits, the claim, which is procedurally defaulted, will be addressed in section II.

## EIGHTH CLAIM FOR RELIEF

In his eighth claim for relief, Jalowiec asserts that the trial court, in effect, amended the indictment by allowing statements based on the co-conspirator's exception to the hearsay rule and erroneously instructing the jury on causation. Although he raised on direct appeal the admissibility of the co-conspirator's statements, he did not allege that the indictment was improperly amended. The latter was raised for the first time in Jalowiec's *Murnahan* appeal as an ineffective assistance of appellate counsel claim, but it was never specifically addressed. However, the claim must be presented to the state courts under the same theory in which it is later presented in federal court. *Lott*, 261 F.3d at 607, 611, 617, 619 (citing *Wainwright*, 433 U.S. at 87); *Wong,* 142 F.3d at 322. Therefore, it is procedurally defaulted. *See Stojetz*, 389 F. Supp.2nd at 898-99)(underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at * 33 (claims first raised in an application to reopen are procedurally defaulted because they were never presented to the Ohio courts under the same theory as they were raised in the petition). Although it will be reviewed on its merits, the Court finds Petitioner's claim is procedurally defaulted. As such, it will be addressed in section II.

## NINTH CLAIM FOR RELIEF

In his ninth claim for relief, Jalowiec contends that the jurors' view of him in shackles violated his Sixth, Eighth and Fourteenth Amendment rights. The Ohio Supreme Court ruled that this issue was waived, as it was not properly raised before the court of appeals. This issue was reviewed under a plain-error standard. Under this standard, the Supreme Court of Ohio still rejected

Petitioner's claim.  Petitioner's procedural default was not excused, however, by the Supreme Court of Ohio, because the court plainly stated that Petitioner failed to properly present it.  The Supreme Court of Ohio merely supplemented its holding that the claim was waived by reviewing the claim under a plain-error analysis.

In *Scott*, 209 F.3d at 865, petitioner Scott argued that, by conducting a plain error review, the Supreme Court of Ohio excused the procedural default and therefore did not enforce the procedural bar.  The Sixth Circuit found Petitioner's argument unpersuasive, stating "[a] plain error analysis is not tantamount to a review on the merits, so the Ohio Supreme Court did not wholly overlook [Petitioner's] procedural default."  *Id.*  Based upon this standard, the Petitioner has procedurally defaulted this claim.

## TENTH CLAIM FOR RELIEF

In his tenth claim for relief, Jalowiec contends that he was denied due process of law when the trial court refused to record all proceedings, in violation of the Sixth and Fourteenth Amendments.  He argues that he is entitled to transcripts of peremptory challenges, pretrial conferences and sidebars during trial, and a polling of the jury.  This claim was raised for the first time in Jalowiec's *Murnahan* appeal as an ineffective assistance of appellate counsel claim, but it was never specifically addressed.  However, the claim must be presented to the state courts under the same theory in which it is later presented in federal court.  *Lott*, 261 F.3d at 607, 611, 617 619 (citing *Wainwright*, 433 U.S. at 87); *Wong,* 142 F.3d at 322.  *See Stojetz*, 389 F. Supp.2nd at 898-99 (underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at * 33(claims first raised in an application to reopen are procedurally defaulted because they were never presented to the Ohio courts under the

same theory as they were raised in the petition).  The Court finds this claim to be procedurally defaulted.  Hence, it will be addressed in section II.

## ELEVENTH CLAIM FOR RELIEF- SUB-CLAIMS (a), (b)

In his eleventh claim for relief, Jalowiec contends that he was deprived of his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.  More specifically, Jalowiec asserts that the trial judge violated his constitutional rights by improperly presiding over criminal proceedings against a State witness, while Jalowiec's trial was in progress.  (Sub-claim (a)). Jalowiec further alleges that his attorney deprived him of his constitutional rights because he represented Jalowiec, despite having a conflict arising from the representation of both Petitioner and the witness against him.  (Sub-claim (b)).

The latter issue was raised for the first time in Jalowiec's *Murnahan* appeal as an ineffective assistance of appellate counsel, but it was never specifically addressed.  However, the claim must be presented to the state courts under the same theory in which it is later presented in federal court. *Lott*, 261 F.3d at 607, 611, 617, 619 (citing *Wainwright*, 433 U.S. at 87); *Wong,* 142 F.3d at 322. *See Stojetz*, 389 F. Supp.2nd at, 898-99 (underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at * 33 (claims first raised in an application to reopen are procedurally defaulted because they were never presented to the Ohio courts under the same theory as they were raised in the petition).

The matter of the trial judge's conflict was never raised in the Ohio courts.  If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief. *Lott*, 261 F.3d at 601 (citing *Wainwright*,

433 U.S. at 87).  The Court finds this claim to be procedurally defaulted.  Accordingly, it will be addressed in section II.

## TWELFTH CLAIM FOR RELIEF

In his twelfth claim for relief, Jalowiec asserts that he was denied due process and a fair trial when the trial court exhibited unmitigated bias towards him through its abuse of discretion as to the following five instances:[8]

    a.    Jury's Viewing of Petitioner in Shackles.
    b.    Restrictions Placed on Petitioner's Counsel.
    c.    Restrictions on Counsels' Use of Witness's Prior Statements.
    d.    Permitting Leiby's Comments on Record.
    e.    Court's Failure to Disqualify/Recuse Judge Glavis and Improper Quashing of Subpoena.

The judicial bias claim was raised for the first time in Jalowiec's *Murnahan* appeal as an ineffective assistance of appellate counsel claim, but it was never specifically addressed.  However, the claim must be presented to the state courts under the same theory in which it is later presented in federal court.  *Lott*, 261 F.3d at 607, 611, 617, 619; *Wong,* 142 F.3d at 322. *See Stojetz*, 389 F. Supp.2nd at 898-99 (underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at * 33 (claims first raised in an application to reopen are procedurally defaulted because they were never presented to the Ohio courts under the same theory as they were raised in the petition).  Jalowiec did not raise these sub-claims as independent allegations in the context of judicial bias on direct appeal.  If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief.  *Lott,* 261 F.3d at 601 (citing

---

[8] The Respondent only briefly addressed this claim.

*Wainwright*, 433 U.S. at 87).  The Court finds this claim to be procedurally defaulted.  It will be addressed in section II.

### THIRTEENTH CLAIM FOR RELIEF - SUB-CLAIMS (a), (b)

In his thirteenth claim for relief, Jalowiec alleges that his constitutional rights were violated by the admission of gruesome and cumulative photos of the victim and the crime scene.  This issue was raised on direct appeal to the Ohio Supreme Court.  Counsel objected to all of the autopsy photos and some of the crime scene photos, i.e., exhibits 1-G and 1-I through 1-M,, which were admitted over defense objections.  (Sub-claim (a)).  Although the Court rejected his claim as to these photos, it was properly presented to the state court, and it is exhausted but not procedurally defaulted.

The court ruled, without identifying specific photos, that defense counsel failed to object to several of the crime scene photos.  Apparently, counsel failed to object to exhibits 1-A through 1-F and 1-H. (Sub-claim (b)).  The court held that any objection that was not made to the admission of the photos was waived.  The claim with respect to these photos was reviewed under a plain-error standard.  Under this standard, the Supreme Court of Ohio still rejected Petitioner's claim.  Petitioner's procedural default was not excused, however, by the Supreme Court of Ohio, because the Court plainly stated that Petitioner failed to object at the time of trial.  The Supreme Court of Ohio merely supplemented its holding that the claim was procedurally defaulted by reviewing the claim under a plain-error analysis.

In *Scott*, 209 F.3d at 865, petitioner Scott argued that, by conducting a plain error review, the Supreme Court of Ohio excused the procedural default and therefore did not enforce the procedural bar.  The Sixth Circuit found Petitioner's argument unpersuasive, stating "[a] plain error

41

analysis is not tantamount to a review on the merits, so the Ohio Supreme Court did not wholly

overlook [Petitioner's] procedural default." *Id.*  The Supreme Court of Ohio's enforcement of its

contemporaneous objection rule is an "adequate and independent" state ground on which the state

can foreclose federal review.  *Hinkle*, 271 F.3d at 244.  The Court finds this claim to be procedurally

defaulted as to exhibits 1-A through 1-F and 1-H (sub-claim b).  As the law is the same regardless

of procedural status, the sub-claims will be discussed together in section III.

## FOURTEENTH CLAIM FOR RELIEF - SUB-CLAIMS (a), (b)

In his fourteenth claim for relief, Jalowiec alleges that the trial court's introduction of

exhibits into evidence whose sole purpose was to inflame the jury denied Petitioner his rights to due

process and a fair trial in violation of the Sixth and Fourteenth Amendments to the United States

Constitution.  Jalowiec argues that the court wrongfully admitted the following irrelevant exhibits

(sub-claim (a)):

> a) The recorded drug purchase between the Smith's and Ronald Lally was admitted over objection. Tr. Vol. II, pg. 848.
> b) A previous arrest report for drugs of Raymond Smith was admitted over objection. Tr. Vol. II, pgs. 848-49.
> c) A report of a prior drug arrest of Danny Smith was also admitted over objection. Tr. Vol. II, pg. 849.
> d) The former indictment of Raymond Smith for drug law violations was also admitted over objection. Tr. Vol. II, pgs. 849-50.
> e) The former indictment of Danny Smith on drug law violations was admitted over objection. Tr. Vol II, pg. 850.
> f) Lighters and cigarettes found inside a cemetery on the ground were admitted over objection even though there was never any testimony that anyone at all smoked. Tr. Vol. II, pg. 851-52.
> g) Loose hairs found on the ground of the cemetery were also admitted over objection. Tr. Vol. II, pg. 852.

Jalowiec did not allege the wrongful admission of any of this evidence before the Ohio Supreme

Court.  This claim was raised for the first time in Jalowiec's *Murnahan* appeal as ineffective

assistance of appellate counsel, but it was never specifically addressed.  However, the claim must

be presented to the state courts under the same theory in which it is later presented in federal court.

*Lott*, 261 F.3d at 607, 611, 617, 619 (citing *Wainwright*, 433 U.S. at 87); *Wong,* 142 F.3d at 322.

*See Stojetz*, 389 F. Supp.2nd at 898-99 (underlying constitutional claim cannot be preserved for

review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at *

33 (claims first raised in an application to reopen are procedurally defaulted because they were never

presented to the Ohio courts under the same theory as they were raised in the petition).  Jalowiec did

not raise these sub-claims as independent allegations of judicial bias on direct appeal.  If a federal

habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may

not properly serve as the basis for federal habeas relief.  *Lott*, 261 F.3d at 601 (citing *Wainwright*,

433 U.S. at 87).  The Court finds this claim to be procedurally defaulted.  Accordingly, it will be

addressed in section II.

Jalowiec also complained about the following photographs, which he contends were

prejudicial and had no probative value (sub-claim (b)):

> a) St. Ex. 2B, depicted Lally's face after it had been worked on by the coroner's staff. Tr. Vol. II, pg. 644.
> b) St. Ex. 2C, a close up of Lally's left eye artificially being forced open. Tr. Vol. II, pg. 645.
> c) St. Ex. 2F, a close up of Lally's lower lip being pulled down and held there artificially. Tr. Vol. II, pg. 646.
> d) St. Ex. 2G, a close up of Lally's upper lip being pulled up and held there artificially. Tr. Vol. II, pg. 646.
> e) St. Ex. 2I, depicting the inside of Lally's lower face after having had the larynx, trachea and neck structure pulled out in a sickening manner so the jurors would be able to see the victims spinal column simply by looking through his mouth. Tr. Vol. II, pg. 647.
> f) St. Ex. 2K, shows Lally's scalp peeled back from his scull by the coroner. Tr. Vol. II, pg. 647.
> g) St. Ex. 2L, another angled look at the victim's peeled back scalp, as done by the coroner. Tr. Vol. II, pg. 648.

h) St. Ex. 2M, also showing Lally's peeled back scalp; redundant as well as gruesome. Tr. Vol. II, pg. 649.

Respondent concedes that Jalowiec challenged the admission of the autopsy photos. Thus, sub-claim (b) was properly presented to the state court, and it is exhausted but not procedurally defaulted.

## FIFTEENTH CLAIM FOR RELIEF

In his fifteenth claim for relief, Jalowiec alleges that the charge on causation given by the trial court is in direct contradiction of R.C. § 2903.01(D). Jalowiec submitted this claim to the Ohio Supreme Court on direct appeal. The Supreme Court of Ohio determined that Petitioner had failed to object to the instruction. The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review, absent a showing of cause for the waiver and resulting prejudice. *Hinkle*, 271 F.3d at 244; *Stojetz*, 2006 WL 328155 at * 12. This issue was reviewed under a plain-error standard. Under this standard, the Supreme Court of Ohio still rejected Petitioner's claim. Petitioner's procedural default was not excused, however, by the Supreme Court of Ohio, because the Court plainly stated that Petitioner failed to object at the time of trial. The Supreme Court of Ohio merely supplemented its holding that the claim was procedurally defaulted by reviewing the claim under a plain-error analysis.

In *Scott*, 209 F.3d at 865, petitioner Scott argued that, by conducting a plain error review, the Supreme Court of Ohio excused the procedural default and therefore did not enforce the procedural bar. The Sixth Circuit found Petitioner's argument unpersuasive, stating "[a] plain error analysis is not tantamount to a review on the merits, so the Ohio Supreme Court did not wholly overlook [Petitioner's] procedural default." *Id.* A state court's review of an issue for plain error is

44

considered by the Sixth Circuit as the enforcement of a procedural default.  *Williams*, 380 F.3d at 968; *Hinkle*, 271 F.3d at 244.  Accordingly, Petitioner has procedurally defaulted this claim.

## SIXTEENTH CLAIM FOR RELIEF

In his sixteenth claim for relief, Jalowiec contends that the trial court's jury instruction, given during the penalty phase of the trial, that the jury was required to reject the death penalty before considering the life sentences, constitutes reversible constitutional error.  Jalowiec submitted this claim to the Ohio Supreme Court on direct appeal.  In this instance, the Supreme Court of Ohio determined that Petitioner had failed to object to the instruction.  The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review, absent a showing of cause for the waiver and resulting prejudice.  *Hinkle*, 271 F.3d at 244; *Stojetz*, 2006 WL 328155 at * 12.  This issue was reviewed under a plain-error standard.  Under this standard, the Supreme Court of Ohio still rejected Petitioner's claim. Petitioner's procedural default was not excused, however, by the Supreme Court of Ohio, because the Court plainly stated that Petitioner failed to object at the time of trial.  The Supreme Court of Ohio merely supplemented its holding that the claim was procedurally defaulted by reviewing the claim under a plain-error analysis.

In *Scott*, 209 F.3d 865, petitioner Scott argued that by conducting a plain error review, the Supreme Court of Ohio excused the procedural default and therefore did not enforce the procedural bar.  The Sixth Circuit found Petitioner's argument unpersuasive, stating "[a] plain error analysis is not tantamount to a review on the merits, so the Ohio Supreme Court did not wholly overlook [Petitioner's] procedural default."  *Id.*  A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default.  *Williams*, 380 F.3d at 968; *Hinkle*,

271 F.3d at 244.  Since Jalowiec has not raised this issue as an ineffective assistance of counsel claim, he has not shown cause and prejudice to excuse procedural default.  Accordingly, Petitioner has procedurally defaulted this claim.

## SEVENTEENTH CLAIM FOR RELIEF

In his seventeenth claim for relief, Jalowiec contends that the trial court allowed evidence on rebuttal of prior crimes of violence that constituted evidence of nonstatutory aggravating circumstances, in violation of his constitutional rights.  Petitioner presented this claim to the Supreme Court of Ohio on direct appeal.  Although the court rejected his claim, it was properly presented to the state court, and it is exhausted but not procedurally defaulted.

## EIGHTEENTH CLAIM FOR RELIEF

In his eighteenth claim for relief, Jalowiec asserts that improper aggravating circumstances were introduced as a result of prosecutorial misconduct, errors of the trial court, and instances of ineffective assistance of counsel, all of which were presented to the court.  He has not offered any explicit allegations in support of this claim.  Apparently, these issues were raised elsewhere in this Petition.  Whether or not those claims were properly presented to the state courts will be addressed as to each specific claim.

## NINETEENTH CLAIM FOR RELIEF - SUB-CLAIMS (a), (b)

Jalowiec asserts that he was denied a fair and impartial trial by the improper removal of jurors whose views on the death penalty would not prevent or substantially impair the performance of their duties.  Jurors Porter, Kowalski, Fobell, Eubanks and Buck informed the court that they would not be able to vote for the death penalty.  The Ohio Supreme Court ruled that Jalowiec waived claims of error concerning Kowalski, Fobell and Buck.  (Sub-claim (b)).  Porter and Eubanks were

46

discussed. (Sub-claim (a)). Therefore, the claims involving Kowalski, Fobell and Buck are barred by *res judicata* and are procedurally defaulted. The Ohio Supreme Court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review. Accordingly, Petitioner has procedurally defaulted this claim as to Kowalski, Fobell and Buck (Sub-claim (b)), but not as to Porter and Eubanks (Sub-claim (a)).

### TWENTIETH CLAIM FOR RELIEF

In his twentieth claim for relief, Jalowiec asserts that he was deprived of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments, when the State withheld exculpatory *Brady*, *Napue* and *Kyles* materials. This claim concerns the alleged withholding of prior statements of Raymond Smith, Danny Smith, Terry Hopkins, Sandra Williams, Lynne Altpater and Tammie Green, and the failure to disclose a deal with Michael Smith in exchange for his testimony.

Jalowiec raised the claim as to Michael Smith in his Third Amended Motion for Post-conviction Relief. The trial court dismissed it as untimely and successive, and the court of appeals affirmed. Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637 (Ohio App. 9th Dist. Mar. 6, 2002). The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review. *Emrick v. Wolfe*, 2006 WL 3500005 * 8 (S.D. Ohio Dec. 5, 2006) (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review). *See Hodge v. State of Ohio*, 2005 WL 1651770 * 6 (S.D. Ohio Jul. 12, 2005)(same).

Jalowiec did not present a *Brady* claim concerning Raymond Smith, Danny Smith, Terry Hopkins, Sandra Williams, Lynne Altpater and Tammie Green to the Ohio courts. If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may

47

not properly serve as the basis for federal habeas relief.  *Lott*, 261 F.3d at 601 (citing *Wainwright*, 433 U.S. at 87).  Because Jalowiec has not raised these issues in an ineffective assistance of counsel claim, he has not shown cause and prejudice to excuse procedural default.  The Court finds this claim to be procedurally defaulted.  It will be addressed in section II.

### TWENTY-FIRST CLAIM FOR RELIEF

In his twenty-first claim for relief, Jalowiec contends  that the prosecutor, during closing arguments, violated the Sixth and Fourteenth Amendments.  More specifically, Jalowiec asserts that the prosecutor improperly vouched for the credibility of the State's witness, Michael Smith, and denigrated defense counsel.  In addition, Jalowiec contends that the prosecutor improperly argued, in the mitigation phase, that the jury can consider the nature and circumstances of the crime and, in the mitigation phase closing argument, that the mitigation factors must outweigh the aggravating circumstances beyond a reasonable doubt.  Jalowiec presented part of this claim to the Ohio court of appeals, but not to the Ohio Supreme Court.

In order to be considered under 28 U.S.C. § 2254, a claim must be presented to the state's highest court. *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Greeno v. Bradshaw*, 2007 WL 789578 * 6 (N.D. Ohio Mar. 14, 2007).  Portions of this claim were also raised in Jalowiec's *Murnahan* appeal as ineffective assistance of appellate counsel, but they were never specifically addressed.  However, the claim must be presented to the state courts under the same theory in which it is later presented in federal court.  *Lott*, 261 F.3d at 607, 611, 617, 619 (citing *Wainwright*, 433 U.S. at 87); *Wong*, 142 F.3d at 322.  *See Stojetz*, 389 F. Supp.2nd at 898-99 (underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at * 33 (claims first raised in an application to reopen are

48

procedurally defaulted because they were never presented to the Ohio courts under the same theory as they were raised in the petition). If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief. *Lott*, 261 F.3d at 601 (citing *Wainwright*, 433 U.S. at 87). The Court finds this claim to be procedurally defaulted. Accordingly, it will be addressed in section II.

## TWENTY-SECOND CLAIM FOR RELIEF

In his twenty-second claim for relief, Jalowiec asserts that he was denied due process of law in violation of the Fifth, Sixth and Fourteenth Amendments, when the prosecutor deliberately misstated evidence to the jury, argued facts not in evidence, mischaracterized defense arguments and made denigrating remarks regarding defense counsel during his closing arguments. The claim regarding misstatement of the evidence was raised for the first time in Jalowiec's *Murnahan* appeal as ineffective assistance of appellate counsel, but it was never specifically addressed. However, the claim must be presented to the state courts under the same theory in which it is later presented in federal court. *Lott*, 261 F.3d at 607, 611, 617, 619 (citing *Wainwright*, 433 U.S. at 87); *Wong,* 142 F.3d at 322. *See Stojetz*, 389 F. Supp.2nd at 898-99 (underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at * 33 (claims first raised in an application to reopen are procedurally defaulted because they were never presented to the Ohio courts under the same theory as they were raised in the petition). None of the other issues were raised at anytime in the state court. If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief. *Lott* 261 F.3d at 601 (citing *Wainright,* 433 U.S.

49

at 87). The Court finds this claim to be procedurally defaulted. Therefore, it will be addressed in section II.

## TWENTY-THIRD CLAIM FOR RELIEF

Jalowiec asserts in this claim for relief that the prosecutor improperly submitted his opinions about the case to the jury as facts. The following are the alleged improper statements:

> So what happens is, their conspiracy generates a plan in which Ron Lally would be hurried to a place where he would be kidnaped at gunpoint and taken to Cleveland and killed. Tr. Vol. I, pg. 475.
> So what happens is, Stanley Jalowiec goes over to Brian Howington's house at 112 Greenway Court in the city of Elyria. Tr. Vol. I, pg. 475.
> This night the defendant went over to Brian Howington's or actually Corrine Fike's apartment and they got her 1992 Chrysler LeBaron convertible and they took it. Tr. Vol. I, pgs. 475, 476.
> So Stanley and Howington go to Lally's apartment to pick him up and they smoke crack cocaine there and eventually they return about one in the morning to Corrine Fike's apartment at 112 Greenway and play pool for an hour. Tr. Vol. I, pg. 476.
> While this is going on, Raymond Smith, Danny Smith, Michael Smith, some of their girlfriends, a person by the name of Sharon Hopkins and Terry Hopkins are in and out of there, too. Tr. Vol. I, pg. 476.
> Well, at the same time Danny Smith is driving a car that contains Sharon Hopkins, Danny, Michael Smith and Raymond and they leave downtown Elyria drive their car out past the railroad tracks. Tr. Vol. I, pg. 476.
> Michael Smith became so upset about what he saw the defendant and his father do to Ron Lally. Tr. Vol. I, pg. 478.
> They attempted to place him in the trunk after they killed him. He was too large that his body is in the trunk of that car [sic] and that his body contains hairs from Joann Fike's dog who had also been in the car at one time or another. Tr. Vol. I, pg. 482.
> Corrine permitted Stanley, the defendant, and the two Smiths, Danny and Raymond, to use her car so they could do whatever they had to do in exchange for crack cocaine in the past. Tr. Vol. I, pg. 475.
> What happens at this point in time, Raymond Smith pages Stanley Jalowiec. Tr. Vol. I, pg. 476.
> Stanley knows then it is time to leave, so he takes Ron Lally with him and starts driving this convertible and he drives them out Middle Avenue. Tr. Vol. I, pg. 476.

Amend. Pet., pg. 111.

50

This claim, pertaining to the prosecutor allegedly improperly stating his personal opinions during opening statements, was raised during Jalowiec's *Murnahan* appeal as ineffective assistance of appellate counsel, but it was never specifically addressed.  However, the claim must be presented to the state courts under the same theory in which it is later presented in federal court.  *Lott*, 261 F.3d at 607, 611, 617, 619; *Wong,* 142 F.3d at 322.  *See Stojetz*, 389 F. Supp.2nd at 898-99 (underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at * 33 (claims first raised in an application to reopen are procedurally defaulted because they were never presented to the Ohio courts under the same theory as they were raised in the petition).  If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief.  *Lott,* 261 F.3d at 601 (citing *Wainwright*, 433 U.S. at 87).  The Court finds this claim to be procedurally defaulted.  As such, it will be addressed in section II.

## TWENTY-FOURTH CLAIM FOR RELIEF

In his twenty-fourth claim for relief, Jalowiec alleges that the prosecutor failed to provide statements of witnesses that were inconsistent with their testimony at his trial and the trial of Danny Smith, in violation of *Brady*.  The claim as to the alleged inconsistent testimony at Danny Smith's trial was raised in Jalowiec's Third Amended Petition for Post-conviction Relief.  Apx. Vol. IV-B, pgs. 38-50.  The trial court dismissed it as untimely and successive, and the court of appeals affirmed.  Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637 (Ohio App. 9th Dist. Mar. 6, 2002).  The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review.  *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground

51

for foreclosure of federal habeas review). *See Hodge*, 2005 WL 1651770 at * 6 (same). The other issues were not raised in the Ohio courts. If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief. *Lott,* 261 F.3d at 601 (citing *Wainwright*, 433 U.S. at 87). The Court finds this claim to be procedurally defaulted. As such, it will be addressed in section II.

### TWENTY-FIFTH CLAIM FOR RELIEF

In his twenty-fifth claim for relief, Jalowiec contends that the State violated due process of law under the Fifth, Sixth, Eighth and Fourteenth Amendments by failing to disclose the mental health of Michael Smith, documenting his lack of competency to testify, and by failing to disclose serious impeachment evidence. Petitioner likewise asserts a due process violation based on the State's alleged failure to reveal discrepancies as to what prompted Michael Smith to come forward as a State's witness, in violation of *Brady*. He presented the failure to disclose Michael Smith's mental health in his Second (fourth amended) Petition for Post-conviction Relief which was dismissed as a successive petition. Apx. Vol. IX, pg. 263; *Aff'd, State v. Jalowiec*, 2003 WL 21396681 (Ohio App. 9th Dist. Jun. 18, 2003). The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review. *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review). *See Hodge*, 2005 WL 1651770 at * 6 (same). The Court finds this claim to be procedurally defaulted. Accordingly, it will be addressed in section II.

## TWENTY-SIXTH CLAIM FOR RELIEF

Jalowiec contends that the prosecutor repeatedly misstated the sentencing statute of the Ohio Revised Code during *voir dire*.  He presented a claim for prosecutorial misconduct in the court of appeals, but not to the Ohio Supreme Court.  In order to be considered under 28 U.S.C. § 2254, a claim must be presented to the state's highest court.  *Buell*, 274 F.3d at 349; *Greeno*, 2007 WL 789578 at 6.  Prosecutorial misconduct was raised in Jalowiec's *Murnahan* appeal as ineffective assistance of appellate counsel, but it was never specifically addressed.  However, the claim must be presented to the state courts under the same theory in which it is later presented in federal court. *Lott*, 261 F.3d at 607, 611, 617, 619; *Wong,* 142 F.3d at 322. *See Stojetz*, 389 F. Supp.2nd at 898-99 (underlying constitutional claim cannot be preserved for review by being included in a Rule 26(B) application for reopening); *Sneed*, 2007 WL 709778 at * 33 (claims first raised in an application to reopen are procedurally defaulted because they were never presented to the Ohio courts under the same theory as they were raised in the petition).  If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief.  *Lott,* 261 F.3d at 601 (citing *Wainwright*, 433 U.S. at 87).  The Court finds this claim to be procedurally defaulted.  Accordingly, it will be addressed it in section II.

## TWENTY-SEVENTH CLAIM FOR RELIEF

In his twenty-seventh claim for relief, Jalowiec asserts that he was denied effective assistance of counsel because counsel failed to investigate and present an alibi defense.  This claim was submitted in his Third Amended Post-conviction Petition.  Apx. Vol. IV-B, pgs. 16-19.  The trial court dismissed it as untimely and successive, and the court of appeals affirmed.  Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637 (Ohio App. 9th Dist. Mar. 6, 2002).  The Ohio

court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review. *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review). *See Hodge*, 2005 WL 1651770 at * 6 (same). The Court finds this claim to be procedurally defaulted. It will be addressed in section II.

## TWENTY-EIGHTH CLAIM FOR RELIEF

Jalowiec contends in his twenty-eighth claim for relief that his counsel were ineffective in failing to seek discovery, inadequately cross-examining the State's witnesses, failing to adhere to a consistent defense theme, failing to request prior statements of witnesses, failing to object to Detective Leiby's comments on the record, failing to ensure recording of all proceedings, and waiving speedy trial rights. The issues pertaining to failing to seek discovery, inadequately cross-examining the State's witnesses and failing to request prior statements of witnesses were raised in Jalowiec's Petition for Post-conviction Relief. Apx. Vol. IV-B, pgs.19-22. The trial court dismissed it as untimely successive, and the court of appeals affirmed. Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637. The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review. *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review). *See Hodge*, 2005 WL 1651770 at * 6 (same). Failing to object to Leiby's comments on the record and failing to ensure recording of all proceedings were raised as underlying claims, but not in the context of ineffective assistance of counsel. The claim must be presented to the state courts under the same theory in which it is later presented in federal court. *Lott*, 261 F.3d at 607, 611, 617, 619; *Wong*, 142 F.3d at 322. The other

issues were not raised in the state courts. If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief. *Lott,* 261 F.3d at 601 (citing *Wainwright*, 433 U.S. at 87). Jalowiec did not raise his speedy trial issue as an independent ineffective assistance of counsel claim in the state court, so it cannot be used to excuse procedural default. The Court finds this claim to be procedurally defaulted and, therefore, it will be addressed in section II.

**TWENTY-NINTH CLAIM FOR RELIEF**

In his twenty-ninth claim for relief, Jalowiec asserts that he was denied effective assistance of counsel in the culpability phase of his trial by counsels' failure to move for change of venue based on extraordinary pretrial publicity. This claim was submitted in his Third Amended Post-conviction Petition. Apx. Vol. IV-B, pgs. 24-25. The trial court dismissed it as untimely and successive, and the court of appeals affirmed. Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002WL 358637. The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review. *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review). *See Hodge*, 2005 WL 1651770 at * 6 (same). The Court finds this claim to be procedurally defaulted. As such, it will be addressed in section II.

**THIRTIETH CLAIM FOR RELIEF**

In his thirtieth claim for relief, Jalowiec asserts that he was denied effective assistance of counsel by counsels' failure to investigate, obtain and utilize evidence supporting Jalowiec's innocence. Counsel allegedly failed to prepare and present an alibi defense based on the testimony of Raymond Pasterczyk, a family friend, and three family members; failed to use the statement of

55

Raymond Smith, a co-defendant, who stated that Jalowiec was not involved in the murder; and failed to investigate Michael Smith, a State witness, who could have been involved in the murder.  This claim was submitted in his Third Amended Post-conviction Petition.  Apx. Vol. IV-B, pgs. 27-31.  The trial court dismissed it as untimely and successive, and the court of appeals affirmed.  Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637.  The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review.  *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review).  *See Hodge*, 2005 WL 1651770 at * 6 (same).  The Court finds this claim to be procedurally defaulted and, therefore, it will be addressed in section II.

## THIRTY-FIRST CLAIM FOR RELIEF

Jalowiec alleges that his counsel were ineffective in the culpability phase of his trial, because lead counsel, Joseph C. Grunda, represented him while also representing an important State witness in another criminal case.  This claim was submitted in his Third Amended Post-conviction Petition.  Apx. Vol. IV-B, pgs. 32-33.  The trial court dismissed it as untimely and successive, and the court of appeals affirmed.  Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637.  The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review.  *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review).  *See Hodge,* 2005 WL 1651770 at * 6 (same).  The Court finds this claim to be procedurally defaulted.  As such, it will be addressed in section II.

## THIRTY-SECOND CLAIM FOR RELIEF

Jalowiec asserts that counsel was ineffective for failing to adequately and reasonably conduct *voir dire* in his case.  Counsel allegedly failed to question prospective jurors on the alleged extensive pretrial publicity to determine whether they could be impartial in reaching a verdict.  This claim was submitted in his Third Amended Post-conviction Petition.  Apx. Vol. IV-B, pgs. 25-26.  The trial court dismissed it as untimely and successive, and the court of appeals affirmed.  Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637.  The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review.  *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review).  *See Hodge*, 2005 WL 1651770 at * 6 (same).  The Court finds this claim to be procedurally defaulted and, therefore, it will be addressed in section II.

## THIRTY-THIRD CLAIM FOR RELIEF

In his thirty-third claim for relief, Jalowiec asserts that counsel was ineffective for failing to request a jury instruction regarding the pretrial publicity related to his and Raymond Smith's trial.  This claim was submitted in his Third Amended Post-conviction Petition.  Apx. Vol. IV-B, pgs. 26-27.  The trial court dismissed it as untimely and successive, and the court of appeals affirmed.  Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637.  The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review.  *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review).  *See*

*Hodge*, 2005 WL 1651770 at * 6 (same).  The Court finds this claim to be procedurally defaulted.  Accordingly, it will be addressed in section II.

## THIRTY-FOURTH CLAIM FOR RELIEF

In his thirty-fourth claim for relief, Jalowiec alleges that the failure of counsel to conduct an investigation into the background of Michael Smith, the State's key witness, and to adequately represent him at the guilt-innocence phase of the trial resulted in a conviction and sentence of death that does not comply with the minimum standards of reliability required under the Eighth and Fourteenth Amendments.  This claim was submitted in his Second (Fourth Amended) Post-conviction Petition.  Apx. Vol. IX, pgs. 50-60.  The trial court dismissed it as successive, and the court of appeals affirmed.  Apx Vol. IX, pgs. 263-67; *State v. Jalowiec*, 2003 WL 21396681.  The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review.  *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review).  *See Hodge*, 2005 WL 1651770 at * 6 (same).  The Court finds this claim to be procedurally defaulted.  It will be addressed in section II.

## THIRTY-FIFTH CLAIM FOR RELIEF-SUB-CLAIMS (a) - (j)

Jalowiec contends that the cumulative ineffective assistance of trial counsel violated his right to a fair and impartial trial as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.  Jalowiec sets forth ten instances in support of his contention:

    a.  Failure to object to jurisdictional venue;
    b.  Failure to object to significant portions of proceedings not transcribed;
    c.  Failure to rehabilitate jurors and object to unfounded challenges by the State;
    d.  Failure to object to co-defendant Raymond Smith's statement;
    e.  Failure to request expert assistance in determining cause of death;
    f.  Failure to cross-examine the State's witnesses;

58

      g.  Failure to object to Jury instructions;
      h.  Petitioner's unsworn statement;
      i.  Failure to object to closing arguments by the prosecution;
      j.  Cumulative ineffective representation.

Sub-claim (a), failure to object to jurisdictional venue, was never presented to the Ohio courts.

Failure to object to significant portions of proceedings not transcribed, sub-claim (b), was not

presented as an ineffective assistance of counsel claim.  The claim must be presented to the state

courts under the same theory in which it is later presented in federal court.  *Lott*, 261 F.3d at 607,

611, 617, 619; *Wong,* 142 F.3d at 322.  If a federal habeas claim has not been presented to a state

court for adjudication, then it is unexhausted and may not properly serve as the basis for federal

habeas relief.  *Lott,* 261 F.3d 594 at 601 (citing *Wainwright*, 433 U.S. at 87).  The Court finds these

sub-claims to be procedurally defaulted.  They will be addressed in section II.

      Respondent concedes that failure to rehabilitate jurors and object to unfounded challenges

by the State, sub-claim (c), failure to object to co-defendant Ray Smith's statement, sub-claim (d),

failure to request expert assistance in determining cause of death, sub-claim (e), and  counsels'

allegedly incorrect decision to have Jalowiec make an unsworn statement, sub-claim (h), were

presented to the Ohio Supreme Court on direct appeal.  Although the Court rejected these claims,

they were properly presented to the state court, and they are exhausted but not procedurally

defaulted.  Sub-claims (c), (d), (e) and (h) will be discussed in section III.

      Failure to cross-examine the State's witness, sub-claim (f), was raised in Jalowiec's Third

Amended Petition for Post-conviction Relief.  Apx. Vol. IV-B, pgs.19-22.  The trial court dismissed

it as untimely and successive, and the court of appeals affirmed.  Apx. Vol. IV-B, pgs. 282-85; *State*

*v. Jalowiec*, 2002 WL 358637.  The Ohio court's enforcement of a procedural bar is an "adequate

and independent" state ground on which the state can foreclose federal review.  *Emrick*, 2006 WL

59

3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review).  *See Hodge*, 2005 WL 1651770 at * 6 (same).  The Court finds this claim to be procedurally defaulted.  Hence, it will be addressed in section II.

Jalowiec also argues that his counsel were ineffective in:  (1) failing to object to the instruction on all statutory mitigating factors; (2) failing to object to the lack of a sympathy instruction; (3) failing to object to the instruction on consideration of life sentences; (4) failing to request a definition of the term "mitigation" at the penalty phase; and (5) failing to object to the guilt phase instruction that the "Defendant is charged as a principal offender."  Sub-claim (g).  These issues were raised in the Ohio Supreme Court on direct appeal.  Although the Court rejected these sub-claims, they were properly presented to the state court, and they are exhausted but not procedurally defaulted.  This sub-claim will be discussed in section III.

Petitioner likewise argues that:  (1) defense counsel were ineffective in failing to object to the prosecution's arguments to the jury at the end of both phases of Petitioner's capital trial; (2) the prosecution told the jury Petitioner failed to put on witnesses to refute the State's witnesses, implying that Petitioner failed to take the stand on his own defense; (3) during the mitigation phase, the prosecution argued, without objection, that the jury could consider the nature and circumstances of the crime, even though it was not raised as a mitigation factor; (4) the prosecution argued, without objection, that the mitigation factors must outweigh the aggravating circumstances beyond a reasonable doubt; (5) defense counsel failed to object when the prosecutor repeatedly vouched for the veracity of the State's witnesses, specifically for Michael Smith and Sandra Williams; (6) defense failed to object to the prosecutor's repeated references to a conspiracy to kill Ron Lally and

60

Petitioner's participation in that conspiracy, even though Petitioner had never been indicted for the crime of conspiracy; and (7) defense counsel failed in their representation of Petitioner when they permitted the prosecution to blatantly misstate the evidence to the jurors without raising so much as a single objection were not presented to the Ohio courts.  Specifically, trial counsel failed to object when the prosecutor falsely claimed that, (a), Petitioner planned for months to murder the victim, (b), the testimony of Patrolman Homoki, Carl Hartman and Sharon Hopkins linked Petitioner to the crime and (c), Ray Smith called the Petitioner from Mom's Open Kitchen at approximately 2:45-3:00 a.m.  Also, (8) counsel failed to object to the prosecutor's comments about Petitioner not testifying and not presenting evidence were not raised in the Ohio courts.  Sub-claim (i).  If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief.  *Lott*, 261 F.3d at 601 (citing *Wainwright*, 433 U.S. at 87).  Also, sub-claim (j), cumulative ineffective representation, was not submitted to the Ohio courts.  The Court finds these sub-claims to be procedurally defaulted.  As such, they will be addressed in section II.

## THIRTY-SIXTH CLAIM FOR RELIEF

In his thirty-sixth claim for relief, Jalowiec contends that he was denied effective assistance of counsel when his attorneys failed to investigate, prepare and present compelling mitigation evidence during the penalty phase of the trial.  This claim was submitted in his Third Amended Post-conviction Petition.  Apx. Vol. IV-B, pgs. 6-11.  The trial court dismissed it as untimely and successive, and the court of appeals affirmed.  Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637.  The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review.  *Emrick*, 2006 WL 3500005 at * 8

61

(procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review). *See Hodge*, 2005 WL 1651770 at * 6 (same). The Court finds this claim to be procedurally defaulted. Accordingly, it will be addressed in section II.

## THIRTY-SEVENTH CLAIM FOR RELIEF

Jalowiec contends that his counsel were ineffective in the penalty phase of his trial by failing to gather significant documentation revealing his history, background and character, and by failing to hire a qualified psychologist to examine him as to how his problems affected his behavior. This claim was submitted in his Third Amended Post-conviction Petition. Apx. Vol. IV-B, pgs. 11-13. The trial court dismissed it as untimely and successive, and the court of appeals affirmed. Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637. The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review. *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review). *See Hodge,* 2005 WL 1651770 at * 6 (same). The Court finds this claim to be procedurally defaulted. It will be addressed in section II.

## THIRTY-EIGHTH CLAIM FOR RELIEF

Jalowiec asserts that his trial counsel should have obtained the expert assistance of a neuropsychologist to examine him as to his history of head banging, head injury and possible brain damage. This claim was submitted in his Third Amended Post-conviction Petition. Apx. Vol. IV-B, pgs. 13-14. The trial court dismissed it as untimely and successive, and the court of appeals affirmed. Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637. The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state

can foreclose federal review. *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review). *See Hodge,* 2005 WL 1651770 at * 6 (same). The Court finds this claim to be procedurally defaulted and therefore it will be addressed in section II.

## THIRTY-NINTH CLAIM FOR RELIEF

In his thirty-ninth claim for relief, Jalowiec asserts that he was denied effective assistance of counsel, based upon their alleged failure to interview the State's mitigation rebuttal witnesses and/or present these witnesses on his behalf. This claim was submitted in his Third Amended Post-conviction Petition. Apx. Vol. IV-B, pgs.14-16. The trial court dismissed it as untimely and successive, and the court of appeals affirmed. Apx. Vol. IV-B, pgs. 282-85; *State v. Jalowiec*, 2002 WL 358637. The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review. *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review). *See Hodge*, 2005 WL 1651770 at * 6 (same). The Court finds this claim to be procedurally defaulted. Therefore, it will be addressed in section II.

## FORTIETH CLAIM FOR RELIEF

In his fortieth claim for relief, Jalowiec alleges that he was denied his constitutional right to effective assistance of trial counsel during *voir dire*, based on counsels' alleged failure to rehabilitate favorable jurors and to timely object to the excusal of jurors for cause based on their views of the death penalty. This claim was raised in the Ohio Supreme Court on direct appeal. Although the Court rejected his claim, it was properly presented to the state court, and it is exhausted but not procedurally defaulted.

## FORTY-FIRST CLAIM FOR RELIEF

Jalowiec asserts that his death sentence is unreliable and inappropriate because trial error, prosecutorial misconduct and ineffective assistance of counsel resulted in the admission of evidence of other acts and an extrajudicial statement of the co-defendant which implicated Jalowiec in the murder. The claim concerning an extrajudicial statement and the claim for ineffective assistance of counsel, based on counsels' alleged failure to interview the State's mitigation rebuttal witnesses and/or present witnesses on his behalf, have previously been determined to have been procedurally defaulted. The admission of other acts evidence was never presented to the state courts. If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief. *Lott,* 261 F.3d at 601 (citing *Wainwright*, 433 U.S. at 87). The Court finds this claim to be procedurally defaulted. As such, it will be addressed in section II.

## FORTY-SECOND CLAIM FOR RELIEF

Jalowiec generally alleges that he was denied his right to effective assistance of appellate counsel on direct appeal, based upon counsels' alleged failure to raise or adequately address substantial and well-established criminal law issues. More specifically, Jalowiec argues that counsel failed to raise the following issues:

Lead Trial Counsel's Conflict of Interest
1) Failure to address the appointment of lead counsel Joseph C. Grunda, and his representation of Petitioner, in clear conflict of interest with his simultaneous representation of State witness Terry Hopkins, during which time Grunda negotiated Hopkins' release from prison in exchange for his testimony against Petitioner.
2) Failure to address the involvement of Petitioner's capital trial judge, Kosma J. Glavas, in the granting of shock probation to Terry Hopkins in exchange for Hopkins' testimony against Petitioner.

Venue and Jurisdiction

64

Appellate counsel failed to raise numerous instances of ineffectiveness on the part of Petitioner's trial counsel occurring at Petitioner's trial relating to trial counsels' failure to move for a change of venue, and to properly and adequately address the defective indictment, and lack of jurisdiction.

Other Areas of Ineffective Representation of Trial Counsel

Appellate counsel further failed to raise other areas of ineffective representation of trial counsel:

3) Appellate counsels' failure, in their second assignment of error, to quote actual conversation held between trial court and trial counsel about the Petitioner being seen handcuffed so as to deprive the state appellate court a meaningful review, thus ruling claim as having no merit.

4) Failure to address State witnesses, Sandra Williams' and Lynne Altpater's prior witness statements that were excluded from in camera inspection.

5) Failure to address trial counsels' neglect to use written statements of numerous State witnesses during cross-examination, including Sandra Williams, Lynne Altpater, Carl Hartman, Terry Hopkins, Brian Howington, and Joann Fike.

6) Failure to address trial court's ruling that the two previously made contradictory, written statements of Joann Fike had no ultimate inconsistencies.

7) Failure to address the fact that most if not all of witness statements are exculpatory to the Petitioner and should have been turned over to the defense under Crim. R. 16.

Trial Court Error

Appellate counsel also failed to reference numerous instances of trial-court error, including:

8) Failure to address trial court's refusal to dismiss for cause Juror Patricia Repko and Alternate Noreen Hoover, despite their clearly stated predispositions to an automatic vote for the death penalty.

9) Failure to address trial court's violations of O.R.C. 2929.05, mandatory record of all criminal proceedings in a capital trial.

10) Failure to address trial court's violations of Ohio Criminal Rules of Procedure 25, which requires the recording of all criminal proceedings, including side-bar discussions, peremptory challenges, and jury polling.

11) Failure to only address one of many hearsay statements made over trial counsels' objections, including all the hearsay the court improperly allowed for Officer John Homoki (Tr. Vol. I, pgs. 525-30), Sandra Williams (Tr. Vol. I, pg. 514), Terry Hopkins (Tr. Vol. II, pgs. 570-78), and Michael Smith (Tr. Vol. II, pg. 778).

12) Failure to address Michael Smith being allowed by the trial court, over trial counsel's objection, to speculate on who actually shot Ronald Lally. Tr. Vol. II, pg. 841.

13) Failure to address the prosecutor's attempts to fashion a conspiracy between Petitioner and the Smiths through testimony of numerous witnesses, even though Petitioner had not been charged with conspiracy. This was done through the testimony of Officer Ashley (Tr. Vol. I, pgs. 492-98), Sandra Williams (Tr. Vol. I,

65

pgs. 508-15), Lynne Altpater (Tr. Vol. I, pgs. 535-40), and Officer Homoki (Tr. Vol. I, pgs. 521-31). 14) Failure to address trial court's erroneous trial phase instructions to the jury implying that one is guilty of the crime if one fails to act. The court stated this five times in the guilt phase instructions. Tr. Vol. II, pgs. 994, 995.

15) Failure to address trial court's improper instructions to the jury in the guilt phase under a vicarious liability theory in a death penalty case.

## Prosecutorial Misconduct

Appellate counsel also failed to reference numerous instances of prosecutorial misconduct:

16) Failure to address the various exhibits offered by the State to inflame the jurors: State Exhibits 2B, 2C, 2F, 2G, 2I, 2K, 2L, 2M.

17) Failure to cite instances of witness vouching by the prosecutor in closing arguments which prevented the state appellate court from seeing the pattern of misconduct. Tr. Vol. II, pgs. 922, 924, 925-26, 927-28, 929, 932, 973.

18) Failure to address the prosecutor's statements to jury during closing arguments that this was a conspiracy case, even though there was no allegation of conspiracy in Petitioner's capital indictment. Tr. Vol. II, pgs. 920-21.

19) Failure to address the personal claims made by the prosecutor against the Petitioner, that had no basis in the evidence: Petitioner wanted to help his drug source and that he wanted to keep the drug empire going. Tr. Vol. II, pg. 974.

20) Failure to address attributions by the prosecutor against the Petitioner even though there was no evidence to support such claims: photo exhibits show Petitioner did enough damage by himself to cause Lally's death (Tr. Vol. II, pg. 975), photos demonstrate Petitioner's handiwork (Tr. Vol. II, pg. 982), evidence shows Petitioner and others were planning the murder for months (Tr. Vol. II, pg. 976), number of people committed acts which could only have been committed by a single individual, Patrolman Homoki linked the defendant to crime (Tr. Vol. II, pgs. 977-78), Carl Hartman linked defendant to crime (Tr. Vol. II, pg. 977-78), Sharon Hopkins linked defendant to the crime (Tr. Vol. II, pg. 977-78), Terry Hopkins linked defendant to the crime (Tr. Vol. II, pgs. 977-78), Raymond Smith called defendant from restaurant when no such evidence was introduced (Tr. Vol. II, pg. 978) and coroner proved the murder to be the defendant's handiwork. (Tr. Vol. II, pg. 975).

21) Failure to fully address the point of fact that the evidence adduced throughout trial was woefully insufficient to sustain a conviction against the defendant.

## Other Appellate Ineffective Assistance

Appellate counsel also failed to present a meritorious brief to the state appellate court for a meaningful review of the more serious errors which occurred in the guilt phase and failed to raise numerous claims with merit so as to prevent the state appellate court from overturning this conviction.

Jalowiec raised this claim in the Ohio Supreme Court in his *Murnhan* appeal. Respondent concedes that it was properly presented to the state court, and it is exhausted but not procedurally defaulted.

## FORTY-THIRD CLAIM FOR RELIEF

In his forty-third claim for relief, Jalowiec contends that he was denied his right to due process in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments when the Ohio Supreme Court applied improper methods of review in denying relief for federal constitutional violations. This issue was never presented to the Ohio courts. If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief. *Lott*, 261 F.3d at 601 (citing *Wainwright*, 433 U.S. at 87). The Court finds this claim to be procedurally defaulted. Hence, it will be addressed in section II.

## FORTY-FOURTH CLAIM FOR RELIEF

Jalowiec asserts in his forty-fourth claim for relief that the Ohio post-conviction relief procedures are meaningless. He raised this issue in his appeal from the trial court's denial of his Third Amended Petition for Post-conviction Relief. The appellate court ruled that this claim was waived, based on Petitioner's failure to raise it in the trial court. *State v. Jalowiec*, 2002 WL 358637. He presented it again in his Second (fourth amended) Petition for Post-conviction Relief, which was dismissed as a successive petition. Apx. Vol. IX, pg. 263; *Aff'd, State v. Jalowiec*, 2003 WL 21396681. Therefore, because this claim was dismissed in the state courts as barred by *res judicata,* and because the issue was brought in a successive petition, it is procedurally defaulted. The Ohio court's enforcement of a procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review. *Emrick*, 2006 WL 3500005 at * 8 (procedural

default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review).  *See Hodge*, 2005 WL 1651770 at * 6 (same).  Therefore, it will be addressed in section II.

## FORTY-FIFTH CLAIM FOR RELIEF

Jalowiec asserts that Ohio's death penalty statutory scheme is unconstitutional on its face as applied to him, because it results in an improper deprivation of rights under the Eighth and Fourteenth Amendments.  Respondent concedes that the forty-fifth claim for relief was properly presented to the state court, and it is exhausted but not procedurally defaulted.

## FORTY-SIXTH CLAIM FOR RELIEF

Jalowiec contends that the cumulative effect of all the errors at pretrial, trial, sentencing and appellate proceedings violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. This claim was not raised in the state courts.  If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis for federal habeas relief.  *Lott*, 261 F.3d at 601 (citing *Wainwright*, 433 U.S. at 87).  The Court finds this claim to be procedurally defaulted.  Accordingly, it will be addressed in section II.

## FORTY-SEVENTH CLAIM FOR RELIEF

Jalowiec contends that he is actually innocent; and that execution of the sentence of death would violate the Eighth and Fourteenth Amendments to the United States Constitution and fundamental considerations of justice.  Jalowiec argues that this claim was included in his first post-conviction litigation, in claim thirteen and some part of claim fourteen of his *pro se* Third Amended Petition.  Respondent states that the United States Supreme Court has never decided whether the requirement that a habeas corpus petitioner exhaust state avenues of relief applies to an

"independent" claim that the petitioner is "actually innocent," and that, therefore, the execution would violate the Eighth and Fourteenth Amendments. As such, Respondent does not contend that this claim was procedurally defaulted. Procedural default is a waivable defense. *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th. Cir. 2004), *cert. denied*, 544 U.S, 925 (2005)(citing *Trest v. Cain,* 522 U.S. 87, 89 (1997)); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 2005). Further, if Jalowiec were actually innocent of the crimes, the Court's failure to consider the claims would result in a fundamental miscarriage of justice. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993). Therefore, the Court may review the merits of this claim.

## CAUSE AND PREJUDICE ANALYSIS

Having determined that Jalowiec has procedurally defaulted all or parts of thirty-nine of his claims, it is now necessary to determine whether he has demonstrated the requisite cause and prejudice necessary to excuse the defaults.

Jalowiec sets forth two arguments in an attempt to establish the requisite cause and prejudice: (1) that there is no valid default on any of his claims raised in his post-conviction petitions because Ohio did not invoke a rational, valid state procedural rule to avoid ruling on the merits of these claims; and (2) that any default is excused by "actual innocence."

Ohio's post-conviction statutes contain a provision pertaining to second or successive petitions that is relevant to the present case. Ohio Revised Code Section 2953.23(A) provides:

> Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
> (1) Either of the following applies:
> (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

69

(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

The Court must determine whether Ohio's prohibition on second or successive post-conviction relief petitions constitutes an adequate and independent state ground upon which federal relief may be foreclosed. Although the Sixth Circuit has not yet ruled on this issue, unpublished opinions of the district courts are instructive. Ohio's time limitation requirement for filing post-conviction actions and its rule that all available claims be asserted in the first proceeding further the state's interest in finality and in "ensuring that claims are adjudicated at the earliest possible opportunity." *Emrick*, 2006 WL 3500005 at * 8 (procedural default based on second or successive petition is adequate and independent state ground for foreclosure of federal habeas review). *See Hodge*, 2005 WL 1651770 at * 6 (same). Jalowiec moved to strike his original and first two Amended Post-conviction Petitions. Hence, after the first petition which was no longer valid, the additional amended petitions were successive.

Jalowiec filed his original Petition for Post-conviction Relief on March 17, 1997, followed by Amended Petitions on April 17, 1997, August 16, 1997 and February 22, 2000. Ohio Revised Code Section 2953.23(F) provides:

[a]t any time before the answer or motion is filed, the petitioner may amend the petition with or without leave or prejudice to the proceedings. The petitioner may amend the petition with leave of court at any time thereafter. In accordance with R.C. 2953.21(F), a trial court has discretion to grant or deny a defendant leave to amend. Absent an abuse of that discretion, an appellate court will not overturn the trial court's decision.

70

Jalowiec filed three Amended Petitions, all without leave of court. Although R.C. § 2953.23(F) is silent as to how many petitions can be filed without applying for leave, the statute should pertain to one amendment. *See State v. Barrett*, 2004 WL 298679, *1 (Ohio App. 9 Dist. Feb.18, 2004) (R.C. 2953.21 relates to the amendment of one's first petition for post-conviction relief). Ohio Revised Code Section 2953.21(A)(2) states:

> A petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or the date on which the trial transcript is filed in the supreme court if the direct appeal involves a sentence of death. If no appeal is taken, the petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal.

The trial transcript was filed with the court of appeals on September 16, 1996, and with the Ohio Supreme Court on June 17, 1998. The court ruled that, because the case went to the court of appeals and was not a capital case which bypassed the court of appeals, the Petition for Post-conviction Relief should have been filed by March 14, 1996. Apx. Vol. IV-B, pg. 2. The judge, however, giving Jalowiec the benefit of the doubt, found that the Third Amended Petition was required to be filed on December 24, 1998. Because the Third Amended Petition was filed on February 22, 2000, more than 180 days after the filing of the transcript with the Ohio Supreme Court, the judge considered it to be untimely. *Id.* The Judge further ruled that Jalowiec did not satisfy the criteria set forth in R.C. § 2953.23 to enable the filing of a successive petition. *Id.* Upon reviewing the issue, the court of appeals agreed. *State v. Jalowiec*, 2002 WL 358637 at * 1.

The trial judge's ruling would be correct if the Third Amended Petition was successive and was the only amended petition to be considered. Jalowiec's First Amended Petition was filed before the State responded to the original Petition. Therefore, he had a right to file it. However, his

71

counsel filed a Second Amended Petition without leave.  Jalowiec moved to strike all of these Petitions, and filed a Third Amended Petition *pro se*.  Apparently, the trial court considered the first three Petitions to be stricken.  It followed that the Third Amended Petition was successive.  Because Jalowiec did not satisfy the criteria required to allow for the filing of a successive petition, the court properly dismissed it.

The Second Petition (fourth amended) for Post-conviction Relief was filed after the court ruled on the Third Amended Petition.  It was definitely a successive petition. Because Jalowiec did not satisfy the conditions for filing a successive Petition, the court of appeals affirmed the trial court's ruling of dismissal.  *State v. Jalowiec*, 2003 WL 21396681.

Jalowiec contends that any default is excused by the actual innocence exception to procedural default.  In *House v. Bell*, 126 S.Ct. 2064, 2076-77 (2006), the United States Supreme Court ruled that, under the actual innocence exception to the procedural bar rule, habeas petitioners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  The Court in *Schlup* stated:  "For Schlup, the evidence must establish sufficient doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice unless his conviction was the product of a fair trial."  *Id.*, 513 U.S. at 316.

In Jalowiec's forty-seventh claim for relief, the Court will find that he has not shown that he unquestionably established his innocence, or that he is probably innocent.  The same reasoning also shows that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  Therefore, actual innocence cannot be used to excuse any procedural default.

72

## STANDARD OF REVIEW

Two of the AEDPA's revisions are significant here.  These revisions are contained in subsections 2254(d) and 2254(e)(1).  Revised subsection 2254(d) specifically addresses the power of federal courts to grant habeas relief with respect to claims that were adjudicated on the merits by the state court, and limits that power to two instances:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This revision reinforces respect for state court judgments, which is vital in our federal system.  As the Supreme Court stated in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*

The term "contrary," the Court said, is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed."  *Id.* at 405.  Therefore, the

73

Court determined the text of § 2254(d)(1) suggests the state court's decision must be substantially different from relevant Supreme Court precedent.  *Id.*

With regard to the "unreasonable application," the Supreme Court rejected a "reasonable jurist" standard for determining the "unreasonable application" language of the statute, stating that this standard would tend to mislead federal habeas courts by focusing attention on the subjective inquiry rather than an objective one. *Id.* at 410.  Citing the Fourth Circuit's interpretation of the "unreasonable application" clause, the Court determined a state-court decision:

> involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407.

The revision contained in subsection 2254(e)(1) is also significant.  This subsection sets forth the standard of review regarding state court factual findings.  Subsection (e)(1) establishes a presumption of correctness for all factual findings, rather than those determined after a hearing and evidenced by a writing as provided under the former version of section 2254.  Moreover, this presumption is stronger than that contained in the former version of section 2254, because it can be rebutted only by a showing of "clear and convincing evidence," rather than simply "convincing evidence." 28 U.S.C.A. § 2254(e)(1).[9]

---

[9]  Under the former version of section 2254 (which is part of Chapter 153), a state court's factual findings "shall be presumed to be correct," provided the factual findings were made "after a hearing on the merits of [the] issue" and were "evidenced by a written finding, written opinion, or other reliable and adequate written indicia." 28 U.S.C. § 2254(d) (1994). This presumption may be overcome, however, by a showing of "convincing evidence that the factual determination by the

## II. MERITS OF DEFAULTED CLAIMS

Although the Court finds all or some portion of thirty-nine of Petitioner's claims for relief are procedurally defaulted and should be dismissed, the Court will consider the merits of these defaulted claims in an effort to promote judicial efficiency and preserve judicial resources.  Such an approach is consistent with the procedural default doctrine, for, as the Supreme Court reiterated, "in the habeas context, a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter." *See Day v. McDonough*, 547 U.S. 198 (2006); *Trest v. Cain*, 522 U.S. 87 (1997) (citing *Lambrix v. Singletary*, 520 U.S. 518 (1997) and *Coleman*, 501 U.S. at 730-31).

### FIRST CLAIM FOR RELIEF- SUB-CLAIM (b)

In his first claim for relief, Jalowiec alleges that a plain reading of the indictment verifies that he is charged for a homicide that occurred in Lorain County, Ohio.  However, the record demonstrates that Petitioner was tried for a homicide that took place in Cleveland, Cuyahoga County, Ohio.  Thus, allegedly, the indictment is defective and should be deemed void.  Jalowiec cites only Ohio law in support of this sub-claim.

An indictment must state the elements of the offense, along with "a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."  *Hamling v. United States*, 418 U.S. 87, 117-18 (1974) (citing *United States v. Hess*, 124 U.S. 483, 487 (1888)); *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005).  Specifically, the indictment must:  (1) include all of the elements of the charged

State court was erroneous." *Id.*

offense and must give notice to the defendant of the charges he faces, and (2) be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts. *Id.* at 413. "An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007)(quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir.1992)).

Rule 7(B) of the Ohio Rules of Criminal Procedure, just as Rule 7(c) of the Federal Rules of Criminal Procedure, does not require venue to be alleged in the indictment. Although venue must be proved at trial, it need not be set forth in the indictment. *United States v. Branan*, 457 F.2d 1062, 1065 (6th Cir. 1972).

The Court concludes that Jalowiec has not shown that the indictment was insufficient because of incorrect venue. Further, subject matter jurisdiction, personal jurisdiction and venue will be addressed in sub-claim 1(a) in section III, wherein the court will find Jalowiec's claim as to those issues to be without merit.

## FOURTH CLAIM FOR RELIEF

Jalowiec alleges that his Sixth, Eighth and Fourteenth Amendment rights were violated when, on two occasions, the trial court admitted evidence of a co-defendant's confession inculpating Jalowiec in the offense. The first occurred in the prosecutor's opening statement. The prosecutor stated:

> It is obvious to Detective Leiby that Danny Smith does not have real first hand knowledge as to what went on in Cleveland, says he has to deal with the people involved. On July 5, 1994, Raymond Smith comes in and makes a statement. Now Raymond Smith is in a precarious position. He wants to help his son who is a leader of this little drug world. Raymond Smith is a crack addict himself. His life has fallen apart and he cannot exist without Danny or having crack cocaine. However, he wants

> to preserve his son's freedom, but he doesn't want to take away his own, so he tells Detective Leiby a story which reverses the roll of Ron Lally and himself as to who had the gun, placed them all three there together and finally gives up the name of Stan Jalowiec as the person that was there with him.

Tr. Vol. I, pgs. 481-82.  On rebuttal during the sentencing phase of the trial, Detective Alan Leiby

testified as follows:

> Danny wanted some kind of deal on his drug charges and at that point I told him I wasn't  going to deal with anybody anymore, I wasn't going to talk to anybody anymore until somebody said something truthful and that I would not talk to Raymond anymore until he gave me the name of the person that was in the cemetery with him when Ron Lally was killed.
> I received a phone call - I believe it was 2 days later, I may be off a little on the time frame which Raymond told me it was Stan.
> Q. Stan being?
> A. Stan Jalowiec.
> Q. And that would be the third person there?
> A. That is correct.
> Q. Did you tape that conversation?
> A. I did.

Tr. Vol. III, pg. 268.

The Sixth Amendment Confrontation Clause grants a criminal defendant the right to confront the witnesses against him.  *Pointer v. Texas*, 380 U.S. 400, 406 (1965).  "The right of confrontation includes the right to cross examine witnesses."  *United States v. Macias*, 387 F.3d 509, 515 (6th Cir. 2004)(quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)).

Jalowiec asserts that the statements set forth above violate the Supreme Court's ruling in *Bruton v. United States*, 391 U.S. 123 (1968).  In that case, the Court held that a defendant is deprived of his Sixth Amendment right of confrontation when a non-testifying co-defendant's incriminating statement is admitted during a joint trial.  In addition, a violation occurs even if the jury is instructed to consider the statement only as to the co-defendant.  *Id*. at 135-136.  The *Bruton* rule applies not only to the non-testifying co-defendant's confession, but also to statements made

77

by the co-defendant incriminating the defendant. *Pettyjohn v. Newberry*, 2000 WL 1033027 * 4 (6th Cir. Jul. 17, 2000) (citing *United States v. Bartle*, 835 F.2d 646, 651 (6th Cir. 1987)). The rule does not apply, however, where the defendant and co-defendant are tried separately. *United States v. Johnson*, 378 F.Supp.2nd 1051, 1063 (N.D. Iowa 2003)(citing *Gray v. Maryland*, 523 U. S. 185, 194-95 (1998)). That is, the statements could be used if the defendants are tried separately, or if the co-defendant is subjected to cross-examination. *Howard v. Moore*, 131 F.3d 399, 416 (4th Cir. 1997).

Applying those standards to this case, Jalowiec was tried alone, so *Bruton* is not applicable.

Confrontation Clause issues are also subject to the standards set forth in a fairly recent United States Supreme Court case. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that testimonial statements of a witness who does not testify at trial are inadmissable, unless the witness was unavailable to testify and the defense had a prior opportunity to cross-examine. *United States v. Mooneyham*, 473 F.3d 280, 286 (6th Cir. 2007). The term "testimonial" is defined as material such as affidavits, custodial examinations, prior testimony where the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorally. *Crawford*, 541 U.S. at 51. They are usually contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions. *Id.* at 52. The statements of Jalowiec's co-defendant were made as a confession and, as such, are considered testimonial.

On February 28, 2007, the United States Supreme Court decided that *Crawford* announced a new rule that is generally applicable only to cases that are still pending on direct review. *Whorton v. Bockting*, 127 S. Ct. 1173, 1180 (2007). A new rule of procedural law cannot be applied

78

retroactively, unless it is a watershed rule of criminal procedure implicating fundamental fairness and accuracy of the criminal proceeding.  *Id.* at 1181.  Upon examining the *Crawford* rule, the Supreme Court held that it is not a watershed ruling that would apply retroactively.  *Id.* at 1184.

The governing standard in effect before *Crawford*, and applicable to Jalowiec, was set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980), *overruled by Crawford v. Washington*, 541 U.S. 36 (2004).  In *Roberts*, the Supreme Court stated:

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.*, 448 U.S. at 66.  The Supreme Court has held that an accomplice's confession which inculpates a defendant is presumptively unreliable.  *See Lilly v. Virginia*, 527 U.S. 116, 134 (1999) (accomplice's confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule).  Even so, the statement can be admitted as substantive evidence of the defendant's guilt, only if it falls within a firmly-rooted hearsay exception or is supported by a showing of particularized guarantees of trustworthiness. *Hill v. Hofbauer*, 195 F Supp. 2d 871, 879-80 (E.D. Mich. 2001), *aff'd*, 337 F.3d 706, (6th Cir. 2003)(citing *Lee v. Illinois*, 476 U.S. 530, 543-44 (1986)).

In this case, the co-defendant's son was trying to make a deal on his drug charges. Apparently, the detective told him that he would not talk to him or to his father, until someone said something truthful or named the other person in the cemetery where Lally was murdered.  Two days later, the co-defendant called the detective and gave up Jalowiec's name.  The statement was not made while the co-defendant was in police custody.  The jury could evaluate the reliability of the

information, and the co-defendant's motives to give up Jalowiec. *Calvert v. Wilson*, 288 F.3d 823, 832 (6th Cir 2002)(statements made while co-defendant was in police custody, in response to police officers' leading questions, which were asked without any contemporaneous cross-examination by adverse parties, did not satisfy the guarantes of trustworthiness). The Court finds that, under these circumstances, a particularized guarantee of trustworthiness is not absent.

A writ may be granted on the erroneous admission of hearsay evidence, if the erroneous admission "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638(1993); *see also Hill v. Brigano*, 199 F.3d 833, 846-47 (6th Cir.1999) (quoting *Nevers v. Killinger*, 169 F.3d 352, 371 (6th Cir.1999)). The state court's decision is subject to harmless error analysis. *See Chapman v. California*, 386 U.S. 18, 24 (1967). The harmless error standard applies even if a federal court in a habeas corpus case is the first to review the matter. *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir.1999). In considering the error, a court should consider the importance of the witness's testimony, whether the testimony was cumulative, the extent of cross-examination, whether corroborating or contradictory evidence existed, and the overall strength of the prosecution's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Jamison v. Collins*, 100 F. Supp.2d 647, 752 (S.D. Ohio 2000). If the reviewing judge is in "grave doubt" about whether constitutional error is harmless, it is not. *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995); *Hill v. Hofbauer*, 337 F.3d 706, 718 (6th Cir. 2003).

The prosecutor's opening statement must be considered as harmless error. He was not a witness. Further, the court instructed the jury that opening statements were not evidence. Evidence of Jalowiec's participation in the murder existed in the testimony of Michael Smith.

The state court ruled that the rebuttal testimony given by the detective that the co-defendant named Jalowiec as a participant in Lally's murder was admissible, because Jalowiec opened the door to rebuttal.  It was not considered under the Sixth Amendment.  Nonetheless, this Court finds the admission of this testimony to be harmless error.  Michael Smith testified about Jalowiec's presence and participation in Lally's murder.  Both he and the detective were subject to cross-examination. There was abundant evidence against Jalowiec.  Thus, the Court finds this claim to be without merit.

**FIFTH CLAIM FOR RELIEF - SUB-CLAIMS (a), (b)**
**AND**
**SIXTH CLAIM FOR RELIEF**

Although sub-claim (a) of the fifth claim for relief has been preserved for federal habeas review, the fifth and sixth claims for relief are related and would be best discussed together. Jalowiec asserts in his fifth claim for relief that the trial court erred in allowing, over objection, testimony by several witnesses concerning statements made to them by co-defendant Danny Smith. The testimony was permitted under Ohio Evid. Rule 801(D)(2)(e), which pertains to statements made by a co-conspirator in furtherance of the conspiracy, upon independent proof of the conspiracy.  Jalowiec argues that this rule is inapplicable because he was not indicted on conspiracy charges, and, at the time that the statements were offered, there had not been independent proof of a conspiracy.

In his sixth claim for relief, Jalowiec contends that the admission of a co-conspirator's statements did not meet the requirements of Ohio Evid. R. 801(D)(2)(e), which violated his right to confront the witnesses against him.  Specifically, he alleges that the statements should not have been admitted under the Ohio rule, because the State failed to make a *prima facie* case of conspiracy as to Lally's murder.

81

The Ohio Supreme Court examined the statements of Danny Smith elicited by the testimony of Lynne Altpeter, Carl Hartman, Sandra Williams, and Terry Hopkins, allowing their testimony on the ground that the prosecution established a *prima facie* case of conspiracy.

> Lally told Elyria police officer Homoki at Mr. Hero's in Elyria that both Jalowiec and Danny Smith had threatened him. This occurred a month after Raymond Smith and Danny Smith had been arrested as a result of Lally's controlled drug buy. While at Mr. Hero's, Lally told Officer Homoki that "these individuals" had threatened his life because he was going to testify against them. Danny Smith had also pointed to Lally at that time and said: "That snitch will get his."
>
> Accordingly, the following statements by Danny Smith were made in the course of, and in furtherance of, the conspiracy. Lynne Altpater testified that Danny Smith asked her, about a month before Lally's murder, for some poison for someone who was "going to testify against him." Carl Hartman testified that in November 1993, Danny Smith offered him a BMW and cash to make sure "Ron didn't make it to the stand," but when Hartman refused, Danny Smith told him that "Stanley and his dad" would do it for him.
>
> Sandra Williams testified that Danny Smith told her that "it would be a shame if anything happened to [Lally's] family" or to her. He also said that he knew that Lally's family "lived in a trailer and it would be a shame if it got blowed up." Testimony about threats is not hearsay. Evid.R. 801(C) and Comment.
>
> Terry Hopkins testified that on the morning of the murder, Danny Smith told him "they did it" and that Jalowiec told him, "They stomped him and ran him over with a car." Further, he testified that Jalowiec and Raymond and Danny Smith were "[k]ind of like bragging about" murdering Lally and that Danny Smith stated that he wanted the person killed because "he had wore a wire on him on a drug sale." Testimony of bragging by the Smiths tended to implicate them, not Jalowiec, and thus was harmless, even if not admissible as statements against interest or statements of coconspirators.
>
> We find that the prosecution established a prima facie case of conspiracy. The early admission of statements that could have been deemed hearsay at the time they were elicited was rendered harmless, since independent proof of the conspiracy was admitted into evidence before the case was submitted to the jury. *Carter*, 72 Ohio St.3d at 550, 651 N.E.2d at 972; see, also, *Smith,* 87 Ohio St.3d at 433-435, 721 N.E.2d at 106-107. We reject Proposition of Law II.

*State v. Jalowiec,* 91 Ohio St.3d at 227.

It is not necessary for a charge of conspiracy to have been brought in order for co-conspirator hearsay to become admissible.  *United States v. Zandi*, 769 F.2d 229, 236 (4th Cir. 1985).  The

Confrontation Clause is not violated by an out-of-court statement if "the evidence falls within a firmly rooted hearsay exception." *Roberts*, 448 U.S. at 66.  The Supreme Court has held that the exception in the Federal Rules of Evidence for co-conspirators' statements is a firmly rooted exception to the hearsay rule. *Bourjaily v. United States*, 483 U.S. 171, 182-84 (1987).  Ohio Rule of Evidence 801(D)(2)(e) is similar to Federal Rule of Evidence 801(d)(2)(E).  Both rules provide that "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" is not hearsay.  Because the co-conspirator exception is a firmly rooted exception to the hearsay rule, a court need not independently determine the reliability of the statement. *Id.* at 183.[10] Co-conspirators' statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy.  *Id.* at 180.

The Court finds that the facts set forth in the Ohio Supreme Court's opinion consisted of sufficient evidence to show that a conspiracy existed to murder Lally.  The opinion states:

> Independent evidence established that a conspiracy to kill Lally existed on the night of his murder based on the testimony of Michael Smith and on Sharon Hopkins's and Howington's testimony that Jalowiec arranged to get Lally in the car with Raymond Smith. Sharon Hopkins testified about events that occurred within hours of the murder, including where she was with Raymond, Danny, and Michael Smith, and that she heard from Jalowiec that Michael Smith was in the LeBaron. Brian Howington testified that he was with Jalowiec and Lally on the night of the murder, and that Jalowiec and Lally left in the LeBaron around 1:00 a.m. Michael Smith's testimony implicated Jalowiec, Raymond Smith, and Danny Smith in the Lally murder. Michael Smith confirmed that Jalowiec, Raymond Smith, and Danny Smith made arrangements to get Lally into the car, before Lally would have a chance to testify against them.

*State v. Jalowiec*, 91 Ohio St.3d at 226-27.  In Ohio, the early admission of potential hearsay statements is harmless error when independent proof of the conspiracy was admitted into evidence

---

[10]   Ohio Evid. R. 801(D)(2)(e) does not allow the use of the hearsay statement to establish proof of a conspiracy. *State v. Carter*, 72 Ohio St.3d 545, 550 (1995).

before the case was submitted to a jury.  *Carter*, 72 Ohio St.3d at 550; *See also*, *State v. Smith*, 87 Ohio St.3d 424, 434 (2000).

Thus, the decision of the Ohio Court was not contrary to, or an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court. A s to Homoki and Michael, this claim is without merit.

## SEVENTH CLAIM FOR RELIEF

Jalowiec contends that the trial court erroneously permitted the coroner to testify as to how the victim's trunk and upper head wounds could have been inflicted.  According to Jalowiec, the medical expert testified as to possibilities, instead of expressing his opinion in terms of probabilities.

Matters of state law may not provide a basis for federal habeas relief.  *Estelle*, 502 U.S. at 67-68.  Jalowiec cited only state cases in his support of this claim.  His argument was not based on federal law.  Thus, this claim is without merit.

## EIGHTH CLAIM FOR RELIEF

In his eighth claim for relief, Jalowiec asserts that, by allowing statements based on the co-conspirator's exception to the hearsay rule, and, by erroneously instructing the jury on causation, the court, in effect, amended the indictment.  Because Jalowiec was not charged with conspiracy, he argues that allowance of co-conspirator's statements under Ohio Evid. R. 801(D)(2)(e) deprived him of his rights under the Fourteenth Amendment.  Further, according to Jalowiec, the court's jury instruction on cause allowed the jury to convict him merely on proof of negligence.

The Ohio Supreme Court held in *State v. Nevius*, 147 Ohio St. 263, 276 (1940):

It is not necessary that the conspiracy be to commit the crime charged in the indictment... It is not necessary that the conspiracy be one to commit the identical offense charged in the indictment, or even a similar one; it being enough that the

84

offense charged in the indictment was one which might have been contemplated as
a result of the conspiracy.

The trial court did not commit error by allowing statements of the co-conspirator, even in the
absence of a charge of conspiracy in the indictment. *United States v. Martinez*, 430 F.3d 317, 327
n. 4 (6th Cir. 2005), *cert. denied*, 547 U.S. 1034 (2006)(coconspirator statements may be admissible
under Rule 801(d)(2)(E) even when no conspiracy has been charged).

The Sixth Circuit, in *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000), rejected this same
causation instruction argument. As in *Byrd*, the trial judge in Jalowiec's case instructed the jury that
the causation requirement is met when death is the natural and foreseeable result of the defendant's
actions or the failure to act. Tr. Vol. II, pg. 994. The trial judge continued: "The defendant is also
responsible for the natural and foreseeable consequences or results that follow, in the ordinary
course of events, from the act or failure to act." *Id.* In his immediately preceding instruction, the
trial court informed the jury that "[n]o person can be found guilty of aggravated murder unless he
or she specifically intended to cause the death of another." Tr. Vol. II, pg. 993. The causation
instruction did not weaken the requirement of specific intent. *See Byrd*, 209 F.3d at 527. The Court
finds that this claim to be without merit.

## NINTH CLAIM FOR RELIEF

In his ninth claim for relief, Jalowiec contends that his Sixth, Eighth and Fourteenth
Amendment rights were violated when he was viewed in shackles by several potential jurors, and
no *voir dire* was held to determine what effect the viewing had upon those prospective jurors.

In *Illinois v. Allen*, 397 U.S. 337, 344 (1970), the United States Supreme Court held that a
defendant should not be shackled, except as a last resort, because it is possible that the sight of
shackles might have a significant effect on the jury's feelings about the defendant. *Estelle v.*

85

*Williams*, 425 U.S. 501, 504 (1976).  A defendant should be free of bonds during trial, except in extraordinary circumstances.  *Kennedy v. Cardwell*, 487 F.2nd 101, 109 (6th Cir. 1973).  However, the Sixth Circuit has held that exposure of a defendant in restraints does not require relief, unless the defendant can show actual prejudice.  *United States v. Alsop*, 12 Fed. Appx. 253, 258 (6th Cir. 2001); *United States v. Waldon*, 206 F.3d 597, 607 (6th Cir. 2000) (citing *United States v. Pina*, 844 F.2d 1, 8 (1st Cir.1988)); *Lakin v. Stine*, 358 F. Supp.2d 605, 617 (E.D. Mich. 2005), *aff'd.*, 431 F.3d 959 (2005), *cert. denied*, 547 U.S. 1118 (2006).  Actual prejudice must be shown where "[t]he conditions under which defendants were seen were routine security measures, rather than situations of unusual restraint such as shackling of defendants during trial."  *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir.1991).

After bringing the issue of the jurors' view of Jalowiec in shackles to the court's attention, the judge suggested that counsel *voir dire* jurors to discover any possible prejudice.  Jalowiec's counsel declined to do so.  However, case law reflects that, when the jurors' view of the defendant in custody was brief, inadvertent, and outside the courtroom, the risk of prejudice is slight.  *Lovesay v. Hurley*, 2005 WL 2277441 * 13 (S.D. Ohio Sep. 19, 2005).  Further, common sense dictates that, in a capital case, jurors are likely to believe that the accused would be subjected to security restraints in any event.  Because Petitioner has failed to demonstrate actual prejudice, the court finds this claim to be without merit.

### TENTH CLAIM FOR RELIEF

Jalowiec contends that he was denied due process of law when the trial court refused to record all proceedings in violation of the Sixth and Fourteenth Amendments.  He argues that he is

86

entitled to transcripts of peremptory challenges, pretrial conferences and sidebars during trial, as well as a polling of the jury.

The Sixth Circuit has held that federal habeas relief is available because of a missing transcript only where the petitioner can show prejudice. *Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002)(citing *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986)). The court in *Bransford* stated: "Although this court recognizes the difficulty in demonstrating prejudice where the transcripts are missing, petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal." *Bransford,* 806 F.2d at 86. *See Jackson v. Renico*, 320 F. Supp.2d 597, 602-03 (E.D. Mich. 2004), *aff'd.*, 179 Fed. Appx. 249 (6th Cir. 2006)(prejudicial error not shown concerning failure to transcribe jury instructions). *See also*, *Bell v. Withrow*, 2000 WL 973680 * 4 (E.D. Mich. Jun. 30, 2000)(failure to transcribe testimony of prosecution witness not prejudicial).

Here, Jalowiec has not shown prejudice. He merely states that a transcript of the missing proceedings is necessary to show that many errors existed in the proceedings. The Court finds this claim to be without merit.

### ELEVENTH CLAIM FOR RELIEF - SUB-CLAIMS (a), (b)

In his eleventh claim for relief, Jalowiec contends that he was deprived of his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments due to errors committed by the trial court. According to Petitioner, the trial judge improperly presided over the criminal proceedings against a state witness in Jalowiec's case, while Jalowiec's trial was still in progress.

Petitioner also alleges that one of his attorneys had a potential conflict because of his representation of both the Petitioner and the witness against him. The trial judge was never asked to address this alleged conflict during Jalowiec's trial. A defense attorney must be loyal to his

client.  *Strickland  v. Washington*, 466 U.S 668, 688 (1984).  But a conflict alone is insufficient to justify relief.  *Reedus v. Stegall*, 197 F. Supp.2d 767, 782 (E.D. Mich. 2001) (citing *United States v. Hall*, 200 F.3d 962, 966 (6th Cir. 2000)).  Counsel must actively represent conflicting interests that adversely affect counsel's performance.  *Id*., (citing *Strickland*, 466 U.S. at 692); *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).  *See Mickens v. Taylor*, 535 U.S. 162, 173-74 (2002)(defendant must establish that a conflict of interest adversely affected counsel's performance).  In addition to inconsistent interests, the petitioner must show that the attorney made a choice between alternative courses of action, such as elucidating evidence detrimental to one client but helpful to the other.  *Id. See Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987)(if counsel does not make a choice, the conflict is merely hypothetical).

Having thoroughly reviewed the record in this case, the Court finds that there is nothing to suggest that the trial judge was biased.  Furthermore, Jalowiec has failed to show that there was a connection between any lenient treatment of the witness against him, in exchange for his testimony.  Similarly, there is no indication that counsel's performance was adversely affected by the duel representation.  Based upon the forgoing, the Court finds this claim to be without merit.

## TWELFTH CLAIM FOR RELIEF

In his twelfth claim for relief, Jalowiec asserts that he was denied due process and a fair trial when the trial court exhibited unmitigated bias towards him through its abuse of discretion as to the following five instances:[11]

    a.      Jury's Viewing of Petitioner in Shackles

---

[11]  Respondent did not address this claim.

88

This issue concerning the shackling of Jalowiec was raised and rejected in Jalowiec's ninth claim for relief.

b.      Restrictions Placed on Petitioner's Counsel

During trial, the court would allow only the attorney doing the questioning to object. Jalowiec argues that this constitutes plain error, because it restrained counsel from providing effective assistance.

In order to prevail, Jalowiec must demonstrate that he is in custody in violation of the Constitution, laws or treaties of the United States.  In this instance, Jalowiec has not submitted any argument or legal support based on the Constitution.  To the contrary, Jalowiec cites only state cases, which are not on point.

c.      Restrictions on Counsel's Use of Witness's Prior Statements

Jalowiec alleges that, during cross-examination, the court wrongfully restricted defense counsels' use of the prior statements of State witnesses.  All prior recorded statements made by various witnesses allegedly should have been turned over to Petitioner as part of the discovery process.  Rule 16(B)(1)(g) provides in pertinent part:

> Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement. If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
> If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

Here, the court held an *in camera* inspection of the witness statements.  Jalowiec admits that such statements were provided to him, so that he had an opportunity to cross-examine the witnesses.

89

In any event, error under the Jencks Act is usually deemed harmless in the absence of any apparent inconsistencies between the statement and the testimony given by its author on direct examination. *See United States v. Carr*, 965 F.2d 408, 412 (7th Cir. 1992); *United States v. Welch*, 817 F.2d 273, 274 (5th Cir. 1987).[12]  The Court finds this claim to be without merit.

        d.        Permitting Leiby's Comments on Record

The trial court allegedly improperly permitted Detective Leiby to make substantive comments on the record, most often during sidebars.  Because there is no indication that the jury heard any of his comments, the Court finds such occurrences to be without any constitutional significance.

        e.        Court's Failure to Disqualify/Recuse Judge Glavis and Improper Quashing of Subpoena

Jalowiec contends that Judge Glavis should have recused himself from his trial on the basis that the defense intended to call him as a witness concerning *ex parte* discussions he had with Detective Leiby regarding the Jalowiec case and the Lally homicide.  A request for disqualification was made to the Ohio Supreme Court, which denied the request on March 8, 1996.  Subsequently,

---

[12] The Jencks Act provides in pertinent part:
(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

another common pleas court judge, following an evidentiary hearing, quashed the subpoena issued by the defense to Judge Glavis.  Jalowiec asserts that such conduct violated his constitutional rights.

Jalowiec has not fully explained why the judge's alleged conversation with Detective Leiby should have resulted in the judge's recusal, or how the quashing of the subpoena issued to Judge Glavis was improper.  His alleged conversation with Detective Leiby may have been harmless.  In any event, errors of state law do not provide a basis for federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The twelfth claim for relief is without merit.

**THIRTEENTH CLAIM FOR RELIEF - SUB-CLAIM (b)**[13]
**AND**
**FOURTEENTH CLAIM FOR RELIEF**[14] **- SUB-CLAIM (a)**

Jalowiec claims that the court's admission of gruesome, prejudicial and cumulative photographs and other exhibits into evidence deprived him of his rights to a fair trial and due process of law under the Sixth, Eighth and Fourteenth Amendments.  More specifically, Jalowiec argues that the court wrongfully admitted the following irrelevant exhibits (fourteenth claim, sub-claim (a)):

> a) The recorded drug purchase between the Smith's and Ronald Lally was admitted over objection. Tr. Vol. II, pg. 848.
> b) A previous arrest report for drugs of Raymond Smith was admitted over objection. Tr. Vol. II, pgs. 848-49.
> c) A report of a prior drug arrest of Danny Smith was also admitted over objection. Tr. Vol. II, pg. 849.
> d) The former indictment of Raymond Smith for drug law violations was also admitted over objections. Tr. Vol. II, pgs. 849-50.
> e) The former indictment of Danny Smith on drug law violations was admitted over objections. Tr. Vol II, pg. 850.

---

[13]  Claim 13(b), involving photographs, will be discussed in section III.

[14]  The Thirteenth and Fourteenth Claims for Relief involve similar issues and will be discussed together.

f) Lighters and cigarettes found inside a cemetery on the ground were admitted over objection even though there was never any testimony that anyone at all smoked. Tr. Vol. II, pgs. 851-52.

g) Loose hairs found on the ground of the cemetery were also admitted over objections. Tr. Vol, pg. 852.

According Jalowiec, the prosecutor allegedly was unable to link him to any of these exhibits.

In *Bourjaily*, the Supreme Court held that a trial judge, in determining whether a conspiracy existed, may consider any evidence whatsoever, including the hearsay statements sought to be admitted. *Bourjaily,* 483 U.S. at 181.  Further, evidence can be admitted under the co-conspirator exception to hearsay rule, even if the indictment does not contain a conspiracy count. *United States v. Lewis*, 759 F.2nd 1316, 1347 (8th Cir. 1985).  The co-conspirator exception to the hearsay rule requires a showing that a conspiracy existed, but not necessarily the one charged. *United States v. Maliszewski*, 161 F.3d 992, 1008 (6th Cir. 1998).  Most of the exhibits referred to by Jalowiec can be considered linked to a conspiracy to murder Lally, because Lally was going to testify against Danny Smith in his drug case.  Admittance of the remainder of exhibits amounted to harmless error.

Improper admittance of photographs was a subject in both the thirteenth and fourteenth claims for relief.  Claims relating to most of the photographic evidence were not procedurally defaulted.  Because the law as to their admittance is similar, the Court will discuss this issue under section III.  The Court concludes that Jalowiec's fourteenth claim for relief -sub-claim (a) is without merit.

### FIFTEENTH CLAIM FOR RELIEF

In his fifteenth claim for relief, Jalowiec alleges that the trial court's charge on causation is in direct contradiction of R.C. § 2903.01(D).[15]  According to Jalowiec, the jury would not have

---

[15]  See the Eighth Claim for Relief.

known whether to utilize the specific intent portion of the statute, or the lesser burden of the

causation and foreseeability charge.  Foreseeability allegedly has no place in a capital murder case.

> The charge provided:
>
> Cause is an essential element of the offense charged in Count One.
> Cause is an act, or a failure to act, which in the natural and continuous sequence
> directly produces the death, and without which it would not have occurred.
> Cause occurs when the death is the natural and foreseeable result of the act, or the
> failure to act.
> The Defendant's responsibility is not limited to the immediate or most obvious result
> of the Defendant's act, or failure to act.
> The Defendant is also responsible for the natural and foreseeable consequences or
> results that follow, in the ordinary course of events, from the act.

*State v. Jalowiec*, 91 Ohio St.3d at 231.

> The Ohio Supreme Court considered this claim under plain error, stating:
>
> We have stated that "[a] single instruction to a jury may not be judged in artificial
> isolation but must be viewed in the context of the overall charge."  *State v. Price*
> (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the
> syllabus.  Here, the overall charge indicated that the jury was required to find
> specific intent to kill and prior calculation and design before it could convict
> Jalowiec of aggravated murder.  The instruction on foreseeable consequences does
> not constitute error, let alone plain error, since other instructions given by the court
> limited any prejudicial effect.  *State v. Getsy* (1998), 84 Ohio St.3d 180, 196, 702
> N.E.2d 866, 883.

*State v. Jalowiec*, 91 Ohio St.3d at 231.

The Ohio Supreme Court has cautioned against using a foreseeability charge in a capital

murder case.  To that end, the Ohio Supreme Court has stated, "The usefulness in murder cases of

the foreseeability instruction is questionable, especially given its potential to mislead jurors." *State

v. Getsy*, 84 Ohio St.3d 180, 196 (1998)(quoting *State v. Burchfield*, 66 Ohio St.3d 261, 263 (1993)).

The Sixth Circuit likewise has recognized the incompatibility of a charge on causation with the

requirement that a defendant have a specific intent to kill.  *Byrd*, 209 F.3d at 527.  Having

recognized that, however, as long as the overall instructions correctly included the elements of purposefulness and specific intent, the improper charge on causation does not undermine the specific intent requirement.  *Id.*; *Campbell v. Coyle*, 260 F.3d 531, 537 (6th Cir. 2001).

Habeas relief is not available because of an instruction that is improper under state law.  The Supreme Court stated in *Estelle*:

> The only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."

*Id.*, 502 U.S. at 72-73 (citations and footnote omitted).  In the instant case, the trial judge instructed the jury to find specific intent to kill and prior calculation and design before it could convict Jalowiec.  In the Sixth Circuit, such instruction is all that is necessary to overcome any error caused by the controversial causation charge.  Accordingly, the Court concludes that this claim is without merit.

## SIXTEENTH CLAIM FOR RELIEF

In his sixteenth claim for relief, Jalowiec contends that the following jury instruction, given during the penalty phase of the trial, contains reversible, constitutional error:

> You should recommend the sentence of death if you unanimously, that is, all twelve of you, find by proof beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigating factors.
> If you do not so find, you shall unanimously (all twelve) recommend either a life sentence with parole eligibility after serving twenty years of imprisonment, or a life sentence with parole eligibility after serving thirty years of imprisonment.

Tr. Vol. III, pg. 340; *State v. Jalowiec*, 91 Ohio St.3d at 234.

94

The Supreme Court decided *Mills v. Maryland*, 486 U.S. 367, 384 (1988) and *McKoy v. North Carolina*, 494 U.S. 433, 435 (1990), finding that sentencing instructions that require jurors to unanimously find and agree on specific mitigating factors are unconstitutional. More specifically, in *McKoy*, the Supreme Court found that North Carolina's unanimity requirement prevents the jury from considering, in deciding whether to impose the death penalty, any mitigating factor that the jury does not unanimously find. *Id.* Following its decision in *Mills*, the Court in *McKoy* held that North Carolina's unanimity requirement violates the Constitution by preventing the sentencer from considering all mitigating evidence. *Id.* The Sixth Circuit explained in *Davis v. Mitchell*, 318 F.3d 682, 687 (6th Cir. 2003), *cert. denied*, 542 U.S. 945 (2004), that aggravating circumstances must be found unanimously, because they are the elements of the defense that resulted in the death penalty sentence. Of course, all elements of a criminal offense must be found by a jury unanimously. *Id.* at 688. Mitigating factors are not elements of the crime, but they are evidence relevant to a defendant's character or other circumstances of the offense that might convince the sentencer not to impose the death sentence. *Id.* Thus, a state may not require unanimity as to mitigating factors. *Id.* A finding with regard to a mitigating factor may be made by only one member of the jury. *Id.*

Ohio's death penalty statute requires that, in order to recommend a sentence of death, the jury must unanimously find that the aggravating circumstances outweigh any mitigating factors found in the case. R.C. § 2929.04(D)(2). If there is no finding that the death sentence is appropriate, the jury must recommend imprisonment for a unanimously agreed life term taken from two options.

The Ohio Supreme Court has ruled that, pursuant to Ohio's death penalty statutes, an individual juror can prevent the death penalty by finding that mitigating factors are present in the case that he or she believes are not outweighed by the aggravating circumstances beyond a

95

reasonable doubt. *State v. Brooks*, 75 Ohio St.3d 148, 162 (1996). The court stated that jurors should be so instructed. *Id.* In summary, the jury does not have to decide unanimously whether a mitigating factor exists that is not outweighed by an aggravating circumstance beyond a reasonable doubt. Once the jury decides that no aggravated circumstance outweighs a mitigating factor beyond a reasonable doubt, they must agree upon which of the two life imprisonment options to recommend, if they are able. Rejection of the death penalty need not be unanimous.

This Court must determine whether there is a likelihood that the jury applied the instruction in question in a way that violates the Constitution. The Ohio Supreme Court, in considering this claim stated:

> Jalowiec's failure to object to this instruction waived all but plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus. The instruction does not constitute plain error. *See State v. Bey* (1999), 85 Ohio St.3d 487, 498, 709 N.E.2d 484, 496; *State v. Goff* (1998), 82 Ohio St.3d 123, 128-129, 694 N.E.2d 916, 921-922; *State v. Mitts* (1998), 81 Ohio St.3d 223, 233, 690 N.E.2d 522, 531. Unlike in *Brooks*, 75 Ohio St.3d at 159, 661 N.E.2d at 1040, the jury in this case was not told that it had "to determine unanimously that the death penalty was inappropriate before you can consider a life sentence." Instead, "[t]he jury was free to consider a life sentence even if jurors had not unanimously rejected the death penalty." *State v. Taylor* (1997), 78 Ohio St.3d 15, 29, 676 N.E.2d 82, 95.

*State v. Jalowiec*, 91 Ohio St.3d at 234. The trial court's instruction followed R.C. § 2929.04(D)(2), instructing that the jury should recommend the sentence of death if it unanimously found by proof beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors. The jury was not told that it was required to unanimously find that a death sentence was inappropriate before it could consider a life sentence. The jury instruction did not preclude the jury from considering the mitigating factors. Thus, the Court concludes that this claim is without merit.

## NINETEENTH CLAIM FOR RELIEF - SUB-CLAIM (b)

Jalowiec asserts that he was denied a fair and impartial trial by the improper removal of jurors whose views on the death penalty would not prevent or substantially impair the performance of their duties.  Jurors Kowalski, Fobell, and Buck informed the trial court that they would not be able to vote for the death penalty.[16]

The Ohio Supreme Court determined this issue as follows:

> In Proposition of Law VI, Jalowiec argues that he was deprived of a fair trial and an impartial jury because several jurors were improperly excused based on their views of the death penalty.  Specifically, Jalowiec claims that the court improperly excluded prospective jurors Porter, Eubanks, Kowalski, Fobell, and Buck.
> In the court of appeals, Jalowiec raised the issue of improper excusal only for prospective jurors Porter and Eubanks.  Therefore, Jalowiec has waived claims of error concerning Kowalski, Fobell, and Buck.  *Williams*, 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph two of the syllabus.
> Prospective juror Porter questioned the ability of anyone to impose a death sentence, based on the Bible.  She first indicated that she could not consider death as a sentencing option.  Porter later said several times, unequivocally, that she could vote for a death sentence but then said she could not sign a death warrant.  The trial court did not abuse its discretion in excusing Porter, since her views on the death penalty would have substantially impaired her performance as a juror.  *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984, paragraph three of the syllabus.
> Prospective juror Eubanks initially indicated that he could "probably" sign a death verdict.  Upon further questioning, he equivocated, then indicated that his death-penalty views would substantially impair his ability to fairly consider a death sentence, then equivocated again.  The excusal for cause of prospective juror Eubanks was not an abuse of discretion.

*State v. Jalowiec*, 91 Ohio St.3d at 22.

The Supreme Court has ruled that it is proper to ask prospective jurors about their views concerning the death penalty during *voir dire* in capital cases.  *Witherspoon v. Illinois*, 391 U.S. 510, 520-23 (1968).  "Such 'death qualifying' questions would ensure the impartiality of jurors by

---

[16]  The Ohio Supreme Court held that Jalowiec waived claims of error as to Kowalski, Fobell and Buck.

allowing the state to properly exercise challenges for cause against potential jurors unwilling to return a capital sentence." *Stanford v. Parker*, 266 F.3d 442, 452 (6th Cir, 2001)(citing *Witherspoon,* 391 U.S at 520-23). A juror may be excused for cause if "the jurors' views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Williams*, 380 F.3d at 953 (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). The trial court's decision as to the impartiality of a prospective juror is a factual determination entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). *Id.* at 953; *Bowling v. Parker*, 344 F.3d 487, 519 (6th Cir. 2003). Because of the trial judge's proximity to the venire, determination of credibility and demeanor that is involved in *voir dire*, the judge's decision to excuse or not is deferential on review. *Id.* Prospective jurors vary in education and experience and cannot be expected to express themselves carefully. *Williams*, 380 F.3d at 958 (citing *Patton v. Yount*, 467 U.S. 1025, 1039 (1984)). In this situation, deference is required, because only the trial judge can determine which of the answers is said with the greatest comprehension and certainty. *Patton*, 467 U.S. at 1040; *Williams*, 380 F.3d at 958-59. The finding of the trial court on the question of a juror's impartiality should not be set aside by a reviewing court, unless the error is manifest. *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

Jalowiec presented the following statements of the jurors in question in his Amended Petition:

> During her initial questioning, Juror Porter indicated she would have difficulty with the death penalty. Tr. Vol. I, pgs. 43-50. Upon further questioning by the court as to whether or not she could impose the death penalty, Ms. Porter said that if the facts were there, she would vote for the death penalty. Tr. Vol. I, pg. 51. Upon further questioning by defense counsel, Ms. Porter specifically stated that "yes, I guess, yes, not I guess, yes, I would" impose the death penalty. Tr. Vol. I, pg. 54. Upon questioning by the prosecutor, Ms. Porter once again stated that she could vote for the death penalty. Tr. Vol. I, pgs. 55-56. Upon further questioning by the

prosecutor, Ms. Porter stated that she could not impose the death penalty.  Tr. Vol. I, pg. 57.  The court then excused her from the panel.

During his initial questioning by defense counsel, Juror Kowalski stated that he could fairly consider all three sentencing options.  Tr. Vol. I, pgs. 211-12.  During his initial questioning by the court, as well as the prosecutor, Mr. Kowalski was not sure if he could impose the death sentence.  Tr. Vol. I, pgs. 218-21.  Juror Kowalski finally stated that "but I don't think at this time I could consider it, [the death penalty]."  The court then excused him from the panel.  Tr. Vol. I, pg. 225.

Neither the court or defense counsel inquired of Juror Fobell, only the prosecutor did.  Juror Fobell was not sure if he could impose the death penalty.  The court excused Juror Fobell from the panel.

During initial questioning by defense counsel, Juror Eubanks indicated that his views on the death penalty equaled out, and that he could consider all three sentencing options.  Tr. Vol. I, pgs. 334-35.  When questioned by the court, Mr. Eubanks stated that "yes" he could sign his name condemning the defendant to death.  Tr. Vol. I, pgs. 339-40.  Instead of leaving well enough alone, defense counsel questioned Eubanks and he stated he doubted that he could vote for death.  Tr. Vol. I, pg. 340.  The court then excused juror Eubanks from the panel.

Throughout his questioning, Juror Buck failed to state that he could not consider the death penalty.  When questioned as to whether he could sign his name to a piece of paper which called for the Petitioner to die, Juror Buck stated "I don't think so."  Tr. Vol. I, pg. 382.  When questioned as to whether his views would substantially impair his ability to pick the death penalty, Juror Buck stated: "Yes, I think so."  Tr. Vol. I, pg. 382.  Finally, when asked if he could consider all three sentencing options, with death being the last option, Juror Buck stated: "it is hard to say.  I don't think I could do the last one."  Tr. Vol. I, pg. 385.

Amend. Pet., pgs. 94-95.

Examination of the jurors' responses reveals that, in the case of Porter and Eubanks, the reviewing court reasonably deferred to the credibility determinations of the trial court.  As to the other jurors, even though it appeared that some portions of the jurors' responses may be viewed as expressing a willingness to follow the law, the totality of their responses provides ample support for the trial judge's decision to excuse them for cause.  *Frazier v. Mitchell*, 188 F. Supp.2d 798, 819 (N.D. Ohio 2001), *rev'd on other grounds*, 343 F.3d 780 (6th Cir 2003).  This claim is without merit.

**TWENTIETH CLAIM FOR RELIEF**
**TWENTY-FIRST CLAIM FOR RELIEF**
**TWENTY-SECOND CLAIM FOR RELIEF**
**AND**
**TWENTY-THIRD CLAIM FOR RELIEF**

The twentieth, twenty-first, twenty-second and twenty-third claims for relief involve claims of prosecutorial misconduct.  The United States Supreme Court has held that, in order to prove a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The determination is made by examining the totality of the circumstances.  *Hawkins v. Coyle*, 2005 WL 1684022 *18 (S.D. Ohio Jul.19, 2005) (citing *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)).

In reviewing a claim of prosecutorial misconduct, the court must first determine whether the prosecutor's statements were improper.  *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002).  If the statements are found to be improper, four factors are considered in weighing the extent of a prosecutor's misconduct.  Those factors are:  (1) the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; (2) whether they are isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused.  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997).  The prosecutorial misconduct must likely have had an impact on the outcome of the trial.  *Byrd*, 209 F.3d at 529.  The Sixth Circuit has stated that, "for denial of due process to exist, the misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Pritchett,* 117 F.3d at 964.

100

The standard to prove prosecutorial misconduct, set forth above, will be applied as to the twentieth, twenty-first, twenty-second and twenty-third claims below.

## TWENTIETH CLAIM FOR RELIEF

In the twentieth claim for relief, Jalowiec asserts that he was deprived of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments, when the State withheld exculpatory *Brady*, *Napue* and *Kyles* materials.  The following statements were allegedly withheld by the prosecutor:

> Co-defendant Danny Smith's recorded statement of January 7, 1995;
> Co-defendant Danny Smith's multiple recorded statements/conversations with Carl Hartman;
> State's witness Terry Hopkins's recorded statement of January 4, 1995;
> State's witness Terry Hopkins's 1st recorded statement of January 6, 1995;
> (it appears, though it is not entirely clear, that Hopkins's 2nd recorded statement of January 6, 1995 was provided during Petitioner's trial)
> State's witness Lynne Altpater's recorded statement of January 6, 1995;
> State's witness Lynne Altpater's recorded statement of January 19, 1995;
> Witness Tammie Green's grand jury testimony, in which she testifies under oath that she was not with Sharon Hopkins on the night in question (in fact does not even know who Sharon Hopkins is), and that she and Danny did not drop off Ray and Michael Smith that night on South Middle Avenue past the railroad tracks, but instead dropped off Ray Smith at Wilkes Villa;[17]
> Witness Michael Smith's recorded phone call on February 21, 1996.

A prosecutor is required to turn over material that is both favorable to the defendant and material to guilt or punishment.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The prosecutor's duty to disclose includes impeachment evidence, exculpatory evidence, and evidence known only to police investigators.  *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).  Materiality is relevant to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial.  *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994).  In order to prove a *Brady* violation, the petitioner

---

[17]  Although this issue was on the list of inconsistent statements in the Traverse, there was no further discussion by either party.  Also, the Amended Petition included the issue that Sandra Williams' statement of January 3, 1995 was not provided.  This issue was not included in the Traverse and not discussed.  Therefore, they will not be considered here.

must show that:  (1) the evidence in question was favorable to the defendant; (2) the evidence was suppressed by the State; and (3) the defendant was prejudiced by the suppression.  *Strickler*, 527 U.S. at 281-82.

In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme Court emphasized four aspects of materiality.  First,

> a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal... The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Id.* at 434.  Second, materiality is not a sufficiency of the evidence test.  Even if the evidence, including the suppressed exculpatory evidence, is sufficient to support a conviction, a *Brady* claim may still be successful.  *Id.* at 435.  A *Brady* violation is proven "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Id.*  Third, once a *Brady* violation is found, there is no need for further harmless-error review.  *Id*.  A *Brady* violation is never harmless.  *Bell v. Bell*, 460 F.3d 739, 750 (6th Cir. 2006).  Fourth, when materiality is assessed, the court must look at the suppressed evidence collectively, not item by item.  *Kyles*, 514 U.S. at 436.  As long as the evidence was disclosed during trial, *Brady* is not violated unless the defendant is prejudiced by the late disclosure.  Thus, *Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose.  *United States v. Blood*, 435 F.3d 612, 627 (6th Cir. 2006)(citing *Bencs*, 28 F.3d at, 560).  *See United States v. Word*, 806 F.2d 658, 665 (6th Cir.1986).

Co-defendant Danny Smith stated in his recorded statement of January 7, 1995 that he never thought that Jalowiec was involved in this homicide, until people brought up his name.  According

to Jalowiec, if he was part of a so-called conspiracy to kill Lally along with Danny and Raymond Smith, then Danny would have known that Jalowiec was involved.  This allegedly would have contradicted the State's attempts to prove conspiracy and to, in turn, prove venue.  Respondent argues that Jalowiec makes no attempt to explain materiality, simply arguing that Ohio's criminal rule required its release.  The Court finds this statement to be material.  Had this statement been disclosed prior to trial or at trial, the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

Jalowiec argues that co-defendant Danny Smith's multiple recorded statements/conversations with Carl Hartman detail the attempts to bribe Hartman and to manipulate a State's witness.  Based on these conversations, Danny Smith was convicted of bribery and sentenced to twelve years in prison.  Allegedly, these conversations could have been used to put Jalowiec's case in a different light – it was not Raymond Smith and Jalowiec that orchestrated this plan, but the cunning and manipulative Danny Smith.  Respondent points to Jalowiec's argument that these statements should have been provided before trial under Ohio Criminal Rule 16(B)(1)(g).  Of course, the court cannot grant a writ based on Ohio law.  The Court agrees with Respondent's further argument that the statements are not exculpatory, in view of the State's evidence that Danny Smith threatened Lally in the presence of Jalowiec, and that the motive for killing Lally was to prevent him from testifying against Danny and Raymond Smith.

State's witness Terry Hopkins recorded a statement in January 4, 1995, and another in January 6, 1995, that Jalowiec contends should have been provided.  He argues that Hopkins made inconsistent statements, i.e., in Hopkins' first statement, he stated that Jalowiec told him that he shot Lally, but the gun jammed; he also immediately implicated Michael Smith, but then later said that

he was not sure if Mike was there.  He also stated that Danny told him that "they did it" on the night in question.  (Dkt. 97, Rule 5 Vol. II, pg. 56, 58-60).  However, in his second statement, on January 6, 1995, he stated that no one said, "they did it."  Tr. Vol. II, pg. 583.  At trial, Hopkins stated that it was not Jalowiec who told him that he shot Lally, but Raymond Smith.  Tr. Vol. II, pg. 587.  And, in his final statement, also on January 6, 1995, he changed his story as to where he went the night of the murder – he did not go to a hotel that night as he had said previously, he went to his sister, Sharon's, apartment after stopping at Danny's place briefly.  (Dkt. 97, Rule 5 Vol. II, pg. 77).  These are some of the many discrepancies in Hopkins' statements.  Jalowiec's trial counsel allegedly should have had these statements, in order to effectively impeach Terry Hopkins' testimony during trial.

The Court finds that Jalowiec has not shown Hopkins' January statements to be material.  Under cross-examination, Hopkins admitted that, when first questioned by the police, he denied knowing anything about the murder; that anything he said concerning the timing of events on the night of the murder could be inaccurate, because he was drunk; that, with respect to the conversations later occurring in Danny Smith's apartment, he had previously stated, under oath, that "he could not remember who specifically said what;" that he was subsequently told by Detective Leiby that, if he made a statement, Detective Leiby would speak on his behalf in favor of probation; and that, in fact, he was later given shock probation.  Tr. Vol. II, pgs. 587-588; 597; 603; and 609-610.  The transcript shows that Hopkins testified at trial at different times that Danny Smith said they did it, and also that Jalowiec, Raymond and Michael Smith said they did it.  Tr. Vol. II, pgs. 574, 576-77 and 601.  In fact, Hopkins said that Jalowiec described exactly what he did to help murder Lally.  Tr. Vol. II, pgs. 576-77.

104

Jalowiec complains about State's witness Lynne Altpater's recorded statements of January 6, 1995 and January 19, 1995. In Jalowiec's trial, the prosecutor called State witness Lynn Altpater to the stand for the sole purpose of testifying that Danny Smith ordered some poison to be used upon some person or persons unknown to her. Altpater testified that Danny Smith asked her for poison. Tr. Vol. I, pg. 537. According to Altpater, Smith wanted said poison, "Because he said he needed it to take care of somebody." Tr. Vol. I, pg. 538. And, "He wanted to take care of a person." Tr. Vol. I, pg. 538. When asked why, Altpater replied, "Yeah, actually because this person was going to cause him to be in a lot more trouble then [sic] what he was." Tr. Vol. I, pg. 538. However, in Altpater's previous statement, on January 6, 1995, she stated that Danny Smith told her that this poison was to kill some cats that were hanging around his work. (Dkt. 97, Rule 5 Vol. II, pg. 101). Lynne Altpater again stated, at the trial of Danny Smith, that he did not ask for poison for a person, instead the poison was for some cats that were jumping on his car. (Dkt. 158, Rule 7 Ex. 15, pg. 177-180).

Alpater's second statement was consistent with her trial testimony. Tr. Vol. I, pgs. 535- 38. Respondent has not explained why her first statement, that Danny Smith wanted the poison to kill cats, is not material. However, poison was not used to kill Lally. Further, Jalowiec was not present during Danny Smith's and Altpater's conversation. The evidence, if suppressed, would not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

A phone call from State's witness Michael Smith to Detective Leiby on February 21, 1995, after the conclusion of Raymond Smith's trial, was recorded. (Dkt. 158, Rule 7 Ex. 56). Michael Smith specifically stated, "I know nothing about a conspiracy with [Danny] and dad." *Id.* This

allegedly could have been used to refute the State's contentions that a conspiracy had been established, partly through Michael Smith's testimony.

The Court concludes that this statement did not materially impeach Michael Smith's testimony, nor is it exculpatory to Jalowiec. Smith testified at trial that he did not know that Lally was going to be murdered, and that he was not involved. In fact, he stayed in the car during the murder. His statement that he was not aware of the murder is consistent with his trial testimony.

Next, Jalowiec argues that two police reports containing impeachment evidence should have been turned over. The first pertains to Jeff Hicks, who testified in the mitigation phase of the trial that Jalowiec hit him in the face with a bat or a club. Tr. Vol. III, pg. 209. An incident involving a bat, however, is not mentioned in the police report. Jalowiec states that two witnesses to the fight were located who would verify that he did not hit anyone with a bat. Jalowiec contends that, if the police report had been turned over under *Brady*, he could have cross-examined Hicks or put these two witnesses on the stand for rebuttal.

Hicks testified that he was hit by a bat or a club. Tr. Vol. III, pgs. 209-10. There is no question that Hicks was struck in a manner that would likely cause serious injury. Hicks testified that he had "broke bones [sic] all down the side of my face here on the side and I had to go to the hospital and they tied my jaw together with wires..." Tr. Vol. III, pg. 110. Kenneth Roland also testified that he saw Jalowiec holding a bat. Tr. Vol. III, pg. 261. Two witnesses testified about the presence of a bat. The fact that the police report of this incident did not mention a bat, and the fact that other witnesses could have testified that a bat was not present, would not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

Jalowiec contends that another police report written by Detective Leiby states that Michael Smith contacted Detective Leiby and, not only tried to take the fall for his brother for the drug charges that arose as a result of Ronald Lally's purchase, but implied, when the detective did not believe Michael, that Michael might "do something" to the informant, was not provided under *Brady*.  Apx., Vol. IV-B, pg. 221.

Michael Smith's statement was told to Danny Smith by Detective Leiby during an interview. Jalowiec does not explain how Michael Smith's willingness to "take the fall" for Danny Smith's drug crime impeaches his testimony.  Danny Smith bought the drugs from Lally.  The Court finds that it does not do so.

Jalowiec argues that the prosecution committed error by not turning over witness statements until requested, in violation of Ohio Criminal Rule 16(B)(1)(g).  Ohio Criminal Rule 16 provides:

> (B) Disclosure of evidence by the prosecuting attorney
> (1) Information subject to disclosure.
> (g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement. If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies. If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
> Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal.
> (2) Information not subject to disclosure. Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents.

A federal court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *See Estelle*, 502 U.S. at 67-68. The Court "must defer to a state court's interpretation of its own rules of evidence and procedure" when assessing a habeas petition. *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005). Any failure by a state court to properly apply its own procedural rule, even if established, is not cognizable on federal habeas review, unless it results in a fundamentally unfair trial. *Estelle*, 502 U.S. at 69-70; *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003). Habeas relief is unavailable for mere errors of state law, and a federal court will not review a state court's decision on a matter of purely state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Long v. Smith*, 663 F.2d 18 (6th Cir.1981).

Further, the *Brady* rule concerns a complete failure to disclose. *Blood*, 435 F.3d at 627. Although the Court agrees that the witness statements would have been more helpful had they been provided to defense counsel before trial, the same is likely true in every case. The Court finds that *Brady* was not violated in this regard.

Jalowiec asserts that the prosecutor further violated the *Brady* rule by failing to disclose either grants of immunity, or inducements for testimony, made by the State to Joann Fike, Lynne Altpater and Michael Smith. The prosecutor has a duty to foreclose benefits given to witnesses.

> The prosecution's giving a witness benefits - leniency, cash, or anything else - can be used by a cross-examining defense counsel to undermine the witness in two ... distinct ways. The first and most common is by showing that the benefits were given in return for the witness's providing testimony that would help the prosecution. He might have told the prosecutor what he would testify to if called and the prosecutor might have explicitly agreed to give him specified benefits if he testified consistently with his proffer. Or there might have been a tacit understanding that if his testimony was helpful to the prosecution, the state would give him a break on some pending criminal charge.... Express or tacit, either way there would be an agreement, it would be usable for impeachment, and it would have to be disclosed to the defense.

*Joseph v. Coyle*, 469 F.3d 441, 470 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 1827 (2007)(quoting *Wisehart v. Davis*, 408 F.3d 321, 323-24 (7th Cir.2005) (citations omitted), *cert. denied*, 547 U.S. 1050 (2006)).

(a) Immunity for Joann Fike

Fike testified that Jalowiec used her car on the night of the murder.  Unbeknownst to Jalowiec, she was given transitional immunity in exchange for information about the death of Ronald Lally.  (Dkt. 158, Rule 7 Ex. 39 pgs. 711-12, 1745-46).  The grant of immunity to Fike was not material, because she did not provide any self-incriminating information.  By the terms of the letter of immunity, the grant of immunity was effective only if Fike "did not have any knowledge that Ronald Lally was to be killed or that her car was to be used in the execution of Ronald Lally."[18]

(b) Immunity for Tammy Green

Green was given immunity for her grand jury testimony.  She did not testify at Jalowiec's trial.  The Sixth Circuit has held that there is no authority that the government must disclose promises of immunity made to individuals the government does not have testify at trial.  *United States v. Mullins*, 22 F.3d 1365, 1372 (6th Cir. 1994).  Her grand jury testimony may have contained exculpatory information concerning Danny Smith that was inconsistent with the testimony of the State's witnesses.  However, Green was Danny Smith's girlfriend.  Jalowiec's counsel could have talked to her and called her as a witness.  *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000) (*Brady* is not violated if information is available from another source).

(c) Inducements In Exchange for Testimony of Sharon Hopkins, Lynne Altpater, Michael Smith and Joann Fike

---

[18]  The Respondent quotes this letter without reference to any cite in the record.  Because the quote did not influence the Court's decision on this issue, it was included.

Hopkins testimony placed Jalowiec in the car with Lally, Raymond Smith and Michael Smith on the night of the murder.  Jalowiec asserts that, in exchange for her testimony, Detective Leiby got her boyfriend a personal bond after he turned himself in on minor misdemeanor warrants.  The Court finds Detective Leiby's actions in favor of Hopkins' boyfriend not to be material.  The charges were minor, and, more than likely, he would have obtained a bond.  This would not be a compelling reason for her to testify falsely.

Altpater testified in the subsequent trial of Danny Smith that Detective Leiby promised her husband assistance on his pending drug charges, as inducement for her testimony.  (Dkt. 158, Rule 7 Ex 15, testimony of Lynne Altpater in *State v. Danny Smith*, Lorain County Common Pleas Court #95CR046839).  There is no indication in the record that Altpater was given any inducement to testify in Jalowiec's case.  She testified in Jalowiec's case that Danny Smith wanted poison because he said he needed it to take care of somebody.  In Danny Smith's case, she changed her testimony, saying that he did not ask for poison for a person, but that the poison was for some cats that were jumping on his car.  Her testimony was detrimental to Jalowiec, but not to Danny Smith.  A drug conviction could result in incarceration, so she may have wanted to help her husband.  Because her testimony may have hurt Jalowiec, an inducement to testify would likely have been made in Jalowiec's case.  The Court finds that Jalowiec should have been provided with information of any inducement for Altpater's testimony.

On November 22, 1994, Michael Smith was given shock probation on a five to fifteen year sentence for an unrelated crime.  After testifying at Jalowiec's trial, his case was closed.  Apx. Vol. IV-A, pg. 104.  Jalowiec contends that circumstantial evidence implies that Michael Smith received

110

leniency in exchange for his testimony against Jalowiec.  In 1996, Michael Smith sent a letter to the judge assigned to his case.  The existence of the letter, and the fact that it has vanished, allegedly show that Michael Smith was induced to testify at Jalowiec's trial.  It is unfortunate that the letter is missing, but the Court is not persuaded that it should be considered evidence of inducement.  Further, shock probation was granted almost two years before Jalowiec's trial.  Michael Smith had not yet testified.  Granting of shock probation to Michael may not have been connected to his testimony.  Whether Smith's letter to the trial judge contained evidence of a deal is speculation.

Joann Fike's car was used as transportation to the murder site, and it was taken from her as evidence.  Detective Leiby helped her to find another car, gave her $200.00, a set of four tires and help getting her car released back to her.  This may or may not be usual protocol, but, in any event, the Court finds that these gifts and help may have been an inducement for her testimony against Jalowiec, and that his counsel should have been informed.

Accordingly, if the Court were to consider this claim, it would find that failure to provide Danny Smith's statement of January 7, 1995, and Altpater's and Fike's inducement for their testimony violated *Brady*.  However, analyzing this violation in light of all of the evidence in the case implicating Jalowiec, such error is harmless beyond a reasonable doubt.

### TWENTY-FIRST CLAIM FOR RELIEF

In his twenty-first claim for relief, Jalowiec contends that the prosecutor, during closing arguments, violated the Sixth and Fourteenth Amendments by improperly vouching for the credibility of the State's witness, Michael Smith, as follows:

Michael is probably telling the truth … Tr. Vol. II, pg. 927.

I don't have any doubt that these people were involved in a controlled and calculated conspiracy to silence the testimony of a witness… Tr. Vol. II, pg. 932.

111

It's correct that Michael Smith was not aware of the plan and I believe him. Tr. Vol. II pg. 981.

Defense attorney Grunda's saying there was no purpose to kill I think is unfair. Tr. Vol. II, pg. 975-76.

We all know that he [Ray Smith] called Stanley from Mom's Open Kitchen. Tr. Vol. II, pg. 978.

A prosecutor cannot improperly vouch for the credibility of a state's witness. *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999). "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness's credibility." *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001); *Alder v. Burt*, 240 F. Supp.2d 651, 669 (E.D. Mich. 2003). The personal opinion of counsel has no place at trial. *United States v. Carroll*, 26 F.3d 1380, 1384-85 (6th Cir.1994).

In *Byrd*, 209 F.3d at 537-38, the court, in viewing the totality of the circumstances, held that a prosecutor's remarks alleged to have vouched for the truthfulness of a witness's testimony did not mislead the jury. The trial judge instructed the jury immediately after closing arguments that the arguments of counsel were not evidence. The Sixth Circuit has held that such instructions have sometimes been deemed to cure improprieties in closing arguments. *Id.*

In this case, the Court concludes that the prosecutor's statements did not deprive Jalowiec of due process of law. As in *Bryd*, the trial judge instructed the jury that closing arguments of counsel are to assist them, and that they are not evidence. Tr. Vol. II, pg. 986. The jury heard sufficient evidence showing that Jalowic was present and participated in the murder by running over Lally with the automobile that Jalowiec was driving. Where the evidence is strong, statements vouching for a witness's credibility constitute harmless error. *Wilson v. Mitchell*, 250 F.3d 388, 399

112

(6th Cir. 2001) (citing *United States v. Fullerton*, 187 F.3d 587, 592 (6th Cir. 1999)).[19]  "This court

has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing

argument." *Id.* at 399.  This claim is without merit.

## TWENTY-SECOND CLAIM FOR RELIEF

In his twenty-second claim for relief, Jalowiec asserts that he was denied due process of law

in violation of the Fifth, Sixth and Fourteenth Amendments, when the prosecutor deliberately

misstated evidence to the jury, argued facts not in evidence, mischaracterized defense arguments,

and made denigrating remarks regarding defense counsel during his closing arguments.

In his Amended Petition, Jalowiec sets forth various examples in support of this contention.

The following paragraphs are taken from Jalowiec's Amended Petition:

> In an effort to give the jury some kind of motive for Petitioner to commit the crime, the prosecutor argued during final rebuttal that Danny Smith was the drug supplier for Petitioner, and that Petitioner desired to help his friends promote their lawlessness. Tr. Vol. II, pgs. 974, 982. This claim was void of evidentiary support in the record. Amend. Pet., pg. 104.
> Prosecutor Rosenbaum improperly argued that Petitioner was able to act as the go between to put Ron Lally and the Smiths together on the night in question, because Lally would not recognize Petitioner Jalowiec as a threat. Tr. Vol. II, pg. 933. This statement to the jury again had no evidentiary support in the record. Amend. Pet., pg. 105.
> Prosecutor Rosenbaum improperly argued at closing that Petitioner "actually ran him [Lally] over with the car and if you recall Dr. Raaf's testimony that would have been sufficient in and of itself to kill the victim." Tr. Vol. II, pg. 974. First, the testimony was ambiguous, at best, as to whether Lally was actually run over, and Michael Smith testified that the tires merely backed up against the body but did not go over the body. Second, Dr. Raaf never testified that the car rolling over Lally's body would have been sufficient in and of itself to kill Lally. Dr. Raaf did testify that there were no tire markings on the body and that there was "nothing identifiable" to show that the body had been run over. Tr. Vol. II, pg. 658; Amend. Pet., pg. 105.

---

[19]  The Sixth Circuit noted in *Bryd* that it has never granted a habeas based on improper vouching.  *Byrd*, 209 F.3d at 537 n. 43.  *See Newman v. Vasbinder*, 2005 WL 3303936 *8 (E.D. Mich. Dec. 5, 2005).

Prosecutor Rosenbaum improperly argued at closing that Petitioner was responsible for "having the gun as well." Tr. Vol. II, pg. 933. Again, there is absolutely no support in the record that Petitioner was carrying a gun on the night in question. In fact, all relevant testimony was that Ray Smith was carrying and brandishing a gun, and that Ray Smith had fired the gun. Amend. Pet., pg. 105.

Prosecutor Rosenbaum also improperly mischaracterized the evidence and mischaracterized the defense's position in his closing argument to the jury. For example, he mischaracterized evidence by indicating Petitioner had produced a knife on the night in question, Tr. Vol. II, pg. 928, when there was nothing more than testimony that he had produced some object off of Corrine Fike's car key ring. Rosenbaum also mischaracterized the evidence by claiming in final rebuttal argument that everything Mike Smith had testified to was corroborated by someone else. Tr. Vol. II, pg. 973. This was patently untrue. Amend. Pet., pgs. 105-06.

The prosecutor characterized the defense's position at that time as being that Petitioner was an innocent bystander at the crime – just as the prosecution's theory was regarding Michael Smith. This portrayed the defense's position as having somehow acknowledged that Petitioner was with the perpetrators in the Woodland Cemetary at around 4:30 or 5:00 a.m. at the scene of the murder, which had the effect of defense counsel seemingly admitting that Petitioner was the driver of the car. However, at that point the only position stated by the defense had been that stated by attorney Cleary in opening argument, which was that Petitioner had no involvement in the offense. Amend. Pet., pg. 106.

The prosecutor also improperly made remarks that denigrated defense counsel, referring to both attorney Cleary and attorney Grunda as being unfair. Tr. Vol. II, pgs. 925, 976; Amend. Pet., pg. 106.

The prosecutor in both his initial closing and final closing arguments also misled the jury by claiming the case before them was a conspiracy trial. The prosecutor started with his own declaration that Petitioner's case was a conspiracy trial and commenced to mislead the jurors as follows:

By the prosecutor:

"In a conspiracy trial like this I like to start out with a quote, and I am not sure where I got it, but it goes like this: 'The birth of a conspiracy conceived in hell is seldom witnessed by angels.' or if someone goes about trying to carry out a conspiracy to commit a crime, especially the heinous crime like aggravated murder, who are you going to select to help you?" Tr. Vol. II, pg. 920. Amend. Pet., pg. 106.

By the prosecutor:

"If the State is going to illustrate a conspiracy and bring you proof of what happened and people that have knowledge, that [sic] you must understand that the State is stuck with those." Tr. Vol. II, pg. 921. Amend. Pet., pg. 107.

By the prosecutor:

"They were chosen by the defendant and his co-conspirators to participate." Tr. Vol. II, pg. 921. Amend. Pet., pg. 107.

The Prosecutor then continued to deliberately mislead the jurors by making further misstatements of the evidence:

114

By the prosecutor:

"The only thing that keeps you going is fear and retaliation and that motivation may be consistent to why Stanley Jalowiec wanted to help his source, his friend and his supplier by participating in keeping this drug empire going by killing a witness." Tr. Vol. II, pg. 974. Amend. Pet., pg. 107.

This claim by the prosecutor was a misstatement of the facts, and had no support in the record. As stated previously herein, there was never any testimony or evidence given to show any link between Petitioner and drug dealers. Furthermore, there was never any evidence or testimony to show that Petitioner is, was, or had ever been a drug customer of Danny Smith or the Smith family. Unfortunately the jury was further placed under a false perception of the facts and Petitioner's guilt. Defense counsel's objections were overruled. Tr. Vol. II, pg. 974. Amend. Pet., pg. 107.

The improper commentary by the prosecutor and bias against Petitioner continued with the prosecutor's further misstatements implying this Petitioner had done various acts which no one testified to:

By the prosecutor:

"Shows there was planning for a period of months and that this was kicked around actually until they finalized it." Tr. Vol. II, pg. 976. The State's witness Michael Smith testified there was nothing planned. Tr. Vol. II, pg. 884; Depo. 53, 80. In fact, Michael testified they were only taking Ronald Lally to the bus station so he could leave town. Tr. 782, 813, 815, 816; Depo. 23, 24.

By the prosecutor:

"No, they shot him in the mouth, they cut his throat, they stomped his head and ran the car into him three times." Tr. Vol. II, pg. 977. Amend. Pet., pg. 108.

"Any and all testimony related to these details of the killing have only one individual performing any given act. Tr. Vol. II, pgs. 784, 820-21, 822, 823, 824, 825, 826, 827, 828, 833, 834; Depo. 12, 25, 66, 67, 68, 69. That person is Raymond Smith." Tr. Vol. II, pgs. 822, 823, 824, 826, 827; Depo. 12, 25, 66, 67, 68.

By the prosecutor:

"There was testimony on the first day of the trial linking him to the crime. Patrolman Homoki testified, Carl Hartman testified, Sharon Hopkins testified, and Terry, all on the first day, and they all mentioned the defendant by name as having some part in this crime." Tr. Vol. II, pgs. 977-78.

"None of these persons linked Jalowiec to any crime. Officer Homoki was unable to even link Petitioner to Danny Smith and his threats against Lally made outside the Mr. Hero's restaurant." Amend. Pet., pg. 108.

By the prosecutor:

"When we all know that he called Stanley from Mom's Open Kitchen." Tr. Vol. II, pg. 978. Amend. Pet., pg. 108.

"This misstatement cannot endure in the light of the real facts and evidence. State witness Brian Howington clearly testified that Jalowiec received a page on his beeper about 1:00 a. m. Tr. Vol. II, pgs. 720-721. Everyone claims they went to Mom's Open Kitchen at 2:30-3:00 a. m." Tr. Vol. II, pgs. 572, 594-95, 682, 777-78, 791; Depo. 8, 20, 45-46. Amend. Pet., pg. 108.

115

Jalowiec alleges that each and every example of the prosecutor's claims cited herein has been demonstrated, by the record, to be inaccurate and incorrect. As such, Petitioner alleges that he was deprived of his rights to due process and a fair trial, both under the United States and Ohio Constitutions.

A prosecutor may argue that the jury should reach a particular conclusion, based on the evidence. *Caldwell*, 181 F.3d at 737. Prosecutorial misconduct can be so flagrant that it constitutes plain error that will be grounds for reversal, even if defense counsel did not object. *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002); *Carrol*, 26 F.3d at 1385 n. 6. A prosecutor may "argue reasonable inferences from the evidence," *Byrd*, 209 F.3d at 535, but cannot intentionally misstate the evidence. *United States v. Carter*, 236 F.3d 777, 784 (2001). Thus, it is improper for a prosecutor, during closing arguments, to bring to the attention of the jury any purported facts that are not in evidence and are prejudicial. *Byrd*, 209 F.3d at 535; *Macias*, 291 F.3d at 452.

Respondent does not address the specific incidents of claimed prosecutorial misconduct raised by Jalowiec, instead arguing that the prosecutor's theory was supported by the evidence. Even if this were a correct statement, it does not excuse any misstatement of the evidence or the arguing of facts not in evidence. The Court concludes that some of the prosecutor's statements may have been improper. For instance, there was no evidence that Danny Smith was the drug supplier for Jalowiec; there was no support in the record for the statement that Jalowiec was carrying a gun on the night in question; not everything Michael Smith testified to was necessarily corroborated by someone else; and, the prosecutor misstated defense counsels' position as having somehow acknowledged that Petitioner was with the perpetrators in the Woodland Cemetery at around 4:30 or 5:00 a.m. at the scene of the murder.

The Court must now determine whether the prosecutor's comments were harmless by using the four factors mentioned earlier.  The first factor is whether those remarks tended to mislead the jury or prejudice the defendant.  The statements that Jalowiec was carrying a gun on the night in question, and that not everything Michael Smith testified to was corroborated by someone else, certainly could not mislead the jury.  It was the jury that heard the evidence and was obligated to determine its truthfulness and relevance.  It is an unfair characterization to allege that these misstatements would lead the jury astray from the proven facts.  Lally was shot, although by Smith, not Jalowiec.  The statement that all of Michael Smith's testimony was corroborated was a determination left for the jury, and, if the prosecutor's claim was inaccurate, the jury was told by the judge to determine the evidence, along with any reasonable inference to be drawn from witnesses.

The second factor is whether the statements were isolated or extensive.  Although not extensive, the remarks were directed to the issue of Jalowiec's participation in the murder.

Third, there is a question whether the remarks were deliberate.

The fourth factor, the strength of the competent proof to establish the guilt of the accused, weighs in favor of Respondent.  The prosecutor argued that Lally's murder was premeditated, and that Jalowiec participated to assist the Smiths in their drug business.  Carl Hartman testified that, after he turned down Danny Smith's request for help, Danny Smith remarked that Hartman was no longer needed anyway because "Stan" and his (Smith's) dad "would take care of it for him."  Tr. Vol. I, pgs. 542-43.  Sharon Hopkins testified that she was in the car when Michael and Raymond Smith were driven to the outskirts of town and dropped off.  She further testified that she observed Jalowiec arrive in another car and, at Danny Smith's request, she asked and was told by Jalowiec that Jalowiec had picked up Michael Smith.  Tr. Vol. II, pgs. 683-89.  Michael Smith testified that

Jalowiec assisted in the stabbing by retrieving a knife from the car and then backed the car over Lally's body after an unsuccessful attempt to put the body in the trunk.  Tr. Vol. II, pgs. 784-86. The coroner testified that the gunshot wound in and of itself was probably not fatal, and that scrapes on Lally's chest were consistent with being stomped or struck with a vehicle several times.  Tr. Vol. II. pgs. 640-65.  Terry Hopkins testified that Jalowiec stated they had stomped and ran over Lally, and that Jalowiec, Michael, and Raymond were "kind of bragging about it."  Tr. Vol. I, pgs. 576-77. The Court concludes that the competent proof was strong enough to compensate for any of the prosecutor's alleged improper statements.  Any prosecutorial misconduct, as alleged in this claim, most likely did not have an effect on the outcome of the trial.  Therefore, the Court finds this claim to be without merit.

### TWENTY-THIRD CLAIM FOR RELIEF

Jalowiec asserts in this claim for relief that the prosecutor, in his opening statement, improperly submitted his opinions about the case to the jury as facts.  The following are the alleged improper statements:

> "So what happens is, their conspiracy generates a plan in which Ron Lally would be hurried to a place where he would be kidnaped at gunpoint and taken to Cleveland and killed."  Tr. Vol. I, pg. 475.
> "So what happens is, Stanley Jalowiec goes over to Brian Howington's house at 112 Greenway Court in the city of Elyria."  Tr. Vol. I, pg. 475.
> "This night the defendant went over to Brian Howington's or actually Corrine Fike's apartment and they got her 1992 Chrysler LeBaron convertible and they took it."  Tr. Vol. I, pgs.  475, 476.
> "So Stanley and Howington go to Lally's apartment to pick him up and they smoke crack cocaine there and eventually they return about one in the morning to Corrine Fike's apartment at 112 Greenway and play pool for an hour."  Tr. Vol. I, pg. 476.
> "While this is going on, Raymond Smith, Danny Smith, Michael Smith, some of their girlfriends, a person by the name of Sharon Hopkins and Terry Hopkins are in and out of there, too."  Tr. Vol. I, pg. 476.

"Well, at the same time Danny Smith is driving a car that contains Sharon Hopkins, Danny, Michael Smith and Raymond and they leave downtown Elyria drive their car out past the railroad tracks." Tr. Vol. I, pg. 476.

"Michael Smith became so upset about what he saw the defendant and his father do to Ron Lally." Tr. Vol. I, pg. 478.

"They attempted to place him in the trunk after they killed him. He was too large that his body is in the trunk of that car [sic] and that his body contains hairs from Joann Fike's dog who had also been in the car at one time or another." Tr. Vol. I, pg. 482.

"Corrine permitted Stanley, the defendant, and the two Smiths, Danny and Raymond, to use her car so they could do whatever they had to do in exchange for crack cocaine in the past." Tr. Vol. I, pg. 475.

"What happens at this point in time, Raymond Smith pages Stanley Jalowiec." Tr. Vol. I, pg. 476.

"Stanley knows then it is time to leave, so he takes Ron Lally with him and starts driving this convertible and he drives them out Middle Avenue." Tr. Vol. I, pg. 476.

Amend. Pet., pg. 111.

Jalowiec does not allege that the prosecutor's statements were inconsistent with the evidence elicited at trial. Further, the prosecutor was merely summarizing the evidence expected to be presented. *See Jones v. Bowersox*, 187 F.3d 866, 870 (8th Cir. 1999) (prosecutor's statement was consistent with the trial evidence and therefore unobjectionable). As such, the Court finds this claim to be without merit.

## TWENTY-FOURTH CLAIM FOR RELIEF

In his twenty-fourth claim for relief, Jalowiec alleges that the prosecutor failed to reveal inconsistencies that occurred when State's witnesses, Michael Smith, Lynne Altpater, Sandra Williams and Officer John Homoki, testified differently at his trial and that of Danny Smith, which occurred after Jalowiec's trial. Jalowiec does not explain how allegedly inconsistent statements made after his trial could be *Brady* material. At the time of Jalowiec's trial, the prosecutor would not know that these witnesses may make inconsistent statements at a later trial. Further, any alleged inconsistencies in testimony by government witnesses do not establish that

119

the prosecutor knowingly used false testimony.  *United States v. Scarborough*, 43 F.3d 1021,

1026 (6th Cir. 1994).  The twenty-fourth claim for relief is without merit.

**TWENTY-FIFTH CLAIM FOR RELIEF**

Jalowiec's twenty-fifth claim for relief alleges another *Brady* violation.  He contends that

the State violated due process under the Fifth, Sixth, Eighth and Fourteenth Amendments, by failing

to disclose the mental health of Michael Smith, which documents his lack of competency to testify

and constitutes serious impeachment evidence.  *Brady* was allegedly violated when the State failed

to reveal discrepancies as to what prompted Michael Smith to come forward as a State's witness.[20]

The trial court ordered these records to be provided to counsel in Danny Smith's trial, which

occurred after the Jalowiec trial.  According to Jalowiec, nothing in those records states that Michael

Smith witnessed the killing, or that the killing was responsible for his depression.  The records

indicate that Michael Smith has a history of drug and alcohol abuse, which is tied to his depression.

Jalowiec argues that the presence of hallucinatory symptoms would have been an area from which

to challenge the credibility of his observations, and his competency as a witness.  Further, the

records also show that Michael Smith had been abused by his father, which could have lead to bias

against him and motivated his testimony.  Amend. Pet., pgs. 126-28.

Nondisclosure of evidence affecting credibility falls within the *Brady* rule, when the

reliability of a given witness may well be determinative of guilt or innocence.  *Giglio v. United*

*States*, 405 U.S. 150, 154 (1972).  The evidence must also have been in the possession of the

prosecution.  *Payne v. Bell*, 89 F. Supp.2d 967, 975 (W.D. Tenn. 2000).  As previously stated, the

---

[20] Michael Smith was in Arizona during Raymond Smith's trial.  There is no evidence that
the prosecutor sent him there.  He may not have wanted to testify against his father.

120

petitioner has the burden of establishing that the prosecutor suppressed evidence; that such evidence was favorable to the defense; and that the suppressed evidence was material. *Carter*, 218 F.3d at 601. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 676 (1985).

The Smith trial occurred after Jalowiec was convicted. There is nothing in the record showing that the prosecution had possession of Michael Smith's mental health records at the time of Jalowiec's trial. Jalowiec's counsel had a transcript of Raymond Smith's trial, and they knew that Michael Smith's medical and hospital records had been produced. On cross-examination during trial, counsel questioned him as to his psychiatric history, such as his attempts to commit suicide, and his drug use. Tr. Vol. II, pgs. 829-31. Therefore, this claim is without merit.

### TWENTY-SIXTH CLAIM FOR RELIEF

Jalowiec contends that the prosecutor repeatedly misstated the sentencing statute of the Ohio Revised Code during *voir dire*. There are allegedly 37 separate instances of deliberate prosecutorial misconduct in the form of intentional misstatements told to all prospective jurors who were not excused for cause. Thus, Petitioner claims the prosecutor had all prospective jurors thinking there was no alternative, but to adjudge a sentence of death.

The Court finds that the prosecutor's questions were intended to ascertain whether the prospective jurors could follow the law. The jury was able to listen to the evidence and follow the Court's jury instructions. The fact that the prosecutor mentioned the Ohio sentencing statute during *voir dire* did not likely have an affect on the outcome of the trial, and it was not improper. Again,

121

absent any evidence to the contrary, the jury followed the instructions on the law given by the trial court.  Accordingly, this claim is without merit.

### TWENTY- SEVENTH CLAIM FOR RELIEF
### THROUGH
### FORTIETH CLAIM FOR RELIEF

Jalowiec's twenty-seventh through fortieth claims for relief allege ineffective assistance of counsel.  In *Strickland*, 466 U.S. at 687, the Supreme Court of the United States set forth a two-pronged analysis for a claim of ineffective assistance of counsel – deficient performance and prejudice.  The deficient performance prong requires a showing that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  If deficient performance is demonstrated, then the prejudice prong requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.  As the Supreme Court stressed in *Strickland*, the overriding principle with respect to ineffectiveness claims in general is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.

From Petitioner's standpoint, his trial counsel was ineffective because the worst possible outcome occurred – conviction and imposition of the death penalty.  But the standard for deficient performance is not whether counsel wins the case.  Rather, the standard is whether "counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  As the Supreme Court cautioned:

> [j]udicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

122

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* (citation omitted).  The wisdom of this cautionary statement is especially evident in this case, where Petitioner challenges – a decade after the trial – the decisions of his trial counsel.

> [I]n a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d).  Ineffectiveness is not a question of "basic, primary, or historical fac[t.]"  Rather, ... it is a mixed question of law and fact.  Although state court findings of fact made in the course of deciding an ineffective claim are subject to the deference requirement of § 2254(d)...both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.

*Groseclose v. Bell*, 130 F.3d 1161, 1163-64 (6th Cir. 1997), (citing *Strickland*, 466 U.S. at 698).  In *United States v. Cronic*, 466 U.S. 648, 658 (1984), the United States Supreme Court, in analyzing ineffective assistance of counsel, stated:

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.  See *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867- 869, 102 S.Ct. 3440, 3446-3447, 73 L.Ed.2d 1193 (1982); *United States v. Morrison,* 449 U.S. at 364-365, 101 S.Ct. at 667-668; *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).  Moreover, because we presume that the lawyer is competent to provide the guiding hand that the defendant needs, *see Michel v. Louisiana*, 350 U.S. 91, 100-101, 76 S.Ct. 158, 163-164, 100 L.Ed. 83 (1955), the burden rests on the accused to demonstrate a constitutional violation.

With respect to this claim, this Court must bear in mind that there are tactical reasons for not making certain objections – one obvious reason is that doing so may draw unnecessary attention to a matter which the jury otherwise might not have thought significant.  With this framework in mind, the Court reviews Jalowiec's claims of alleged ineffective assistance of counsel.

123

Once an unreasonable performance by counsel is found to be ineffective, the petitioner must show that he or she was prejudiced by counsel's errors.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* Prejudice exists when there is a reasonable probability, that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694; *Hicks v. Collins*, 384 F.3d 204, 214 (6th Cir. 2004), *cert. denied*, 544 U.S. 1037 (2005).

### TWENTY-SEVENTH CLAIM FOR RELIEF

In his twenty-seventh claim for relief, Jalowiec asserts that he was denied effective assistance of counsel, because his counsel failed to investigate and present an alibi defense.  He claims that he was with Raymond Pasterczyk most of the evening in question, but his counsel did not contact or speak to him.  Also, three family members allegedly would have testified that Jalowiec was with them from 12 a.m. until the early morning hours of the night of the murder.  Jalowiec states that his family members supplied defense attorneys with audio and video tapes that would have contradicted the trial testimony of witnesses, but his counsel failed to investigate and use these tapes.

"[C]ounsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.  Where counsel investigates and interviews promising witnesses, and determines that they would not be valuable in securing defendant's release, counsel's action is mere trial strategy, and it is unreviewable in habeas corpus.  *United States ex rel. Cosey v. Wolff*, 727 F.2d 656, 658 n. 3 (7th Cir.1984), *overruled on other grounds by United States v. Payne*, 741 F.2d 887 (7th Cir. 1984).  But, "[W]here counsel fails to investigate and interview promising witnesses, and therefore 'ha[s] no reason to believe they would not be valuable in securing [defendant's] release,' counsel's inaction constitutes negligence,

124

not trial strategy."  *Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992) (quoting *Cosey*, 727 F.2d at 658 n. 3).

Raymond Pasterczyk and Sarah Jalowiec, Petitioner's mother, testified at the mitigation hearing.  On cross-examination, Mrs. Jalowiec testified as follows:

"Q.     But you know your son could not have done this?

A.     That is right.

Q.     And that is because – tell us why again?

A.     Because I know my son.  I know he doesn't have it in him to do it."

Tr. Vol. III, pg. 169.  Jalowiec does not explain why his mother did not tell the prosecutor that she knew her son could not have committed the crime because he was with her the morning following the murder.  Nor does he explain why Mr. Pasterczyk failed to mention in his testimony that Jalowiec was with him on the evening of the murder.  If in fact an alibi was available, it is not credible to believe that Jalowiec's mother would not have approached counsel with this information. This claim is without merit.

### TWENTY-EIGHTH CLAIM FOR RELIEF

In his twenty-eighth claim for relief, Jalowiec contends that his counsel were ineffective in (a) failing to seek discovery, (b) inadequately cross-examining the State's witnesses, (c) failing to adhere to a consistent defense theme, (d) failing to request prior statements of witnesses, (e) failing to object to Detective Leiby's comments on the record, (f) failing to ensure the recording of all proceedings, and (g) waiving his speedy trial rights.  The Court examines Jalowiec's claims in turn.

a.      Failure to Seek Discovery

In this sub-claim, Jalowiec asserts that counsel failed to file any motions for discovery or diligently and reasonably pursue discovery and did not request a bill of particulars.  Had defense counsel requested discovery, they allegedly would have had an opportunity to adequately cross-examine the State's witnesses at trial.  For example:

> Petitioner would have favorably utilized discovery of the fact of Michael Smith's angry telephone call to Detective Leiby about the initial drug charges against co-defendant Danny Smith resulting from his drug sale to confidential informant Ron Lally.  Danny Smith is Michael Smith's younger brother.  Amend. Pet., pg. 133.  Not until after his trial did Petitioner learn that Michael Smith had made such a call to Detective Leiby well before the murder.  According to Detective Leiby's own statements, Michael Smith called Leiby after Danny's arrest and told Leiby that in arresting Danny he had arrested the wrong man.  Michael stated that he (Michael), rather than his brother Danny, was the individual who sold the drugs to Ron Lally.  When Detective Leiby told Michael Smith that he didn't believe him, Michael Smith became angry and implied that he might do something (*e.g.*, to make the case go away).  Apx. Vol. I-A, pg. 50.  Statement of D. Smith to Det. Leiby and Lt. Medders; see also Respondent's Second Expansion of the Record, Vol. 1 of 3, "Investigative Notes," pg. 23.  The fact of this angry phone call could certainly have been used by counsel to Petitioner's advantage, and would have had a significant impact upon the jury.  Importantly, it could have been used to undermine the credibility of Michael Smith's testimony, as well as the State's theory of the case, that Michael Smith was merely an innocent bystander and was not involved in the crime.  Amend. Pet., pgs. 133-34.
>
> Had discovery been requested and reasonably pursued by trial counsel as to this matter, Petitioner would have also subjected Detective Leiby to a full and searching cross-examination as to the nature and content of the telephone call to him prior to the murder as to why he did not follow up on the threat by Michael Smith.  Amend. Pet., pg. 134.
>
> Further, had discovery been reasonably and diligently pursued by his trial counsel, Carl Hartman would have been subjected to a full and searching cross-examination regarding allegations that Danny Smith offered bribes to him.  (*See* Dkt. No. 95, Respondent's Sept. 30, 2005 Expansion of the Record, Vol. 3 of 4, pp. 109-185).  *Id*.  Specifically, had his counsel properly and reasonably pursued discovery, Petitioner would have obtained audio tapes of the offer of a bribe made to Carl Hartman by Danny Smith.  In December of 1995 Danny Smith contacted Hartman a number of times, all of which were apparently recorded, regarding Hartman's statements to the police and testimony at Petitioner's trial.  Counsel also could have obtained the numerous recordings made at the county jail during visits with Hartman by Danny

126

Smith.  Counsel also could have obtained a copy of, or evidence concerning a check which was paid to Hartman issued from the County jail from Danny Smith's account.  *See* State's Exh. 11-C, *State v. Daniel Smith*, case no. 95-CR-046839, Lorain County Court of Common Pleas.  Evidence of such extensive behind-the-scenes activities by Danny Smith in his effort to avoid conviction for the murder of Ron Lally could have been utilized by defense counsel to Petitioner's benefit at trial – *e.g.*, to undermine the credibility of witnesses (many of whom may also have been contacted by Danny Smith), and undermine the State's theory of the crime which was that Danny Smith was not present at the scene of the crime and that Danny Smith did not directly participate in the killing of Ron Lally.  Amend. Pet., pgs. 134-35.

Had trial counsel diligently pursued discovery, counsel would have discovered that Danny Smith attempted to record conversations between Smith and the Petitioner, on December 4, 1994 at the County jail.  Amend. Pet., pg. 135.

Specifically, Petitioner was placed in a cell with Danny Smith while Danny Smith had some type of recording device on his person in order to record Petitioner's conversations with Danny Smith.  *State v. Daniel Smith*, case no. 95-CR-046839, Lorain County Court of Common Pleas, TR 531, 667, 670.  This recording devise [sic] was given to Danny Smith by officers at the direction of Detective Leiby.  Petitioner believes that the tape contains evidence which would be probative of Petitioner's innocence.  Petitioner could have cross-examined Detective Leiby on this topic to Petitioner's benefit.  Had discovery requests been filed by counsel, Petitioner would have obtained his co-defendants statements, recorded or verbal, to police detectives which were exculpatory or which could have been used for impeachment.  *Id.*

Petitioner submits that Raymond Smith made several statements to investigating police and prosecutors regarding this case which may have exculpated Petitioner in the murder of Ronald Lally.  See, *e.g*, Apx. Vol. IV-B, pgs. 228-29; *see also* Respondent's Expansion of the Record, January 11, 2005 Statement of Ray Smith.  Amend. Pet., pg. 136.

Danny Smith also made numerous statements, whether verbal or recorded, to police detectives.  For example, at the trial of Ray Smith, Detective Leiby referred to a June 1994 interview with Danny Smith, and also to two phone calls with Danny Smith on June 11, 1995, none of which have ever been produced by the state. *Id*.

Respondent replies that Jalowiec's attorneys did, in fact, obtain the statements of Raymond Smith, as well as a transcript of his trial and the order in that case for the medical records of Michael Smith.  On cross-examination during trial, counsel questioned Michael Smith as to his psychiatric history, such as his attempts to commit suicide and his drug use.  Tr. Vol. II, pgs, 829-31.  Also, Michael Smith was deposed prior to trial and counsel at trial obtained a copy of a prior statement

to the police.  Amend. Pet., pg. 116.  There is no reference to witness Carl Hartman, Danny Smith

or recordings made of Jalowiec and Danny Smith while they shared a jail cell.  Evidence of Danny

Smith's manipulation or intimidation of witnesses is not exculpatory to Jalowiec.  The State's theory

was that Jalowiec conspired with Danny Smith to murder Lally because Lally was an informant, and,

in fact, was going to testify against Danny Smith.  The fact that Danny Smith may have  manipulated

or intimidated witnesses is consistent with the State's case.

> b.    Deficient Cross-examination

Jalowiec asserts that counsel failed to effectively use in cross-examination the witness

statements that the prosecutor did provide.  According to Jalowiec:

> Petitioner's counsel failed to effectively use Michael Smith's April 12, 1995
> statement to the police.  Specifically, counsel failed to point out, and cross-examine
> Michael Smith about, the inconsistencies between:  1) his testimony that he had his
> head down in the backseat of the car the entire time of the attack on Lally, and his
> previous statement that Lally 'started crawling, he's he was still alive and I, I told
> them, I said, look, let's just go …' indicating that Michael Smith was outside of the
> car; 2) his testimony that he had his head down in the backseat of the car, and his
> previous statement that "I, I can't say exactly who cut him but they were both
> standing over [Lally]," again indicating that Michael Smith was out of the car; and
> 3) his testimony that Lally was run over or struck by the car after an attempt to put
> him in the trunk, and his previous statement that Lally was run over or struck by the
> car before they attempted to put him in the trunk.  Counsel also failed to cross-
> examine Michael Smith on his incredible statement that he could hear what was
> transpiring during the assault on Lally because the window was down – when there
> was testimony that the temperature outside at that time was 28 degrees below zero,
> with a wind chill of -46 degrees.  See Tr. Vol. I, pg. 475, Tr. Vol. II, pg. 613. Amend.
> Pet., pgs. 136-37.
>
> In cross-examining Carl Hartman, defense counsel failed to effectively utilize
> Hartman's first statement (dated January 5, 1995) to Leiby that, even at that earlier
> date, Hartman possessed incentive to cooperate due to an outstanding warrant for his
> arrest that Leiby was well aware of.  Counsel was also ineffective due to his
> backwards manner of asking leading questions which, instead of leading the witness
> to testify to the benefit of the defense, led the witness into being consistent with his
> prior testimony, i.e., merely led the witness to testify favorably for the state.  Amend.
> Pet., pg. 137.

128

In cross-examining of [sic] Sharon Hopkins, defense counsel failed to bring out the significant inconsistency between her testimony in Petitioner's trial, and her previous testimony in Ray Smith's trial (of which counsel should have had a transcript), regarding the color of the vehicle she claimed she saw Petitioner Jalowiec driving in the early morning hours on the date in question.  At Ray Smith's trial, there was testimony that Ms. Hopkins thought that the car she observed was two-toned, gold and dark in color (believing the top of car was gold, bottom was dark color).  The LeBaron convertible that the state claimed Petitioner was driving, however, is known to be 'powder blue.'  *Id.*

Counsel was also ineffective in cross-examining state's witness Terry Hopkins. Counsel failed, *inter alia*, to bring out inconsistencies and discrepancies made by Hopkins in previous statements.  Hopkins testified at Petitioner's trial on direct examination that on the night in question he observed the LeBaron convertible owned by Fike.  Tr. Vol. II, pg. 579.  He stated there was nobody in it.  *Id.*  He did not say at what time he saw the LeBaron.  *Id.*  Hopkins also stated that he had not seen Petitioner that night.  Tr. Vol. II, pg. 598.  Although counsel was clearly not provided all of the recorded statements to police taken from Hopkins (of which it is now known there were at least 3, along with a 4th interview for which no recording or transcription has been produced), counsel was or should have been in possession of Hopkins' testimony given in Ray Smith's trial.

At Ray Smith's trial, Hopkin's [sic] testimony was materially different.  There, Hopkins testified not only that he had seen the LeBaron convertible on the night in question (in an alley next to Mom's Open Kitchen) from the Razzles Bar before closing time, but also that he saw Ray Smith, Mike Smith, and Petitioner in it.  *See State v. Raymond A. Smith*, Court of Common Pleas, Lorain County, No. 95CR046838, November 28, 1995, TR pp. 179, 192.  This testimony is completely inconsistent with the state's theory of events – which is that Petitioner Jalowiec was with Brian Howington and victim Ron Lally at Howington's aunt's home playing pool and partying during the time in question, and that Jalowiec was not with Ray or Mike Smith until significantly later when, with Lally also in the car, he picked up Ray and Mike Smith near woods out past the tracks on South Middle Avenue.  This major discrepancy with the prosecution's case should have been brought to the attention of the jury by Petitioner's counsel.  Amend. Pet., pg. 138.

Counsel also failed to question Hopkins about the inconsistency presented by his testimony that, although he was living with Danny Smith at the time, at the end of the night in question he went to his sister's apartment nearby and waited for Danny to return rather than simply go into the house where he was living.  Hopkins' testimony in this regard made little sense, yet defense counsel failed to question him about it or otherwise point out the inconsistency before the jury.  Amend. Pet., pgs. 138-39.

Additionally, as with the cross-examination of Hartman discussed above, defense counsel was ineffective due to counsel's backwards manner of asking leading questions which, instead of leading Hopkins to testify to the benefit of the defense,

led the witness into being consistent with his prior testimony.  See, *e.g.*, Tr. Vol. II, pgs. 594, 602.  *Id.*

Usually, cross-examination techniques, like other matters of trial strategy, are within the professional discretion of counsel.  *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002); *Davie v. Mitchell*, 291 F. Supp.2d  573, 604 (N.D. Ohio 2003).  As long as trial counsel conducts a thorough and meaningful cross-examination of a witness, counsel's failure to employ a trial strategy should not be subjected to the second-guessing prohibited by *Strickland*.  *Strickland*, 466 U.S. at 689.  Even if cross-examination might have been more effective, it does not constitute an unreasonable performance for purposes of an ineffective assistance of counsel claim.  *Dell v. Straub*,194 F. Supp.2d 629, 651 (E.D. Mich. 2002) (citing *Cardwell v. Netherland*, 971 F.Supp. 997, 1019 (E.D. Va. 1997)).  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available."  *Johnson v. Hofbauer*, 159 F.Supp.2d 582, 607 (E.D.Mich.2001).

Even so, the Court must also assess if this strategy itself was constitutionally deficient.  *Washington v. Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000).  Defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the prosecution witnesses and, in his closing argument, emphasized the inconsistencies and weaknesses in the testimony of the various witnesses.  "As a general rule, '[d]ecisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature' and generally will not support an ineffective assistance claim."  *Davie*, 291 F. Supp.2d at 604 (quoting *Dunham*, 313 F.3d at 732).  *See Mooney v. Trombley*, 2007 WL 496470 * 14 (E.D. Mich. Feb. 12, 2007).

130

In the present case, cross-examination was, under all the circumstances, capable and professional. Jalowiec has failed to show prejudice from any deficiencies in cross-examination. As in any complicated trial, involving witnesses with unblemished backgrounds and witnesses with questionable and complicated backgrounds, as well as voluminous exhibits, second guessing of unsuccessful trial and litigation strategy become overwhelming. Here, defense counsels' performance far exceeded the standard in *Strickland.*

c.   Failure to Adhere to Consistent Defense Theme

Jalowiec argues that, during opening statement, attorney Cleary informed the jury that Jalowiec was not involved in the crime. During closing argument, however, attorney Grunda changed that position, arguing that Jalowiec was at the scene and was forced by Raymond Smith to participate. Jalowiec was allegedly prejudiced, because the change in theory diminished the defense's credibility before the jury.

It appears that, as the trial proceeded, the evidence showed that Jalowiec was at the scene of the murder. Counsel may have believed that a change in theory was unavoidable. "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Miller v. Francis*, 269 F.3d 609, 615-16 (6th Cir. 2001). Jalowiec has not overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. This claim is without merit.

131

d.      Failure at Trial to Request Prior Statements of Witnesses Altpater and Williams

Counsel allegedly performed deficiently by failing to request at trial the previously recorded statements of Lynne Altpater and Sandra Williams.  Jalowiec contends that counsel could have requested an in camera inspection to determine the existence of inconsistent statements but did not do so, even though they had made such request for other witnesses.

Altpater's prior statement was discussed in Jalowiec's twentieth claim for relief, involving a claimed *Brady* violation.  The Court found that her statement would not reasonably put the whole case in a different light.  So, whether this Court finds ineffective assistance of counsel on this issue is immaterial, as prejudice did not occur.  Jalowiec's counsel did not point to any inconsistencies in the prior statement that defense counsel failed to discover that gave rise to a reasonable probability that Jalowiec would not have been convicted, if counsel had used the prior statements.

The prosecutor called Williams, who testified that Danny Smith came into her back yard on September 17, 1993, and threatened Lally and his family. Tr. Vol. I, pgs. 511, 514.[21]  When she took the stand in Danny Smith's trial, she recanted her previous testimony in Jalowiec's trial and denied that any threats were made against Lally and his family.  In his twentieth claim for relief, Jalowiec asserted that the prosecution withheld Williams' recorded statement of January 3, 1995.  There was no further discussion; in fact, the issue was not raised in the Traverse.  Therefore, the Court did not consider this issue.

However, the transcript of the recorded statement was submitted to the Court in the Expansion of the Record, Vol 2, pgs 117-23.  Her recorded statement details the threat to Lally made by Danny Smith and discusses Lally's drug buys.  There were no inconsistencies between her

---

[21]  Sandra Williams was Lally's girlfriend.  Exp of Rec., Vol. 2, pg. 117.

testimony and her recorded statement.  The threat to Lally was made by Danny Smith in 1993 and had no connection to Jalowiec.  Moreover, the statement was not made in the furtherance of a conspiracy.  Possession of Williams' statement at Jaklowiec's trial after her testimony would not have helped defense counsel.

>    e.    Failure to Object to Leiby's Comments on Record

Jalowiec claims that Detective Leiby's comments during trial, most often during sidebars that were placed on the record, constituted improper testimony.  Counsel allegedly should have objected.

As the Court concluded in Jalowiec's twelfth claim for relief, because there is no indication that the jury heard any of his comments, the Court finds such occurrences and counsels' failure to object harmless.

>    f.    Failure to Ensure Recording of all Proceedings

Jalowiec raised the underlying issue in his tenth claim for relief.  The Court found that he was not prejudiced by any failure to record peremptory challenges, pretrial conferences, and sidebars during trial, nor has he shown that he was prejudiced by the court's failure to conduct a polling of the jury.  Thus, this claim is without merit.

>    g.    Waiver of Speedy Trial Rights

Jalowiec asserts that defense counsel waived his speedy trial rights without his knowledge or consent.  The Sixth Amendment grants an accused the right to a speedy and public trial by an impartial jury.  *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).  The right to a jury trial is a fundamental right that applies to the states through the Fourteenth Amendment.  *Duncan v. Louisiana*, 391 U.S. 145, 150 (1968).  However, this issue does not rise to a constitutional challenge inasmuch as Ohio has its own speedy trial statute, R.C. § 2945.71.  An accused may waive his

constitutional right to a speedy trial, if he does so knowingly and voluntarily.  *Barker v. Wingo*, 407 U.S. 514, 529 (1972).  The Ohio Supreme Court has held that a speedy trial can be waived by counsel for reasons of preparation.  *State v. McBreen*, 54 Ohio St.2d 315, 320 (1978).

Jalowiec was indicted on March 8, 1995.  His counsel waived speedy trial during a pretrial on March 20, 1995.  Apx. Vol. IV-B, pgs, 177, 230.  The timing shows that speedy trial was waived for needed preparation, especially because of the death penalty charge.  To raise a constitutional claim, Petitioner must allege and demonstrate prejudice in his trial date, which he did not.  *See Barker*, 407 U.S. at 530.  If the Court were to consider Jalowiec's twenty-eighth claim, it would find it to be without merit.

## TWENTY-NINTH CLAIM FOR RELIEF

In his twenty-ninth claim for relief, Jalowiec asserts that he was denied effective assistance of counsel in the culpability phase of his trial by counsels' failure to move for a change of venue based on extraordinary pretrial publicity.  The underlying issue is discussed and rejected in Jalowiec's first claim for relief.

## THIRTIETH CLAIM FOR RELIEF

Jalowiec contends that he was denied effective assistance of counsel by counsels' failure to investigate, obtain and utilize evidence supporting Jalowiec's innocence.  Counsel allegedly failed to prepare and present an alibi defense based on the testimony of Raymond Pasterczyk, a family friend, and three family members, failed to use the statement of Raymond Smith, a co-defendant, who stated that Jalowiec was not involved in the murders, and failed to investigate Michael Smith, a State witness, who could have been involved in the murder.

134

Jalowiec's mother and Richard Pasterczyk testified at the penalty phase of the trial. Interestingly, neither of them mentioned that Jalowiec was with them the day of the murder. Therefore, according to Respondent, their belated affidavits are incredible and unworthy of belief. Jalowiec's mother testified:

Q. But you know your son could not have done this?

A. That is right.
Q. And that is because – tell us why again?

A. Because I know my son. I know he doesn't have it in him to do it."

Tr. Vol. III, pgs. 168-69.

Jalowiec's counsel were familiar with Raymond Smith's taped statement as it was a prosecution exhibit, and they had a complete transcript of his trial.  There allegedly is no evidence that, at the time of Jalowiec's trial, Raymond Smith was willing to provide exculpatory evidence on behalf of Jalowiec.  Raymond Smith stated, in an affidavit dated July 9, 1996, that he told Detective Leiby that, on July 5, 1994, Jalowiec was not involved in the murder, and that he was not present at the cemetery when the murder was committed.  Raymond Smith also stated that Michael Smith, who was not charged, participated.  Apx. Vol IV-A, pgs. 171-73.  Jalowiec's counsel allegedly should have had that information.  Jalowiec's counsel stated on the record that they decided not to call Raymond Smith and Danny Smith, because they were informed that they would invoke their Fifth Amendment rights.  Jalowiec knew why his counsel were not calling these two witnesses, and he expressly consented to his counsels' decision.  Tr. Vol. II, pgs. 895-97.  This claim is without merit.

## THIRTY-FIRST CLAIM FOR RELIEF

Jalowiec alleges that his counsel were ineffective in the culpability phase of his trial when lead counsel Joseph C. Grunda represented him while also representing an important State witness in another criminal case.  The underlying issue was discussed and rejected in Jalowiec's eleventh claim for relief.

## THIRTY-SECOND CLAIM FOR RELIEF
## AND
## THIRTY-THIRD CLAIM FOR RELIEF

Jalowiec asserts that counsel were ineffective for failing to adequately and reasonably conduct *voir dire* in his case.  Counsel allegedly failed to question prospective jurors on the alleged extensive pretrial publicity to determine whether they could be impartial in reaching a verdict.  In his thirty-third claim for relief, he asserts that counsel were ineffective for failing to request a jury instruction regarding the pretrial publicity related to his and Raymond Smith's trial.  These issues are related and will be discussed together.

In order to establish ineffective assistance of counsel for failing to conduct inadequate *voir dire*, a defendant must show actual or presumed prejudice on the part of the jury.  *Dell*, 194 F.Supp.2d at 649.  Prejudice is shown through a review of *voir dire* testimony, and a showing that, due to extent and nature of the publicity, a fair trial was impossible.  *Maxwell v. White*, 431 F.3d 517, 532 (6th Cir. 2005), *cert. denied*, 127 S. Ct, 581 (2006).  "[I]n extraordinary cases, where the trial atmosphere has been utterly corrupted by press coverage, a court must presume that pre-trial publicity has engendered prejudice in the members of the venire."  *Williams*, 380 F.3d at 945.  But "mere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint."

136

*Maxwell*, 431 F.3d at 531(quoting *Delisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998)).  A fair juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. *Id.* at 532.

Jalowiec has not shown prejudice by his counsels' manner of conducting *voir dire*.  His counsel asked jurors if they read about the case in the papers or had been exposed to media coverage.  Tr Vol. I, pgs. 446-51.  The jurors answered that they would not be influenced by anything they may have read or seen.  Further, the judge instructed them to decide the case on the evidence, and he admonished them not to listen to media coverage.  Tr. Vol. I,  pgs. 464-65  There is no proof of extensive media coverage.  Thus, these claims are without merit.

### THIRTY-FOURTH CLAIM FOR RELIEF

In his thirty-fourth claim for relief, Jalowiec alleges that the failure of counsel to conduct an investigation into the background of Michael Smith, the State's key witness, and to adequately represent him at the guilt-innocence phase of the trial, resulted in a conviction and sentence of death that does not comply with the minimum standards of reliability required under the Eighth and Fourteenth Amendments.  Michael Smith had serious mental problems that were known to Jalowiec's counsel. Trial counsel allegedly failed to object to his competency at his deposition, and failed to conduct their own investigation of his competency to testify.  If hospital records had been obtained, Jalowiec argues that they would have revealed numerous significant areas for cross-examination that would have shown a basis for him to have a bias or prejudice against his father, Raymond Smith, as well as areas to impeach his testimony.

Defense counsel has a responsibility to investigate.  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations

unnecessary." *Strickland,* 466 U.S. at 691; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992); *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted). Jalowiec's counsel had a transcript of Raymond Smith's trial and knew that Michael Smith's medical and hospital records had been produced. The record shows that Michael Smith was deposed before Jalowiec's trial, and counsel at trial had obtained a copy of a prior statement he made to police. Tr. Vol. II, pgs 794-800. On cross-examination during trial, counsel questioned him as to his psychiatric history, such as his attempts to commit suicide and his drug use. Michael Smith stated that, at one point, he felt guilty and thought there was something he could have done to stop the murder. Tr. Vol. II, pgs, 829-31. Thus, it appears that counsel adequately attempted to discover grounds to impeach Michael Smith, and the jury was informed of his mental problems. This claim is without merit.

### THIRTY-FIFTH CLAIM FOR RELIEF - SUB-CLAIMS (a), (b), (f), (i) and (j)

Jalowiec contends that cumulative ineffective assistance of trial counsel violated his right to a fair and impartial trial as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments. He sets forth the following five instances in support of his contention:

a. Jurisdictional venue;

b. Significant portions of proceedings not transcribed;

f. Cross-examination;

i. Closing arguments by the prosecutor;

j. Cumulative ineffective representation.

138

The Court has previously examined or will examine the issues contained in sub-claims (a) (claim 1),(b) (claim10), (f) (claim 28), (i) (claim 22) and (j) (claim 46). With the exception of sub-claim ( j), all have been found to be without merit. Having reviewed the sub-claims of Jalowiec's other claims for relief individually and determined each to be without merit, it is unnecessary for the Court to review the "cumulative effect" of these purported errors of counsel. *Alder*, 240 F. Supp.2d at 674-75 (citing *Lundy v. Campbell*, 888 F.2d 467, 581 (6th. Cir. 1989)). Sub-claim (j) will be reviewed in the forty-sixth claim for relief, where it will be found to be without merit.

### THIRTY-SIXTH CLAIM FOR RELIEF

In his thirty-sixth claim for relief, Jalowiec contends that he was denied effective assistance of counsel when his attorneys failed to investigate, prepare and present compelling mitigation evidence during the penalty phase of the trial. As this issue is similar to that presented in Jalowiec's thirty-seventh and thirty-eighth claims for relief, it will be discussed below.

### THIRTY-SEVENTH CLAIM FOR RELIEF

Jalowiec contends that his counsel were ineffective in the penalty phase of his trial by failing to gather significant documentation revealing his history, background and character and by failing to hire a qualified psychologist to examine him as to how his problems affected his behavior. Had Jalowiec been properly examined, counsel would have learned that he had numerous life-threatening or life-altering experiences. He asserts that presentation of this evidence would have resulted in a reasonable probability that at least one juror would have had a different verdict.

Defense counsel has a constitutional duty to investigate a defendant's background when preparing for the penalty phase of the trial. *Harries v. Bell*, 417 F.3d 631, 637 (6th Cir. 2005). The United States Supreme Court, in *Wiggins v. Smith*, 539 U.S. 510, 533 (2003), held that *Strickland*

139

does not require defense counsel to investigate and present every possible type of mitigating evidence no matter how unlikely it would assist the defendant. A strategic decision to forego certain mitigation evidence is reasonable to the extent that "reasonable professional judgments support the limitation on investigation." *Id*. (quoting *Strickland,* 466 U.S. at 690-91). "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. *See Harries*, 417 F.3d at 638 (the investigation supporting counsel's decision not to introduce mitigating evidence of petitioner's background must itself be reasonable).

The Supreme Court, in *Rompilla v. Beard*, 545 U.S. 374, 387 n.7 (2005) and *Wiggins*, 539 U.S. at 524, has unequivocally declared that a thorough and complete mitigation investigation is absolutely necessary in capital cases. The Sixth Circuit uses the ABA Guidelines adopted in 2003. *Dickerson v. Bagley*, 453 F.3d 690, 694-94 (6th Cir. 2006) (citing *Hamblin v. Mitchell*, 354 F.3d 482, 485-88 (6th Cir. 2003)). The ABA Guidelines provide that penalty phase preparation requires extensive investigation into personal and family history, and anything in the life of the defendant which might mitigate against the appropriateness of the death penalty. The investigation should begin with the moment of conception and should include medical history, family and social history, educational history and employment and training history. According to the ABA Guidelines, it is necessary to locate and interview the defendant's family members and virtually anyone else who knew the defendant and his family, including neighbors, teachers, clergy, case workers, doctors, correctional, probation, or parole officers and others. Also, records from government agencies, the military and employers should be requested. ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ¶ 10.7 (2003), pgs. 80-83. A partial, but incomplete

140

mitigation investigation does not satisfy the requirements of *Strickland*. *Dickerson*, 453 F.3d at 694. A strategic decision not to perform a complete investigation is inadequate when a full investigation would have revealed extensive mitigation evidence . *Id.* at 696. An investigation must be performed if the investigator does not know the relevant facts that the investigation would uncover. *Id.*

Jalowiec asserts that counsel failed, prior to the actual mitigation hearing, to interview and/or present available witnesses who would have testified to relevant mitigation, including but not limited to: Thomas Evans, Julie Valentine, Helen Jalowiec, Neil Jalowiec, Greg Bennett, Wanda Queen, Michelle Brown and Maria Newsome. The Court finds that the witnesses that did testify gave sufficient evidence of how Jalowiec lived his life. Further testimony from additional witnesses would have been cumulative and, hence, unnecessary.

Jalowiec argues that:

Had trial counsel properly investigated Petitioner's background, they would have learned that he had numerous life threatening or life altering experiences. For example, Petitioner was a very active baby. He went through three cribs as a child. He shook them until they fell apart. At nine months old, he climbed up the cupboard and wedged himself between the highest cupboard and the ceiling. As a toddler, he pulled a sewing machine onto his head. When he was two or three, he drank kerosene from a lamp. When he was four or five, he ingested pain pills. He cut his head open from banging it on the crib. At one point he was even checked for child abuse due to all his cuts and bruises. The Petitioner became involved in gymnastics because of his hyperactivity. He enjoyed it very much but had to quit due to his diagnosis of juvenile rheumatoid arthritis. Apx. Vol. IV-A, pg. 69. Amend. Pet., pgs. 162-63.

In the first grade, Petitioner was diagnosed with 'hyperactivity' by a doctor at the Cleveland Clinic. They also stated that he had some level of brain damage. The Petitioner was taking Ritalin from first grade unti1 sixth grade. Apx.Vol. IV-A, pgs. 310-17. Amend. Pet., pg. 163.

Petitioner attended Learning Disability classes until high school. He was then transferred to 'severely behavioral handicapped' classes at Edison School in Elyria. Apx. Vol. IV-A, pgs. 69, 72, 308. The Petitioner also suffered from dyslexia. His grandfather took him for counseling sessions while he was growing up.

141

Apx. Vol. IV-A, pg. 87.  *Id.*

This character, history and background information allegedly would have allowed the jury to see the whole picture of Petitioner and provided mitigation evidence that warranted weight and effect in the jury's decision to impose life or death on Petitioner.

Jalowiec obtained the services of Deborah A. Koricke, Ph.D, who performed an evaluation of Jalowiec and prepared a report.  She did not testify, but reported that mitigating circumstances consisted of his psychiatric condition - "a persistent delusional belief, which he continues to hold, that there is a monkey which is his 'best friend' and continues to communicate with him.  Thus, he meets the criteria for a psychotic disorder, a serious mental impairment - his history which does not indicate seriously violent acts in his past, and indicates positive, long term relationships with others - his relatively young age."  Apx. Vol. IV-A, pg. 96-97.

In post-conviction proceedings, Jalowiec submitted the affidavit of James R. Eisenberg, Ph. D, who evaluated Dr. Koricke's evaluation and report.  He reported that her evaluation did not meet any of the specific standards established for forensic evaluations, as described in the Speciality Guidelines for Forensic Psychologists.  Further, she was not Board Certified by the American Board of Professional Psychology in Forensic Psychology, and should have declined to do the evaluation. Apx. Vol. IV-A, pg. 101.  Dr. Eisenberg also found fault with the short time she spent with Jalowiec, and the amount of time spent interviewing all relevant sources of information.  He asserted that an attempt should have been made to provide information to the jury from professionals concerning Jalowiec's childhood, his juvenile rheumatoid arthritis, and the effects that would have on his psycho-social development, his learning disabilities, prior suicide incidents and a cultural understanding of his home environment.  *Id.* at 102.

142

The Court must determine whether, in counsels' professional judgment, the investigation supporting their decision not to introduce mitigation evidence of Jalowiec's background was reasonable. *Harries*, 417 F.3d at 638. The Court finds no merit in Jalowiec's argument concerning his counsels' alleged failure to bring out incidents that occurred in his childhood, which may have caused brain damage. The Court allowed Jalowiec to consult a neuropsychologist in this regard. Jalowiec's Amended Traverse offers no new additional evidence as to brain damage.

Although Jalowiec's father, mother, sister and brother testified at the mitigation hearing, there was hardly any mention of his early childhood. His mother did state that he had juvenile rheumatoid arthritis that required frequent medical attention. Until he first suffered the symptoms of arthritis, his attendance at school was perfect. He was very upset having to miss school because of the pain. Tr. Vol. III, pgs. 163-64.

In this instance, counsel vigorously tested the evidence during the guilt phase. They were unsuccessful. Here, with a defendant like Petitioner, sound strategy was to call the witnesses they did in mitigation, not to offer some hypothetical information. Although it appears that counsels' investigation may have fallen short of what is required by the ABA Guidelines, Jalowiec must show that his counsels' ineffective assistance constitutes prejudice. In other words, he must demonstrate that, but for such errors, the outcome of the trial would have been different. *Harries*, 417 F.3d at 639.

In *Harries*, counsel failed to discover the defendant's traumatic childhood, i.e., physical abuse by his mother, stepfather, and grandmother. His grandmother hit him on the head with a frying pan. At age eleven, he was choked so severely that his eyes hemorrhaged. Since age eleven, he spent most of his time confined in institutions. When he was twenty, he attempted suicide and

suffered carbon monoxide poisoning.  In addition, counsel did not know about damage to the frontal lobe of his brain or his mental illness.  The Court ruled that, had this evidence been presented to the jury, it was reasonably probable that, but for Harries's counsels' deficient performance, the outcome of his sentencing would have been different.  *Id.* at 639-41.

In order to prove prejudice, Jalowiec must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland,* 466 U.S. at 687.  Prejudice exists when there is a reasonable probability, that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id*. at 694; *Hicks*, 384 F.3d at 214.

In this case, Petitioner experienced some minor injuries, was hyperactive when he was a child and may have had a delusional belief that did not involve violence.  But the jury's knowledge of those incidents were just as likely, if not more likely, to be viewed by the jury in a negative manner and not of any assistance or evidence of mitigation.  This claim is without merit.

### THIRTY-EIGHTH CLAIM FOR RELIEF

Jalowiec asserts that his trial counsel should have obtained the expert assistance of a neuropsychologist to examine him as to his history of head banging, head injury and possible brain damage.  Such tests allegedly would have shown Jalowiec's brain impairment.

A decision whether to hire an expert, and, if so, which particular type, depends on the facts of the case.  *Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006).  The Court granted Jalowiec's discovery request to hire a neuropsychologist.  His bill was submitted to the Court, but no new information was presented.  Apparently brain damage did not exist.  Therefore, Jalowiec's counsel could not be found ineffective for not hiring a neuropsychologist to testify at trial.  This claim is without merit.

144

## THIRTY-NINTH CLAIM FOR RELIEF

In his thirty-ninth claim for relief, Jalowiec asserts that he was denied effective assistance of counsel because of their failure to interview the State's mitigation rebuttal witnesses and/or present witnesses on his behalf.  The State's witness, Jeff Hicks, testified during the mitigation hearing that Jalowiec assaulted him with a bat or club after everyone involved in an altercation left a bar.  Tr. Vol. III, pgs. 208-09.  The police report, which Jalowiec received in discovery, did not mention the presence of a bat.  Jalowiec's counsel asserted that, based on receiving the police records, two witnesses to the fight have been located who can verify that Jalowiec did not hit anyone with a bat.  Defense counsel allegedly had a constitutional duty to thoroughly investigate and anticipate rebuttal testimony that would be presented by the State.  Jalowiec contends that this information would have impeached and discredited the State's rebuttal witnesses, and refuted the State's allegations that Jalowiec was a violent aggressor.

The testimony showed that Hicks was hit by a bat or club while outside after leaving the bar. Kenneth Roland testified that he saw Jalowiec holding a bat.  Tr. Vol. III, pg.261.  Jalowiec states that he has located two witnesses who were at the bar the night of the fight and can verify that Jalowiec did not hit anyone with a bat.  Actually, the fight started in the bar when a friend of Jalowiec's jumped Hicks.  Tr. Vol. III, pg. 207.  The bouncers broke up the fight, and the fighters were sent in opposite directions.  *Id.* at 208.  It is not clear what the prospective witnesses saw or where they were located at the time of the fight between Jalowiec, Hicks and Roland.  If they were in the bar, they saw Hicks get assaulted by Jalowiec's friend.  Therefore, they would testify that they did not see Jalowiec hit anyone with a bat.  Even if the new witnesses were located outside of the bar, there is no question that Hicks was struck in a manner that would likely cause serious injury.

145

Defense counsel notified the trial court that they would rest, unless the court determined that they opened the door for rebuttal. Tr. Vol. III, pg. 44. When the trial court indicated that rebuttal was appropriate, defense counsel objected to any rebuttal concerning violence. Tr. Vol. III, pgs. 48-56. The court overruled the objection, on the grounds that Jalowiec brought up a character trait, that "he is a good guy," that could be rebutted under Ohio Evid. R. 404(A)(1). Tr. Vol. III, pg. 55. Defense counsel agreed that the door had been opened for evidence of drugs. Tr. Vol. III, pg. 48. Because of the allowance of rebuttal evidence that Jalowiec was violent, he returned to the stand and informed the jury about potentially violent incidents that occurred when he went to bars. Tr. Vol. III, pgs. 60-75. He admitted that he had pending charges against him for felonious assault, menacing arson, aggravated drug trafficking and possessing drug paraphernalia. The first three related to bar fights. He denied guilt as to any of the charges. *Id.* The State's rebuttal witness, Kenneth Roland, supported Hicks's statement that Jalowiec had a bat during the bar fight. Tr. Vol. III, pg. 261. In fact, Jalowiec also hit Roland, causing severe injury and medical bills amounting to almost $10,000.00. Tr. Vol. III, pgs. 255, 261.

Although defense counsel could have reasonably decided to avoid extending what the jury may have perceived as a collateral trial involving violence and drug abuse by Jalowiec, their decision to return Jalowiec to the stand demonstrates the tactical tightrope walked by defense counsel in mitigation hearings. Any potential claim of mitigation and evidence to support such claim is open to testing and rebuttal by the prosecutor. Because death penalty counsel should be afforded deference in exercising their professional judgment, the Court finds this claim to be without merit.

## FORTY-FIRST CLAIM FOR RELIEF

Jalowiec asserts that his death sentence is unreliable and inappropriate because trial error, prosecutorial misconduct, and ineffective assistance of counsel resulted in the admission of other acts evidence and the introduction of an extrajudicial statement of the co-defendant, which directly implicated Jalowiec in the murder.  According to Jalowiec:

> at the mitigation phase of the trial, Jalowiec gave an unsworn statement. Tr. Vol. III, pgs. 21-44.  At the conclusion, the trial court ruled that the state could rebut what the he had said. Tr. Vol. III,  pgs. 44-47.  Defense counsel then put Jalowiec back on the stand to tell the jury about all of his criminal charges, even though he had not been convicted of any of them.  Tr. Vol. III, pgs. 59-74.
>
> In rebuttal to Jalowiec's unsworn statement, the state proceeded to call all of the alleged victims from the cases where Jalowiec had been charged but not convicted..  This testimony effectively destroyed any testimony that the Petitioner produced through his family members.
>
> The state also called in rebuttal Detective Leiby.  Through this witness the state introduced the statement of the co-defendant, in which Jalowiec's name was mentioned, implying he was present and assisted in the killing.
>
> This testimony completely destroyed the mitigation phase for Jalowiec.  What should have been an opportunity to humanize Jalowiec and present his history, background, and character turned into an opportunity for the state to present all of his alleged bad acts or misdeeds.

Amend. Pet., pgs.171-72.   These issues were discussed and rejected in Jalowiec's fourth, seventeenth, and thirty-ninth claims for relief.  Hence, the Court finds this claim for relief to be without merit.

## FORTY-THIRD CLAIM FOR RELIEF

In his forty-third claim for relief, Jalowiec contends that he was denied his right to due process in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments, when the Ohio Supreme Court applied improper methods of review in denying relief for federal constitutional violations.  According to Jalowiec:

Throughout Petitioner's case, the Ohio Supreme Court failed to apply *Satterwhite v. Texas*, 486 U.S. 249 (1988), (which involved the standard for harmless error review) and *Turner v. Murray*, 476 U.S. 28 (1986), standards in all phases of the review process.[22]  In a non-capital case in which no other substantial violations occurred, it might have been fair for the courts to reach their respective conclusion.  In light of the cumulative impact of multiple errors affecting his most basic constitutional rights, Petitioner's death sentence should have been vacated by the Ohio Supreme Court.  However, instead of reviewing the cumulative effect of these errors, the Ohio Supreme Court reviewed the violations as if they were isolated and unrelated to the decision to impose the death penalty.

Amend. Pet., pg. 179.

The harmless error standard was set forth in *Satterwhite*, 486 U.S. at 256.  "If the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand."  *Id.*  If an error occurred that had no constitutional significance, it is deemed harmless and the verdict sound.  *Taylor v. Mitchell*, 296 F. Supp.2d 784, 839 (N.D. Ohio 2003).  *See Gilliam*, 179 F.3d at 995.  The state court must find that any constitutional error had a harmful and injurious effect on the verdict.  *Id.*  It does not matter what harmless error standard is used, if there is no underlying constitutional error.  *Fry v. Pliler*, 127 S.Ct. 2321, 2328 (2007).  This claim is without merit.

## FORTY-FOURTH CLAIM FOR RELIEF

In his forty-fourth claim for relief, Jalowiec asserts that the Ohio post-conviction relief procedures are meaningless.  All state or federal constitutional violations that depend on off-the-record evidence must be raised in state post-conviction proceedings.  Jalowiec argues that, requiring a petitioner, in his post-conviction proceeding, to demonstrate substantive grounds for relief which warrant a hearing, while simultaneously denying him access to crucial trial exhibits elucidating those

---

[22] As *Turner* did not involve any standard of review, it should not have been cited here.

148

grounds, violates a petitioner's right to due process, equal protection, adequate trial and appellate review and to be free from cruel and unusual punishment.  Amend. Pet., pg. 181.

Post-conviction proceedings are civil, rather than criminal proceedings.  *Murray v. Giarratano*, 492 U.S. 1, 13 (1989).  A state has no obligation to provide post-conviction review. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001).  Therefore, challenges to a state's post-conviction procedures are not cognizable as independent claims in habeas corpus proceedings, unless state collateral review violates some independent constitutional right, such as equal protection.  *Clark v. McLemore*, 291 F. Supp.2d 535, 542 (E.D. Mich. 2003) (citing *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996)).

A petition for writ of habeas corpus is not the proper method for a criminal defendant to challenge errors or deficiencies in state post-conviction proceedings, because the claims usually address collateral matters, and not the underlying conviction giving rise to the defendant's incarceration.  *Kirby v. Dutton*, 794 F.2d 245, 46- 47 (6th Cir. 1986) (court not required to analyze the substance of Kirby's equal protection and due process arguments, or the government's exhaustion argument, or to determine the correctness of the district court's conclusion that the Sixth Amendment cannot apply to Kirby's post-conviction proceeding, because the post-conviction proceeding is civil, not criminal in nature).  Jalowiec simply asserts that the State violated his right to equal protection.  He provides no support or explanation for this conclusory allegation that petitioners cannot obtain discovery and present such material at an evidentiary hearing.  Such a conclusory allegation does not constitute a cognizable equal protection claim.  *Clark*, 291 F. Supp.2d at 542(citing *Montgomery,* 90 F.3d at, 1206).  This claim is without merit.

149

## FORTY-SIXTH CLAIM FOR RELIEF

Jalowiec contends that the cumulative effect of all the errors at pretrial, trial, sentencing and appellate proceedings violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. While trial-level errors that would be considered harmless when viewed in isolation might require reversal when considered cumulatively, "the accumulation of non-errors cannot collectively amount to a violation of due process." *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004), *cert. denied*, 543 U.S. 1119 (2005).  Consequently, where a petitioner fails to show that any of the alleged instances of ineffective assistance of counsel deprived him of a fair trial, "he cannot show that the accumulation of these non-errors warrant relief."  *Id.*  Moreover, the Sixth Circuit has noted that, "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).[23]  *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (even constitutional errors that would not individually support habeas relief cannot be cumulated to support habeas relief).  Jalowiec has not established that any error occurred in the State courts.  Thus, this claim is without merit.

## III. MERITS OF NON-DEFAULTED CLAIMS
## FIRST CLAIM FOR RELIEF - SUB-CLAIM (a)

In his first claim for relief, Jalowiec asserts that he was denied due process of law and a fair trial because the trial court lacked subject matter jurisdiction, personal jurisdiction and venue to indict or hear the case in Lorain County for a homicide that occurred in Cuyahoga County.  Thus, he contends that the judgment against him is void.

---

[23]  The Court acknowledges that, in a later case, the Sixth Circuit granted habeas relief on cumulative error grounds.  *DePew v. Anderson*, 311 F.3d 742, 751 (6th Cir. 2002).  Because the *DePew* petitioner had filed his petition prior to the AEDPA's effective date, however, the AEDPA provisions did not apply.  *Id.* at 748.

Generally, errors of state law may not provide a basis for federal habeas relief.  *Estelle*, 502 U.S. at 67-68; *Pulley*, 465 U.S. at 41.  The issues of proper jurisdiction and venue do not usually raise a cognizable constitutional question.  *Campa v. Erwin*, 2005 WL 2313980 *1 (S.D. Ohio Sep. 1, 2005) (citing *Lott*, 261 F.3d at 606 n.6).  However, habeas relief is appropriate where the court's error in interpreting or applying its own law has caused the trial to become so fundamentally unfair as to have deprived appellant of substantive due process in violation of the U.S. Constitution.  *Lott*, 261 F.3d at 606 n.6.

Ohio Revised Code Section 2901.11(A) provides:

(A) A person is subject to criminal prosecution and punishment in this state if any of the following occur:
(1) The person commits an offense under the laws of this state, any element of which takes place in this state.

Jalowiec was indicted under R.C. § 2903.01(A)(1).  Because there is no dispute that Ronald Lally was murdered in the State of Ohio, subject matter jurisdiction was proper in this state.

The Sixth Amendment guarantees an accused the right to a speedy trial in the state and district where the crime was committed.  But the Fourteenth Amendment Due Process Clause has not extended the protection of all of the Bill of Rights to the states.  *Duncan*, 391 U.S. at 148-49.  The Supreme Court has never determined that the Sixth Amendment's venue clause applies to the states.  *Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004).  In fact, the Sixth Circuit has held that the Fourteenth Amendment did not extend federal venue protection to the states.  *Caudill v. Scott*, 857 F.2d 344, 345 (6th Cir. 1988).  *See Garcia v. Dretke*, 2005 WL 2263675 *1 (S.D. Tex. Aug. 20, 2005).

The Ohio Supreme Court determined this issue as follows:

151

With regard to Jalowiec's claim of improper venue, we held in *State v. Beuke* (1988), 38 Ohio St. 3d 29, 526 N.E.2d 274, paragraph one of the syllabus: "When an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element thereof. (R.C. 2901.12[H].)" Venue is not a material element of any crime but is a fact that must be proven beyond a reasonable doubt. *State v. Headley* (1983), 6 Ohio St. 3d 475, 477, 6 Ohio B. Rep. 526, 528, 453 N.E.2d 716, 718. However, R.C. 2901.12(G) provides: "When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any such jurisdiction." (Emphasis added.)

The testimony by Officer Homoki concerning the threats made to Lally by Jalowiec and Danny Smith and the events culminating in Lally's being taken out of Lorain County with Jalowiec and Raymond and Michael Smith indicate that a conspiracy had been formed prior to the murder. The evidence shows that those events were orchestrated and supports the prosecution's claim that prior calculation and design occurred in Lorain County.

Michael Smith testified that after he and his father got in the LeBaron driven by Jalowiec, Raymond Smith brandished a gun and told Lally not to make any sudden moves. As they drove toward Cleveland, Raymond Smith repeatedly asked Lally why he "set my son up."

Yet Michael Smith also testified that Smith told Lally that they were going to put him on a bus to leave town and that "everything got a little more comfortable" in the car while the four of them drank beer and smoked crack. Michael Smith testified that they drove to East Cleveland to buy crack for Lally to take on his trip. Although this evidence could be considered to somewhat negate the state's argument that prior calculation and design was formed in Lorain County, the trier of fact could have concluded that the conspirators were simply engaged in a subterfuge to relax Lally. Subsequently, Raymond Smith directed the car into Woodland Cemetery in Cleveland and told Lally: "You will never snitch on nobody again." After Raymond Smith shot Lally, Jalowiec got out of the car and helped him beat Lally. After leaving Lally in the cemetery road, Jalowiec attempted to drive the LeBaron over Lally's body several times.

In our view, the evidence at trial indicated that the whole sequence of events leading up to Lally's murder, including prior calculation and design, occurred in both Lorain and Cuyahoga Counties. As was true in the case involving Jalowiec's coconspirator, see *State v. Smith*, 87 Ohio St. 3d at 435-436, 721 N.E.2d at 107-108, the jury could have reasonably found that prior calculation and design by Jalowiec took place in Lorain County. As in *Smith*, the jury could have reasonably concluded that getting Lally in the car ostensibly to ride to Cleveland to buy crack, as well as the plan to have Lally take a bus out of town, was merely a ruse to enable them to kill him in an area where his corpse could not be identified. In sum, we find that the trial court did not

err in denying Jalowiec's Crim. R. 29 motion for acquittal on grounds of improper venue or in failing to demonstrate prior calculation and design.  Therefore, we reject Proposition of Law III.

*State v. Jalowiec*, 91 Ohio St. 3rd at 227-229.

Ohio Criminal Rule 18(A) provides, "[t]he venue of a criminal case shall be as provided by law."  The Ohio venue statute, R.C. § 2901.12 provides, in pertinent part:

> (A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed.
> (G) When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.

In a criminal case, venue is not a material element of any offense charged.  It is a fact that must be proven at trial, unless waived.  *Truesdale v. Dallman*, 690 F.2d 76, 77 (6th Cir. 1982).  Review of the facts set forth in the Ohio Supreme Court's decision shows that there was substantial evidence at trial whereby a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found beyond a reasonable doubt that at least some elements of the offense were committed in Lorain County.  Thus, Lorain County was a proper venue under R.C. § 2901.12.  Further, because the AEDPA provides relief only from the Constitution, laws and treaties of the United States, Jalowiec cannot prevail on his claim that the court lacked jurisdiction, and that venue was in the wrong district.

## SECOND CLAIM FOR RELIEF

In his second claim for relief, Jalowiec alleges that he was deprived of his constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments, when the trial court failed to grant his motion for judgment of acquittal when there was insufficient evidence of venue and prior

calculation and design.  Jalowiec's claim of improper venue was discussed in his first claim for relief, where it was found to be without merit.  Accordingly, it will not be addressed in this second claim.

A conviction is supported by sufficient evidence if, after viewing the evidence and the inferences to be drawn therefrom in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A federal court cannot make its own subjective determination of guilt or innocence.  The trier of fact has the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts.  *Herrera*, 506 U.S. at 401-402.  The court applies the *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n. 16.  *Jackson* does not extend to non-record evidence, including newly discovered evidence.  *Herrera,* 506 U.S. at 402.  However, it does apply whether the evidence of guilt was direct or circumstantial.  *Scott*, 302 F.3d at 602.  This due process guarantee of sufficiency of the evidence extends only to facts needed to establish the elements of the crime, and not to the state's burden to prove the absence of an affirmative defense.  *Allen v. Redman*, 858 F.2d 1194, 1197-98 (6th Cir. 1988).  The question is whether the Ohio Supreme Court's application of the *Jackson* standard was reasonable.  A federal court must look to state law to determine the elements of the crime.  *Cameron v. Birkett*, 348 F. Supp.2d 825, 839 (E.D. Mich. 2004).

The Ohio Supreme Court applied *Jackson* in its analysis of Jalowiec's claim of insufficiency of evidence as to prior calculation and design.  *State v. Jalowiec*, 91 Ohio St.3d at 228.  *See* First

Claim for Relief. It cited specific evidence on the record showing prior calculation and design from which a reasonable juror could find the presence of this element.

Further, as the Court found in the first claim for relief, there was substantial evidence at trial whereby a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found beyond a reasonable doubt that at least some elements of the offense were committed in Lorain County. Thus, Lorain County was a proper venue under R.C. § 2901.12.

The Court finds that the decision of the Ohio court was a reasonable application of clearly established constitutional law, as determined by the United States Supreme Court. Hence, this claim is without merit.

## THIRD CLAIM FOR RELIEF

In his third claim for relief, Jalowiec again argues that there was insufficient evidence of prior calculation and design to support his conviction for aggravated murder. He contends that the evidence shows only that the murder occurred after Jalowiec's co-defendant panicked upon seeing some police and fire trucks in Cleveland. Tr. Vol. II, pgs. 783-84, 816-20. The facts demonstrated that, after Lally and the co-defendant got in the car driven by Jalowiec, the co-defendant brandished a gun and told Lally not to make any sudden moves. As they drove toward Cleveland, the co-defendant repeatedly asked Lally why he "set [his] son up." Tr. Vol. II, pg. 782. Subsequently, the co-defendant directed the car into Woodland cemetery in Cleveland and told Lally, "You will never snitch on nobody again." Tr. Vol. II, pg. 784. After the co-defendant shot Lally, Jalowiec got out of the car and helped him beat Lally. When leaving, Jalowiec attempted to drive over Lally's body several times. *Id.* at pg. 785; *State v. Jalowiec*, 91 Ohio St.3d at 228-29.

155

The evidence set forth by the Ohio Supreme Court, which is discussed in the first claim for relief, shows the existence of prior calculation and design.  The Court finds that the decision of the Ohio court was not an unreasonable application of clearly established constitutional law as determined by the United States Supreme Court.  As such, this claim is without merit.

### THIRTEENTH CLAIM FOR RELIEF - SUB-CLAIMS (a), (b)
### AND
### FOURTEENTH CLAIM FOR RELIEF - SUB-CLAIM (a), (b)

Jalowiec claims that the court's admission of gruesome, prejudicial and cumulative photographs into evidence deprived him of his rights to a fair trial and due process of law under the Sixth, Eighth and Fourteenth Amendments.  More specifically, the following autopsy photographs were allegedly improperly admitted:

> a) St. Ex. 2B, depicted Lally's face after it had been worked on by the coroner's staff.  Tr. Vol. II, pg. 644.
> b) St. Ex. 2C, a close up of Lally's left eye artificially being forced open.  Tr. Vol. II, pg. 645.
> c) St. Ex. 2F, a close up of Lally's lower lip being pulled down and held there artificially.  Tr. Vol. II, pg. 646.
> d) St. Ex. 2G, a close up of Lally's upper lip being pulled up and held there artificially.  Tr. Vol. II, pg. 646.
> e) St. Ex. 2I, depicting the inside of Lally's lower face after having had the larynx, trachea and neck structure pulled out in a sickening manner so the jurors would be able to see the victims spinal column simply by looking through his mouth.  Tr. Vol. II, pg. 647.
> f) St. Ex. 2K, shows Lally's scalp peeled back from his scull by the coroner.  Tr. Vol. II, pg. 647.
> g) St. Ex. 2L, another angled look at the victim's peeled back scalp, as done by the coroner.  Tr. Vol. II, pg. 648.
> h) St. Ex. 2M, also showing Lally's peeled back scalp; redundant as well as gruesome.  Tr. Vol. II, pg. 649.

Also, exhibits 1-A through 1-F and 1-H were admitted over objection, and these issues were raised in the Ohio Supreme Court.  Federal habeas review is preserved as to those photographs.  Defense

counsel did not object to exhibits 1-G, 1-I through 1-M and, thus, Jalowiec has procedurally defaulted as to those photographs.  As the law is the same regardless of procedural status, they will be discussed together.

> The Supreme Court of Ohio rejected the claim as to the photographs, stating that:
>
>> Admittedly, several of these photographs are gruesome.  Each one corroborates the testimony of Dr. Raaf, who performed the autopsy on Lally.  The cumulative effect of several repetitive autopsy photographs was harmless.  In addition, the photographs illustrated the extent of the beating that Lally sustained and the attempts made by Jalowiec to run over his body with a car, and the photographs were relevant by illustrating witness testimony and forensic evidence.

*State v. Jalowiec*, 91 Ohio St.3d at 230.

Admission of evidence is a matter of state law, and alleged error, such as improper admittance of evidence, usually does not support a writ of habeas corpus.  *Estelle*, 502 U. S. at 67. Admission of photographs alleged by Jalowiec to be prejudicial is within the sound discretion of the trial court.  An appeal as to admission almost always fails.  If the evidence is probative, it will be difficult to find a constitutional violation to exclude it; and, if it is not probative, the defendant would most likely not be hurt by its admission.  *Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997).  *See Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005), *cert. denied*, 127 S.Ct. 125 (2006) (admission of gruesome photographs did not deprive petitioner of a fair trial).

The Court's reasoning applies to all of the photographs.  The Court concludes that the decision of the Ohio court as to Jalowiec's thirteenth claim for relief, as to the photographs preserved for federal habeas review, was not contrary to or an unreasonable application of clearly established constitutional law as determined by the United States Supreme Court.  As to the

remainder of the photographs raised in the thirteenth and fourteenth claims, the Court finds Jalowiec's argument to be without merit.

## SEVENTEENTH CLAIM FOR RELIEF

During the mitigation phase of his trial, Jalowiec gave an unsworn statement. Because he brought out evidence of his character, the trial court allowed evidence on rebuttal of prior crimes of violence. Jalowiec contends that this testimony constituted evidence of nonstatutory aggravating circumstances.

The Ohio Supreme Court addressed this claim as follows:

In Proposition of Law XII and in the second part of Proposition of Law I, Jalowiec asserts that he was prejudiced by the state's presentation of rebuttal witnesses during the mitigation phase. Jalowiec contends that under the guise of rebuttal, the state presented numerous witnesses who testified as to other crimes committed by Jalowiec. Jalowiec submits that this testimony was essentially evidence of nonstatutory aggravating circumstances.

At the mitigation hearing, Jalowiec gave an unsworn statement, during which he also responded to questions from defense counsel. During his unsworn statement, Jalowiec chronicled his problems with rheumatoid arthritis, its effects on him, and how it prevented him from holding a job for very long. He spoke about the relationship he had with the children of his girlfriend and how he had developed a father-son relationship with her son, Derrick. Jalowiec denied being involved with threatening or wanting to kill Lally, stating, "I had nothing to do with this." He also denied having a crack problem and asserted that there were no pending drug cases against him.

At that point, away from the jury, the defense indicated that it was going to rest if the trial court thought it had not opened the door for rebuttal by the prosecution. The court overruled the defense motion to prevent rebuttal by the state on the grounds that Jalowiec had brought out a character trait, that "[h]e is a great guy," that could be rebutted under Evid.R. 404(A)(1), in particular with evidence of prior crimes of violence.

After this, the court permitted Jalowiec to continue with his unsworn statement. Jalowiec then admitted that he had pending charges brought against him for felonious assault, menacing, arson, aggravated drug trafficking, and possessing drug paraphernalia. The first three charges related to bar fights in which Jalowiec was involved, but he denied any guilt. With regard to the charges of drug trafficking, Jalowiec claimed that he did not "know, really know, what this is all about" and

158

further claimed that the drug charges had been brought in an attempt to compel him to testify against others in the homicide investigation.

The defense then called a number of other witnesses, including relatives, who testified that Jalowiec was "great" with children, that he fainted at the sight of blood, that he "loved kids," that he would not go hunting and "wouldn't kill a thing," that he did not start the bar fight that led to the menacing charge or fight back, and that he was a "fun loving kid" who "loved animals" and loved kids and people.

In response, the state produced seven rebuttal witnesses who testified that Jalowiec sold crack cocaine, that he had a crack pipe that fell out of his pants leg when he was pulled over on a traffic stop, that he hit someone with a baseball bat outside a bar, causing almost $20,000 in medical bills to the victim, that he bragged about kicking the same bar-fight victim in the face, and that he caused injuries to another victim of the same bar fight, resulting in hospitalization and $10,000 worth of medical bills. In *State v. Gumm* (1995), 73 Ohio St.3d 413, 653 N.E.2d 253, syllabus, we held that "counsel for the state at the penalty stage of the capital trial may introduce * * * (3) evidence rebutting the existence of any statutorily defined or other mitigating factors first asserted by the defendant."  Accord *State v. Raglin* (1998), 83 Ohio St.3d 253, 261, 699 N.E.2d 482, 490.

Here, Jalowiec denied knowledge of any legitimate basis as to why particular drug trafficking charges had been brought against him.  He called several witnesses to testify about what a good person he was.

The trial court has discretion to determine what relevant evidence is admissible as proper rebuttal.  *State v. Dunlap* (1995), 73 Ohio St.3d 308, 316, 652 N.E.2d 988, 996.  In discharging its burden to prove that the aggravating circumstance outweighs the mitigating factors, the prosecution may rebut mitigation evidence.  *State v. DePew* (1988), 38 Ohio St.3d 275, 285-286, 528 N.E.2d 542, 554.

Similar to the situation in *State v. McNeill* (1998), 83 Ohio St.3d 438, 446-447, 700 N.E.2d 596, 605-606, Jalowiec opened the door to rebuttal.  This rebuttal evidence tended to show that Jalowiec was capable of strenuous physical activity, that he sold drugs, and that he severely beat victims in the bar fights that led to the charges against him.  The trial court did not err in permitting the prosecution to rebut Jalowiec's unsworn statement or witnesses.  The rebuttal testimony did not amount to the introduction of nonstatutory aggravating circumstances. See *Gumm*, 73 Ohio St.3d 413, 653 N.E.2d 253, syllabus.

*State v. Jalowiec*, 91 Ohio St.3d at 231-33.

Usually errors involving state evidentiary matters, especially rulings regarding the admission or exclusion of evidence, are not reviewable in federal habeas corpus actions, unless a federal

constitutional violation exists.  *Estelle*, 502 U.S. at 67; *Waters*, 916 F.2d at 335; *Jones*, 244 F. Supp.2d at 814; *Clemmons* v. *Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).

The Eighth Amendment allows a jury in a capital case to consider, as a mitigating factor, any aspect of a defendant's character or record.  *Mason v. Mitchell*, 320 F.3d 604, 618 (6th Cir. 2003). *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978).  A jury is entitled to hear, as mitigating evidence, the history, character, and background of the defendant, and any other factors that are relevant to whether the death penalty is appropriate.  *Id.*  Jalowiec opened the door to rebuttal by giving the unsworn statement.

Jalowiec now contends that the testimony by Jeff Hicks, that Jalowiec hit him in the face with a bat during a bar fight, is untrue, and that fact is nowhere mentioned in the police report. According to Jalowiec, this evidence never would have been admitted, had he been given the police report as required by *Brady v. Marlyland*.  The Court disagrees.  Hicks could have testified as to what happened in the bar fight, regardless of whether or not the police report mentioned the presence of a bat.  The Court concludes that the decision of the Ohio court as to Jalowiec's seventeenth claim for relief was not contrary to or an unreasonable application of clearly established constitutional law as determined by the United States Supreme Court.  Accordingly, this claim is without merit.

## EIGHTEENTH CLAIM FOR RELIEF

In his eighteenth claim for relief, Jalowiec asserts that improper aggravating circumstances were introduced as a result of prosecutorial misconduct, errors of the trial court, and instances of ineffective assistance of counsel, all of which were presented to the Court.  Whether this claim has merit depends upon the Court's determination of the claims therein.  Thus, further discussion is not necessary here.

## NINETEENTH CLAIM FOR RELIEF - SUB-CLAIM (a)

Jalowiec asserts that he was denied a fair and impartial trial by the improper removal of jurors whose views on the death penalty would not prevent or substantially impair the performance of their duties.  Sub-claim (a) pertains to prospective jurors, Porter and Eubanks.  The facts and law regarding the alleged improper removal of these two prospective jurors were discussed in section II, in which the Court found the claim to be without merit.  Therefore, the Court concludes that the decision of the Ohio Supreme Court was not contrary to, or an unreasonable determination of, clearly established federal constitutional law as determined by the United States Supreme Court.

## THIRTY-FIFTH CLAIM FOR RELIEF SUB-CLAIMS (c), (d), (e), (g) and (h)

Jalowiec contends that cumulative ineffective assistance of trial counsel violated his right to a fair and impartial trial as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments. He sets forth the following five instances in support of his contention:

      c. Voir dire;
      d. Co-defendant Ray Smith's statement;
      e. Forensic expert;
      g. Jury instructions;
      h. Petitioner's unsworn statement.

The Court has previously examined the issues contained in sub-claims (c) (claim 19), (d) (claim 4) and (h) (claim 17), and found them to be without merit.  The Ohio Supreme Court ruled as follows:

> In Proposition of Law V, Jalowiec claims that he was denied effective assistance of trial counsel.  To gain reversal of a conviction for ineffective assistance, "[f]irst, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693.  Accord *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
> The record does not support a finding that Jalowiec was prejudiced, that is, that there was "a reasonable probability that, were it not for counsel's errors, the result of the

161

trial would have been different." *Id.* at paragraph three of the syllabus.

****

First, Jalowiec complains that "during voir dire counsel failed to rehabilitate favorable jurors and failed to timely object to unfounded challenges by the State." Although Jalowiec does not provide any specific examples or citations to the record, he is apparently referring to the excused jurors mentioned under Proposition of Law VI. As previously discussed, none of the juror excusals challenged in that proposition was [sic] improper. Moreover, we have repeatedly held that counsel is in a much better position to determine whether jurors could have been rehabilitated than can a reviewing court. *E.g., Phillips*, 74 Ohio St.3d at 85-86, 656 N.E.2d at 659; *Bradley*, 42 Ohio St.3d at 143, 538 N.E.2d at 381.

****

Second, Jalowiec claims that he was prejudiced because counsel failed to object to the admission of his coconspirator's statements on tapes that implicated him in the murder. Defense counsel specifically declined to object to this evidence at the close of the mitigation phase. As discussed under Proposition of Law XII, the admission of the two taped statements of Raymond Smith was improper. Counsel should have objected to these tapes. However, their admission did not affect the outcome of Jalowiec's sentencing determination.

****

Third, Jalowiec argues that he was prejudiced by counsel's failure to request an expert to assist them in determining the cause of death. The deputy coroner, Dr. Heather Raaf, testified that Lally's injuries were consistent with being stomped or struck by a vehicle several times. On cross-examination, Dr. Raaf stated that she did not find any tire or boot tread markings on Lally's corpse. Because of this, Jalowiec claims that counsel were deficient in failing to request their own expert witness. However, Dr. Raaf did not testify that there were no markings on Lally's body; rather, she testified that there were no tread markings found on the body. Had counsel requested an expert on cause of death, the request might not have been granted. The appointment of defense experts is within the sound discretion of the trial court. See *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph four of the syllabus. Jalowiec has failed to demonstrate how such an expert would have aided his defense or that there was a basis for requesting an expert. See *State v. Mason* (1998), 82 Ohio St.3d 144, 150, 694 N.E.2d 932, 943-944. In sum, Jalowiec has not demonstrated how he was prejudiced by counsel's failure to seek expert assistance.

Fourth, Jalowiec claims deficient representation because counsel (1) failed to object to the instruction on all statutory mitigating factors... (3) failed to object to the instruction on consideration of life sentences, (4) failed to request a definition of the term "mitigation" at the penalty phase, and (5) failed to object to the guilt phase instruction that the "Defendant is charged as a principal offender."

****

The failure to request an instruction defining the term "mitigation" did not prejudice Jalowiec. The absence of instructions on the concept of mitigation does not violate

162

the Eighth and Fourteenth Amendments to the United States Constitution. *Buchanan v. Angelone* (1998), 522 U.S. 269, 275-277, 118 S.Ct. 757, 761-762, 139 L.Ed.2d 702, 709-710.  The instructions here did not foreclose the jury's consideration of any mitigating evidence, since the court directed the jury to "consider all of the evidence." *Id.*, 522 U.S. at 277, 118 S.Ct. at 762, 139 L.Ed.2d at 710; *Goff,* 82 Ohio St.3d at 131, 694 N.E.2d at 923.

Counsel's failure to object to the instruction on Jalowiec's being charged as a principal offender was harmless.  The court properly defined principal offender as part of the complicity instruction.  This case involved the specification of killing to prevent testimony under R.C. 2929.04(A)(8); it did not involve the felony-murder specification of R.C. 2929.04(A)(7), where determination of principal-offender status may be critical.

****

Fifth, Jalowiec contends that counsel were ineffective in permitting the defendant to make an unsworn statement, which resulted in a ruling that the prosecutor could rebut it.  However, counsel's decision to have Jalowiec make an unsworn statement did not fall "below an objective standard of reasonable representation." *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.  Counsel's decision was in the nature of trial strategy.  With little mitigating evidence to offer, counsel decided to let Jalowiec speak to the jury in the hope of avoiding the death penalty.  We ordinarily refrain from second-guessing strategic decisions made by counsel at trial, even where counsel's strategy was questionable, *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 37, 402 N.E.2d 1189, 1192, and even though appellate counsel essentially argue that they would have defended differently. *Mason,* 82 Ohio St.3d at 169, 694 N.E.2d at 956.

*State v. Jalowiec*, 91 Ohio St.3d at 235-37.

The Ohio Supreme Court discussed counsels' failure to hire a forensic expert.  The Court finds that the Ohio Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Furthermore, the decision did not result in an unreasonable determination of the facts in light of the evidence presented.

Sub-claim (g) concerned counsels' failure to object to jury instructions.  The Ohio Supreme Court found no error in the trial court's jury instructions, i.e., the failure to give a sympathy instruction or to define the term "mitigation."  The Ohio Supreme Court likewise did not find any

163

error in the court's instruction that the "defendant is charged as the principal offender." This Court concludes that the decision of the Ohio Supreme Court was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

In *Bonnell v. Mitchell*, 301 F. Supp.2d 698, 743 (N. D. Ohio 2004), *aff'd*, 2007 WL 62628 (6th Cir. Jan. 8, 2007), the court held there was no constitutional error in instructing the jury on all statutory mitigating factors, where none of those mitigating factors was raised. Although the court read all the statutory mitigating factors to the jury, it made no comment on the factors not presented by the defendant. In this case, although the trial judge mistakenly charged that Jalowiec was a principal offender, the trial court properly defined principal offender as part of the complicity instruction.

Having reviewed the sub-claims of Jalowiec's other claims for relief individually, and having determined each to be without merit, it is unnecessary for the Court to review the "cumulative effect" of these purported errors of counsel. *Alder*, 240 F. Supp.2d at 674-75(citing *Lundy*, 888 F.2d at 581). The Court finds this claim to be without merit.

## FORTIETH CLAIM FOR RELIEF

Jalowiec was allegedly denied his constitutional right to effective assistance of trial counsel during *voir dire*. According to Jalowiec, his counsel failed to rehabilitate favorable jurors and failed to timely object to the excusal of jurors for cause because of their views on the death penalty. This underlying claim was discussed and rejected in Jalowiec's nineteenth claim for relief. For the reasons set forth therein, the Court finds the decision of the Ohio court, as to Petitioner's fortieth claim for relief, not to be contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

164

## FORTY-SECOND CLAIM FOR RELIEF

Jalowiec alleges that he was denied his right to effective assistance of appellate counsel on direct appeal by counsels' failure to raise or adequately address substantial and well-established criminal law issues.  Specifically, Jalowiec argues counsel failed to raise the following issues:

### Lead Trial Counsel's Conflict of Interest

1) Failure to address the appointment of lead counsel Joseph C. Grunda, and his representation of Petitioner, in clear conflict of interest with his simultaneous representation of State witness Terry Hopkins, during which time Grunda negotiated Hopkins' release from prison in exchange for his testimony against Petitioner.

2) Failure to address the involvement of Petitioner's capital trial judge, Kosma J. Glavas, in the granting of shock probation to Terry Hopkins in exchange for Hopkins' testimony against Petitioner.

### Venue and Jurisdiction

3) Appellate counsel failed to raise numerous instances of ineffectiveness on the part of Petitioner's trial counsel occurring at Petitioner's trial relating to trial counsels' failure to move for a change of venue, and to properly and adequately address the defective indictment, and lack of jurisdiction.

### Other Areas of Ineffective Representation of Trial Counsel

Appellate counsel further failed to raise other areas of ineffective representation of trial counsel:

4) Appellate counsels' failure, in their second Assignment of Error, to quote actual conversation held between the trial court and trial counsel about the Petitioner being seen handcuffed so as to deprive the state appellate court a meaningful review, thus ruling the claim as having no merit.

5) Failure to address State witnesses, Sandra Williams' and Lynne Altpater's prior witness statements that were excluded from in camera inspection.

6) Failure to address trial counsels' neglect to use written statements of numerous State witnesses during cross-examination, including Sandra Williams, Lynne Altpater, Carl Hartman, Terry Hopkins, Brian Howington, and Joann Fike.

7) Failure to address trial court's ruling that the two previously made contradictory, written statements of Joann Fike had no ultimate inconsistencies.

8) Failure to address the fact that most if not all of witness statements are exculpatory to the Petitioner and should have been turned over to the defense under Crim. R. 16.

### Trial Court Error

Appellate counsel also failed to reference numerous instances of trial-court error, including:

9) Failure to address trial the court's refusal to dismiss for cause Juror Patricia Repko and Alternate Noreen Hoover, despite their clearly stated predispositions to an automatic vote for the death penalty.

10) Failure to address the trial court's violations of O.R.C. § 2929.05, mandatory record of all criminal proceedings in a capital trial.

11) Failure to address the trial court's violations of Ohio Criminal Rules of Procedure 25, which requires the recording of all criminal proceedings, including side-bar          discussions, peremptory challenges, and jury polling.

12) Failure to only address one of many hearsay statements made over trial counsels' objections, including all the hearsay the court improperly allowed for Officer John Homoki,  Tr. Vol. I, pgs. 525-30, Sandra Williams, Tr. Vol. I, pg. 514, Terry Hopkins, Tr. Vol. II, pgs. 570-78, and Michael Smith, Tr. Vol. II, pg. 778.

13) Failure to address Michael Smith being allowed by the trial court, over trial counsels' objection, to speculate on who actually shot Ronald Lally.  Tr. Vol. II, pg. 841.

14) Failure to address the prosecutor's attempts to fashion a conspiracy between Petitioner and the Smiths through testimony of numerous witnesses, even though Petitioner had not been charged with conspiracy.  This was done through the testimony of Officer Ashley, Tr. Vol. I, pgs. 492-98, Sandra Williams, Tr. Vol. I, pgs. 508-15, Lynne Altpater, Tr. Vol. I, pgs. 535-40, and Officer Homoki, Tr. Vol. I, pgs. 521-31.

15) Failure to address the trial court's erroneous trial phase instructions to the jury implying that one is guilty of the crime if one fails to act.  The court stated this five times in the guilt phase instructions.  Tr. Vol. II, pgs. 994, 995.

16) Failure to address the trial court's improper instructions to the jury in the guilt phase under a vicarious liability theory in a death penalty case.

Prosecutorial Misconduct

Appellate counsel also failed to reference numerous instances of prosecutorial misconduct:

17) Failure to address the various exhibits offered by the state to inflame the jurors: State Exhibits 2B, 2C, 2F, 2G, 2I, 2K, 2L, 2M.

18) Failure to cite instances of witness vouching by the prosecutor in closing arguments which prevented the state appellate court from seeing the pattern of misconduct.  Tr. Vol. II, pgs. 922, 924, 925-26, 927-28, 929, 932, 973.

19) Failure to address the prosecutor's statements to the jury during closing arguments that this was a conspiracy case, even though there was no allegation of conspiracy in Petitioner's capital indictment.  Tr. Vol. II, pgs. 920, 921.

20) Failure to address the personal claims made by the prosecutor against the Petitioner, that had no basis in the evidence:  Petitioner wanted to help his drug source and that he wanted to keep the drug empire going.  Tr. Vol. II, pg. 974.

21) Failure to address attributions by the prosecutor against the Petitioner even though there was no evidence to support such claims:  photo exhibits show Petitioner did enough damage by himself to cause Lally's death, Tr. Vol. II, pg. 975; photos demonstrate Petitioner's handiwork, Tr. Vol. II, pg. 982; evidence shows Petitioner and others were planning the murder for months, Tr. Vol. II, pg. 976; number of people committed acts which could only have been committed by a single individual, Tr. Vol. II, pg. 975; Patrolman Homoki linked the defendant to crime, Tr. Vol. II,

166

pgs. 977-78; Carl Hartman linked defendant to crime, Tr. Vol. II, pgs. 977-78; Sharon Hopkins linked defendant to the crime, Tr. Vol. II, pgs. 977-78; Terry Hopkins linked defendant to the crime, Tr. Vol. II, pgs. 977-78; Raymond Smith called defendant from restaurant when no such evidence was introduced, Tr. Vol. II, pg. 978; and coroner proved the murder to be the defendant's handiwork, Tr. Vol. II, pg. 975.

22) Failure to fully address the point of fact that the evidence adduced throughout the trial was woefully insufficient to sustain a conviction against the defendant.

Other Appellate Ineffective Assistance

23) Appellate counsel also failed to present a meritorious brief to the state appellate court for a meaningful review of the more serious errors which occurred in the guilt phase and failed to raise numerous claims with merit so as to prevent the state appellate court from overturning this conviction.

Amend. Pet., pgs. 173-76.

The Ohio Supreme Court, in affirming the court of appeals' decision denying Jalowiec's

application to reopen his direct appeal, stated:

> We affirm the judgment of the court of appeals, albeit for different reasons.  The two-pronged analysis found in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess whether Jalowiec has raised a "genuine issue" as to the ineffectiveness of appellate counsel in his request to reopen under App.R. 26(B)(5).  See *State v. Spivey* (1998), 84 Ohio St.3d 24, 25, 701 N.E.2d 696, 697.  To show ineffective assistance, Jalowiec must prove that his counsel were deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had they presented those claims on appeal.  *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
>
> Moreover, to justify reopening his appeal, Jalowiec "bears the burden of establishing that there was a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal."  *State v. Spivey*, 84 Ohio St.3d at 25, 701 N.E.2d at 697.
>
> We have reviewed appellant's twenty propositions of law alleging, inter alia, deficient performance by appellate counsel.  Many of these same arguments were rejected by us on Jalowiec's appeal before this court.  See *State v. Jalowiec*, 91 Ohio St.3d 220, 744 N.E.2d 163.  In any case, however, in none of the twenty propositions of law has Jalowiec raised "a genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal" (emphasis added) before the court of appeals, as required under App.R. 26(B)(5).
>
> Accordingly, the judgment of the court of appeals is affirmed.

*State v. Jalowiec*, 92 Ohio St.3d at 421-22.

167

A defendant has a right to effective counsel as to his first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). But not every nonfrivolous claim need be raised on direct appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The ability to single out weaker arguments on appeal is a sign of effective appellate advocacy. *Smith v. Murray*, 477 U.S. 527, 536 (1986). The ignored issues must be stronger than those presented, in order to overcome the presumption of effective assistance of counsel. *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Jalowiec states in his Traverse that some of the "issues raised in his state court application to reopen his appeal are now raised as discrete habeas claims that are advanced in other sections of this Traverse, and it is that set of overlapping issues that Jalowiec focuses on in support of this claim." Traverse, pg. 150. Therefore, Jalowiec, "in support of his ineffective assistance of appellate counsel claim, incorporates by reference the arguments made elsewhere in this Traverse to support the merits of this claim in order to avoid redundancy." *Id*. A comparison of the issues in the forty-second claim for relief with the complete Amended Petition shows that almost all of the issues raised in this claim are presented elsewhere in the Amended Petition. As a result, those issues, or issues closely related thereto, have already been considered by this Court, and will not be addressed in this claim.

Three of the allegations listed above were not previously discussed. The Court cannot adequately address number seven on the above list, failure to address the trial court's ruling that the two previously made contradictory, written statements of Joann Fike had no ultimate inconsistencies, because Jalowiec has not identified the two statements in question. If they are somewhere in the record, the Court should have been informed as to their whereabouts to enable a comparison.

168

The issue raised in the second allegation not previously addressed by the Court, appellate counsels' alleged failure to address the trial court's erroneous trial phase instructions to the jury, implying that one is guilty of the crime if one fails to act, was discussed in *State v. McClain*, 2002 WL 1009899, ** 8-9 (Ohio App. 8 Dist. May 8, 2002).  The Ohio court of appeals used the *Jalowiec* case in determining that the trial court's charge on causation did not amount to error:

> The portion of the jury charge that Jalowiec claims is in conflict with former R.C. 2903.01(D) provided:
> " 'Cause' is an essential element of the offense charged in Count One.
> " 'Cause' is an act, or a failure to act, which in the natural and continuous sequence directly produces the death, and without which it would not have occurred.
> " 'Cause' occurs when the death is the natural and foreseeable result of the act, or the failure to act.
> "The Defendant's responsibility is not limited to the immediate or most obvious result of the Defendant's act, or failure to act.
> The Defendant is also responsible for the natural and foreseeable consequences or results that follow, in the ordinary course of events, from the act or failure to act."
> "We have stated that "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Price* (1979), 60 Ohio St.2d 136, 14 Ohio Op.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. Here, the overall charge indicated that the jury was required to find specific intent to kill and prior calculation and design before it could convict Jalowiec of aggravated murder. The instruction on foreseeable consequences does not constitute error, let alone plain error, since other instructions given by the court limited any prejudicial effect. *State v. Getsy* (1998), 84 Ohio St.3d 180, 196, 702 N.E.2d 866, 883. Accordingly, Proposition of Law XIII is overruled." *Jalowiec*, supra at 230-231, 744 N.E.2d 163.

Errors in jury instructions typically are matters of state law that do not warrant federal relief.  In order to warrant federal relief, the  instruction must violate a constitutional right.  *Estelle*, 502 U.S. at 72.  The court must determine whether there is a reasonable likelihood that the jury applied the instruction in a way that prevents consideration of constitutionally relevant evidence.  *Boyde v. California*, 494 U.S. 370, 380 (1990).  The impropriety of the instruction must be considered in the context of the instructions as a whole and of the entire record.  *Id.*  Since jury instruction errors

typically are matters of state law, the standard for demonstrating that a jury instruction caused constitutional errors in a habeas proceeding "is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

The instruction on causation given by the trial court is found in 4 Ohio Jury Instructions (2000) 64-65, Section 409.55.  As the state court found, the jury instruction as a whole limited any prejudicial effect.[24]

Failure to address the trial court's improper instructions to the jury in the guilt phase under a vicarious liability theory in a death penalty case constitutes the third allegation not addressed by the Court.  Jalowiec presents no argument to support this assertion.  Ohio Revised Code Section 2929.04(A)(7) allows imposition of the death penalty if the offense was committed while the offender was the principal offender or committed the murder with prior calculation and design. Jalowiec was charged as committing the murder with prior calculation and design.  An instruction on both is proper if the alternatives are given to the jury disjunctively in the same specification. *State v. Cook*, 65 Ohio St.3d 516, 527 (1992). T he state court found that the trial court properly defined principal offender as part of the complicity instruction.  The case involved the specification of killing to prevent testimony under R.C. 2929.04(A)(8); it did not involve the felony-murder specification of R.C. 2929.04(A)(7), where determination of principal-offender status may be critical.  The trial court's instruction on principal offender and aider and abetter were appropriate.

---

[24]  In *State v. Burchfield*, 66 Ohio St.3d 26, 263 (1993), the Ohio Supreme Court cautioned trial courts against using the term "foreseeable consequences," noting that the usefulness in murder cases is questionable, given its potential to mislead jurors.  However, the court determined that use of the term would not have led to reversal of the conviction.

170

Accordingly, the decision of the Ohio courts as to ineffective assistance of appellate counsel is not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

## FORTY-FIFTH CLAIM FOR RELIEF

Jalowiec asserts that Ohio's death penalty statutory scheme is unconstitutional on its face as applied to him, because it results in an improper deprivation of rights under the Eighth and Fourteenth Amendments.  No further explanation is submitted.  The Sixth Circuit has consistently upheld Ohio's death penalty statutes.  *Williams*, 380 F.3d at 961.  All of the contentions that have been presented have been considered and rejected.

(a) Lacks Effective Appellate Review

After the sentencer has found that a defendant convicted of aggravated murder is eligible for the death penalty, because one or more aggravating circumstances have been found beyond a reasonable doubt, a separate review of whether the aggravating circumstances outweigh the mitigating factors is conducted to determine the appropriateness of the death penalty.  *Buell*, 274 F.3d at 368.  The Ohio Supreme Court is required to review the trial court's decision and also independently determine whether the sentence is proportionate, non-excessive, and appropriate in accordance with the aggravating circumstances and mitigating factors.  This requirement gives the sentencing authority sufficient information to enable it to consider the character and individual circumstances of the defendant.  The court in *Buell*, 274 F.3d at 368-69, found that this procedure sufficiently discerns who deserves the death penalty.  *Benge v. Johnson*, 312 F. Supp.2d 978, 1035-36; *Jamison*, 100 F. Supp.2d at 765-66.

171

(b) Death By Electrocution Is Unconstitutional

Ohio Revised Code Section 2949.22 provides:

A) Except as provided in division (C) of this section, a death sentence shall be executed by causing the application to the person, upon whom the sentence was imposed, of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death.  The application of the drug or combination of drugs shall be continued until the person is dead.  The warden of the correctional institution in which the sentence is to be executed or another person selected by the director of rehabilitation and correction shall ensure that the death sentence is executed.

The Supreme Court has held the death penalty to be constitutional.  *Gregg v. Georgia*, 428 U.S. 153, 179 (1976).  And lethal injection has been held to be a constitutional method of execution.  *LaGrand v. Stewart*, 133 F.3d 1253, 1264 (9th Cir. 1998).  The Ninth Circuit noted that lethal injection is used by thirty-seven of the thirty-eight states that have the death penalty, indicating a national consensus.  *Cooper v. Rimmer*, 379 F.3d 1029, 1033 (9th Cir. 2004).  The Sixth Circuit has commented that, at this time, lethal injection is the law of the republic.  *Alley v. Little*, 2006 WL 1313365 * 2 (6th Cir. May 12, 2006), *cert. denied*, 126 S. Ct. 2973 (2006).  The Court recognizes that this issue is on appeal before the United States Supreme Court.  *Baze v. Rees*, 128 S. Ct. 34 (U.S. Sup. Ct. Sep.25, 2007).

(c) The Death Penalty Violates Due Process, Equal Protection and Constitutes Cruel and Unusual Punishment

In *Gregg*, 428 U.S. at 179, the Supreme Court rejected the argument that the death penalty is cruel and unusual punishment.  The most marked indication of society's endorsement of the death penalty for murder is the legislative response to the Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238 (1972).  Since *Furman*, the legislatures of at least thirty-five states have enacted new statutes that provide for the death penalty for at least some crimes that result in the death of another

172

person. The Congress of the United States, in 1974, enacted a statute providing the death penalty for aircraft piracy that results in death. These recently adopted statutes have attempted to address the concerns expressed by the Court in *Furman*, primarily (i) by specifying the factors to be weighed and the procedures to be followed in deciding when to impose a capital sentence, or (ii) by making the death penalty mandatory for specified crimes. But all of the post-*Furman* statutes make clear that capital punishment itself has not been rejected by the elected representatives of the people. *Gregg*, 428 U.S. at 179-81. Ohio's death penalty statutes satisfy the concerns identified in *Furman.*

(d) Prosecutor Has Uncontrolled Discretion

In *Gregg*, 428 U. S. at 188, the Supreme Court set forth the following capital sentencing procedures likely to prevent arbitrary and capricious imposition of the death penalty: (1) consideration of a pre-sentence report by the sentencing authority; (2) jury sentencing where the jury is adequately informed and given meaningful standards to guide its use of the information; (3) a bifurcated guilt phase/sentencing phase trial; (4) weighing of aggravating circumstances and mitigating factors; (5) a sentencing decision based on specific findings and; (6) meaningful appellate review. Ohio's death penalty statutes contain these preventative sentencing procedures. *Buell*, 274 F.3d at 367. *See Bryd*, 209 F.3d at 539.

(e) Ohio Death Penalty Fails to Provide Adequate Guidelines For Deliberation

There is no Eighth Amendment requirement for structuring the jury's deliberation. *Buchanan v. Angelone*, 522 U.S. 269, 276 (1998). Thus, the absence of any standard to balance the weight of mitigating circumstances with aggravating circumstances is inconsequential. *Dickerson v. Mitchell*, 336 F. Supp. 2d 770, 791 (N.D. Ohio 2004), *rev'd on other grounds*, 453 F.3d 690 (6th

173

Cir. 2006); *Hartman v. Bagley*, 333 F. Supp.2d 632, 675 (N.D. Ohio 2004); *aff'd,* 492 F.3d 347 (6th Cir. 2007); *Madrigal v. Bagley*, 276 F. Supp. 2d 744 (N.D. Ohio 2003).

(f) Death Penalty Mandatory

A sentencer is constitutionally required to have information sufficient to enable it to consider the character and individual circumstances of a defendant prior to the imposition of the death sentence. *Buell*, 274 F.3d at 368 (citing *Sumner v. Shuman*, 483 U.S. 66, 72 (1987)). A sentence of death is not automatically imposed, depending on certain types of murder. *Blystone v. Pennsylvania*, 494 U.S. 299, 305 (1990). As long as a death penalty is imposed after a determination that the aggravating circumstances outweigh the mitigating circumstances present in the particular crime committed by the particular defendant, or that there are no mitigating circumstances, the sentence is constitutional. *Id.*; *Buell*, 274 F.3d at 368; *Wiles v. Bagley*, 2005 WL 1181859 at * 42 (N.D. Ohio May 18, 2005).

In general, the Court finds that Ohio's death penalty statutory scheme is constitutional. The same reasoning applies to Jalowiec personally. That is, the Court concludes that the decision of the Ohio Supreme Court is not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

## FORTY-SEVENTH CLAIM FOR RELIEF

Free standing claims of actual innocence invoke *Herrera*, 506 U.S. at 398. The circuit courts are split on whether *Herrera* recognizes such a claim. Several courts have read *Herrera* as holding that the Court never meant to find that free-standing actual innocence claims are cognizable in habeas corpus. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Sellers v. Ward*, 135 F.3d 1333, 1338-39 (10th Cir. 1998); *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996). Other courts have

read *Herrera* as authorizing a free-standing claim of actual innocence, or have at least assumed for the sake of argument that habeas courts could consider free-standing claims of actual innocence. *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc) (holding that "free-standing" actual innocence is a proper claim, but not finding sufficient evidence of it); *Cornell v. Nix*, 119 F.3d 1329 (8th Cir. 1997); *O'Dell v. Netherland*, 95 F.3d 1214, 1246 n. 25 (4th Cir. 1996) (assuming for the sake of argument that "free standing" actual innocence states a claim, but noting that the *Herrera* opinion at 506 U.S. at 416-417 seems to dictate otherwise).

The Sixth Circuit has not definitively decided this issue.  In several unpublished decisions, the court held that claims of actual innocence have never been held to state a ground for relief, absent an independent constitutional violation in the underlying state criminal proceeding.  *Davis v. Burt*, 2004 WL 771224 at * 8 (6th Cir. Apr. 9, 2004); *Marine v. Mack*, 2004 WL 237430 at * 1 (6th Cir. Feb. 6, 2004); *Campbell v. Berghuis*, 2003 WL 22435657 at * 2 (6th Cir. Oct. 23, 2003). In a dissenting opinion in *House v. Bell*, 386 F.3d 668, 688-90 (6th Cir. 2004), a Sixth Circuit judge found that a free-standing claim of actual innocence was cognizable in a federal habeas proceeding.

In this instance, the Court assumes that Jalowiec may raise a "free-standing" claim of actual innocence.  The Supreme Court has indicated that, if such a claim exists, a petitioner must convince the Court that those new facts unquestionably establish the petitioner's innocence.  *Schlup*, 513 U.S. at 316-17; *Montgomery v. Bagley*, 482 F. Supp.2d 919, 990 (N.D. Ohio 2007).  In *D'ambrosio v. Bagley*, 2006 WL 1169926  * 37 (N.D. Ohio Mar. 24, 2006), the court used *Herrera*'s dissent standard, i.e., the petitioner must show that he is probably innocent.  *Herrara,* 506 U.S. at 442 (Blackmun, J., dissenting).

175

Jalowiec contends that his actual innocence can be proven by the alleged contradictions in statements found during discovery, as well as the purported change in testimony made by State witnesses in his trial, as compared to Danny Smith's trial.  Jalowiec likewise contends that his innocence is established by the following purported facts: that there were numerous other suspects; that Detective Leiby used improper tactics to secure Jalowiec's conviction; that Danny Smith manipulated the State's witnesses; that Michael Smith was not an innocent bystander; that the State failed to turn over *Brady* material; that Jalowiec had an alibi that was not presented to the jury; and that the connection between Jalowiec, the Smiths and Lally defies logic.

The Supreme Court has held that evidence kept from the jury in violation of *Brady* that goes to the credibility of a witness, or that the witness testified to under a grant of immunity, will seldom make a clear and convincing showing that no reasonable juror would have believed the witness's testimony.  *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992); *D'ambrosio*, 2006 WL 1169926 at * 39.

Michael Smith was a critical State witness.  The credibility of the other witnesses is not necessarily relevant to his testimony.  The jury was in the best position to assess his credibility.  Also, there may have been other individuals who had an interest in having Ronald Lally murdered, and the jury heard all of the evidence on that subject.

Jalowiec contends that the jury should have been informed of his alleged alibi.  If Jalowiec indeed had an alibi with his employer or his mother, as he insists, both of whom testified during mitigation for him, they would have testified as such.  Their failure to do so suggests that an alibi did not exist.

Jalowiec's argument that Danny Smith manipulated the witnesses, as seen in the difference between their testimony during the two trials, and bribed Carl Hartman is without merit.  The fact

that he was acquitted of Lally's murder does not in itself prove that the witnesses were manipulated. There is no evidence that Danny Smith personally was the cause of any change in testimony from trial to trial.

Jalowiec asserts that numerous suspects abound in this case.  However, there is no credible evidence warranting any further investigation of the suspects named by Jalowiec.

According to Jalowiec, Detective Leiby used threats and/or inducements in order to obtain statements from various State witnesses in Jalowiec's case.  Jalowiec argues that, if suspected witnesses or perpetrators did not tell Detective Leiby what he wanted to hear, he allegedly would do everything in his power to obtain from them evidence that supported Leiby's theory of Jalowiec's guilt.  Leiby would then purportedly use that information to scare or intimidate other potential witnesses.  Jalowiec further contends that, if witnesses did bend to Leiby's will and tell him what he wanted to hear, then he would allegedly take care of them with inducements and deals designed to appeal to their (or their loved one's) liberty interests.  Jalowiec also complains about Leiby's alleged *ex parte* contact with the trial judge in Danny Smith's bribery case, i.e., trying to convince the judge to give him a harsh sentence.  Despite Jalowiec's various accusations, these claims neither establish that Detective Leiby acted improperly, nor do they support his assertion of innocence.

Jalowiec next asserts that there is no logic for the connection between him and the Smiths. Jalowiec contends that the State's position, that he acted as a go-between to put Lally and the Smiths together on the night in question, is inherently illogical, when measured against the State's theory that Jalowiec had previously been involved in a life-threatening incident against Lally.  According to the State, after the arrests of Danny and Ray Smith, Lally had called the police during an incident at a Mr. Hero's restaurant when he was being physically threatened and intimidated by Danny Smith

and, by implication, Jalowiec.  Were that true, it allegedly makes no sense that, three months later, Lally would go out with Jalowiec, on the very night before he was to testify in the prosecution of Danny Smith.  This allegation does not support an assertion of innocence.  Lally was doing drugs with them, and expecting to be escorted to a bus out of town.  It cannot be speculated what Lally was thinking when he went with his eventual murderers.  In addition, this information was for the jury to evaluate, not for this Court to speculate.

The Court finds that, taking into consideration all of the claims alleged by Jalowiec, and all of the facts and circumstances presented, Jalowiec does not unquestionably establish his innocence or that he is probably innocent.

## IV. EXPANSION OF THE RECORD/MOTION FOR EVIDENTIARY HEARING

Jalowiec has submitted documents that the Court has allowed pursuant to his Motion for Expansion of the Record.  He argues that the additional documents support his contentions of alleged prosecutorial misconduct, alleged ineffective assistance of counsel, Detective Leiby's alleged improper tactics, and his claimed actual innocence.  His reasoning as to how the additional documents support his contentions are, or should have been, included in the Traverse.  In any event, the additional documents were reviewed.  Many of the exhibits contained evidence already presented to the Court and, hence, were considered in the Court's discussion of the individual claims.  The Court concludes that the remaining exhibits do not effect the Court's ruling as to any claim.

Jalowiec has moved for an evidentiary hearing on his constitutional claims.  (ECF 156).  As demonstrated by this Opinion, there is no evidence to require an evidentiary hearing.  Accordingly, the Court denies Jalowiec's Motion for Evidentiary Hearing.

178

## V. CONCLUSION

The Court must now determine whether a Certificate of Appealability ("COA") is appropriate for the claims raised in the Amended Petition.  In *Castro v. United States*, 310 F.3d 900 (6th Cir. 2002), the Sixth Circuit reasoned that, because a district judge who has recently denied a writ of habeas corpus will have "an intimate knowledge of both the record and the relevant law and could simply determine whether to issue the certificate of appealability when he denies the initial petition," it follows that a proper time to determine whether to grant a COA is at the conclusion of the opinion granting or denying the writ.  *Id.* at 901 (internal quotation marks and citations omitted). Neither a blanket grant, nor a blanket denial, of a COA is an appropriate means by which to conclude a capital habeas case, as it "undermine[s] the gate keeping function of certificates of appealability, which ideally should separate the constitutional claims that merit the close attention of counsel and this court from those claims that have little or no viability."  *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001); *see also Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001)(remanding motion for certificate of appealability for district court's analysis of claims).

28 U.S.C. § 2253 states in relevant part:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court.
***
(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253.  This language is identical to the requirements set forth in the pre-AEDPA statutes, requiring the habeas petitioner to obtain a Certificate of Probable Cause.  The sole difference between the pre- and post-AEDPA statutes is that the petitioner now must demonstrate

179

that he was denied a constitutional right, rather than the federal right that was required prior to the AEDPA's enactment.

The Sixth Circuit determined, in *Slack v. McDaniel*, 529 U.S. 473 (2000), that:

> [t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further."

*Id.* at 483-84 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).

The Court went on to distinguish the analysis a habeas court must perform, depending upon its finding concerning the defaulted status of the claim.  If the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong."  *Id.* at 484.  A more complicated analysis is required, however, when assessing whether to grant a COA for a claim that the district court has determined to be procedurally defaulted.  In those instances, the Court held, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* (emphasis supplied).

After taking the above standard into consideration, the Court finds that there are no issues meriting further review.  The Court will discuss each claim, and its defaulted status below.

Claims 1(b), 4, 5(b), 6, 7, 8, 9, 10, 11(a),(b), 12, 13(b), 14(a), 15, 16, 19(b), 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35(a),(b), (f), (i), (j), 36, 37, 38, 39, 41, 43, 44, and 46 are procedurally defaulted.  Sub-claim 1(b) (defective indictment), sub-claims 5 (b) and claim 6 (admission of co-defendant's statements), claim 7 (allowance of coroner's testimony), claim 8 (trial

180

court erroneously amended indictment), claim 10 (trial court refused to record all proceedings), sub-claims 11(b) (trial judge's alleged conflict), claim 12 (trial court's alleged bias), sub-claim 14 (a) (erroneous allowance of exhibits), claim 21 (prosecutorial misconduct, i.e., improperly vouching for the credibility of the State's witness, denigrated defense counsel, and argued in the mitigation phase that the jury can consider the nature and circumstances of the crime, also defaulted because it was not presented to the highest state court), claim 22 (prosecutorial misconduct, i.e., misstated evidence to the jury, argued facts not in evidence, mischaracterized defense arguments and made denigrating remarks regarding defense counsel during his closing arguments), claim 23 (prosecutor submitted his opinions to the jury as facts), and claim 26 (prosecutor misstated the Ohio sentencing statute during *voir dire*) are barred because they were not presented to the state court under the same theory as later presented to this Court.  Claim 20 (withholding witness statements and failing to disclose grants of immunity and inducements to testify), claim 24 (prosecutor withheld witnesses' inconsistent statements), claim 25 (failing to disclose mental health of Michael Smith), claim 27 (ineffective assistance of counsel for failing to investigate and present an alibi), claim 28 (ineffective assistance of counsel for failing to seek discovery, inadequately cross-examining witnesses, failing to adhere to a consistent theme, failure to request prior statements of witnesses, failure to object to Leiby's comments on the record, failure to ensure recording of all proceedings, and waiver of speedy trial rights), claim 29 (ineffective assistance of counsel for failing to move for change of venue), claim 30 (ineffective assistance for failing to investigate, obtain and utilize evidence supporting Jalowiec's innocence), claim 31 (ineffective assistance of counsel when lead counsel Joseph C. Grunda represented him while also representing an important State witness in another criminal case), claim 32 (ineffective assistance of counsel for failing to question prospective jurors on the alleged

extensive pretrial publicity), claim 33 (ineffective assistance of counsel for failing to request a jury instruction regarding the pretrial publicity related to his and Raymond Smith's trial), claim 34 (ineffective assistance of counsel for failing to conduct an investigation into the background of Michael Smith, and to adequately represent him at the guilt-innocence phase of the trial), claim 35 (f) (ineffective assistance of counsel for failing to cross-examine the State's witness), claim 36 (ineffective assistance of counsel for failing to investigate, prepare and present compelling mitigation evidence during the penalty phase of the trial), claim 37 (ineffective assistance of counsel for failing to gather significant documentation revealing his history, background and character and by failing to hire a qualified psychologist), claim 38 (ineffective assistance of counsel for failing to obtain the expert assistance of a neuropsychologist), claim 39 (ineffective assistance of counsel for failing to interview the State's mitigation rebuttal witnesses and/or present these witnesses on his behalf), and claim 44 (Ohio's post-conviction relief procedures are meaningless) are procedurally defaulted, because they were raised in a post-conviction petition that was dismissed as being successive. Claim 4 (improper admittance of co-defendant's confession inculpating Jalowiec), claim 13 (b) (improper admittance of crime scene photographs), claim 15 (improper jury charge on causation), claim 16 (acquittal first jury instruction) and claim 35 (i) (failure to object to closing arguments by the prosecution) are barred by Ohio's contemporaneous objection rule). Claim 9 (jurors' view of Jalowiec in shackles), claim 11 (a) (trial judge's alleged conflict), claim 19 (b) (improper removal of jurors who whose views on the death penalty would not impair the performance of their duties), claim 24 (prosecutor withheld witnesses' inconsistent statements, also barred because raised in a successive petition), claim 35 (a) (failure to object to jurisdictional venue), claim 35 (j) (cumulative ineffective representation), claim 41 (prosecutorial misconduct and

182

ineffective assistance of counsel resulted in the admission of other acts and the introduction of an extrajudicial statement of the co-defendant), claim 43 (state court's improper methods of review), claim 44 (Ohio's post-conviction relief procedures are meaningless, also barred because raised in a successive petition), and claim 46 (cumulative effect of all errors) are procedurally barred, because they were not raised in the state courts.  Claim 35 (b), (ineffective assistance of counsel for failing to object to significant portion of proceedings not transcribed), is barred because it was not raised as such in the state courts.  Claim 6 (admission of a co-conspirator's statement) is not preserved for federal habeas review, because it was not presented to the state courts as a federal constitutional claim.  Finally, claim 21 (alleged prosecutorial misconduct, i.e., improperly vouching for the credibility of the State's witness, denigrated defense counsel, argued in the mitigation phase that the jury can consider the nature and circumstances of the crime), in addition to being raised in a successive petition, was also defaulted, because it was not presented to the highest state court.  The Court finds that reasonable jurists would not debate the defaulted status of these claims, as Jalowiec has not shown cause and prejudice for default.  Thus, a COA is denied as to these claims.

If the Court were to have considered claims 1(b), 4, 5(b), 6, 7, 8, 9, 10, 11(a),(b), 12, 13(b), 14(a), 15, 16, 19(b), 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35(a),(b), (f), (i), (j), 36, 37, 38, 39, 41, 43, 44, and 46, it would have found that jurists of reason would not debate this Court's decision on the merits.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's claim 1 (b) (defective indictment).  Although venue must be proven at trial, it is not required to be included in the indictment.

In his fourth claim for relief, Jalowiec asserted that admittance of a co-defendant's confession inculpating Jalowiec was improper. The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's fourth claim for relief, because the Court found that the admission of the co-defendant's statement was harmless error.

In claims 5 (b) and 6, Jalowiec asserted that admission of a co-defendant's statements through State witnesses violated Ohio Evid. R. 801(D)(2). The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's sub-claim 5 (b) and claim 6, because the statements were allowed under a hearsay exception.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's seventh claim for relief (allowance of coroner's testimony). The claim was found to be without merit, because state law may not be a basis for federal habeas relief.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's eighth claim for relief (trial court erroneously amended indictment), because it is not necessary that conspiracy be alleged in the indictment to allow statements of a co-conspirator, and the court's instruction on "causation" did not weaken the requirement of specific intent.

In claim 9, Jalowiec argued that the jurors' view of him in shackles violated his constitutional rights. The risk of prejudice is slight, because the jurors' view of him in shackles was brief, inadvertent, and outside the courtroom. The Court finds that jurists of reason would not debate this Court's decision as to this claim for relief.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's tenth claim for relief (trial court refused to record all proceedings), because he has not shown any prejudicial effect.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's eleventh claim for relief, sub-claims (a), (b) (trial judge's alleged conflict, trial counsel's alleged conflict). There was nothing in the record showing that the judge was biased, and Jalowiec did not show that his counsel made a choice between alternative courses of action.

In his twelfth claim for relief, Jalowiec alleged that the trial court was biased against him in five instances. The Court denied this claim, because his shackling issue was previously rejected, he cited only state cases in support of his argument that restrictions were placed on his counsel, the trial court held an in camera inspection on Jencks material and found no inconsistencies, Detective Leiby's comments on the record were not heard by the jury, and there is no explanation why a conversation with detective Leiby should have resulted in the Judge's recusal or why the quashing of a subpoena issued to the judge was improper. The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's twelfth ground for relief.

Sub-claim 13 (b) involved improper admittance of crime scene photographs. The Court finds that jurists of reason would not debate this Court's decision as to claim 13 (b), because admission of evidence is a matter of state law, and alleged error, such as improper admittance of evidence, usually does not support a writ of habeas corpus. Also, admission of photographs alleged by Jalowiec to be prejudicial is within the sound discretion of the court. An appeal as to admission of photographs almost always fails, as long as the evidence is probative.

Jalowiec asserted in claim 14 (a) that exhibits were erroneously admitted. The Court finds that jurists of reason would not debate this Court's decision as to claim 14 (a), because evidence can be admitted under the co-conspirator's exception to the hearsay rule, even if the indictment does not contain a conspiracy count.

The fifteenth claim for relief involved an improper jury charge on causation. The Court finds that jurists of reason would not debate this Court's decision as to this claim because, as long as the overall instructions correctly included the elements of purposefulness and specific intent, the alleged improper charge on causation did not undermine the specific intent requirement. The trial judge instructed the jury to find specific intent to kill and prior calculation and design before it could convict Jalowiec, which was all that was necessary in the Sixth Circuit to overcome any error caused by the controversial causation charge.

The sixteenth claim for relief involved the trial court's first jury instruction given in the mitigation phase of the trial. The Court finds that jurists of reason could not debate this Court's decision, because the trial court's instruction followed R.C. § 2929.04(D)(2), instructing that the jury should recommend the sentence of death if it unanimously found by proof beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors. Further, the jury was not told that it was required to unanimously find that a death sentence was inappropriate before it could consider a life sentence.

The Court finds that jurists of reason would not debate this Court's decision as to claim 19 (b) (improper removal of jurors who whose views on the death penalty would not impair the performance of their duties), because the totality of their responses during *voir dire* provided ample support for the trial judge's decision to excuse them for cause.

Jalowiec asserted, in his twentieth claim for relief, that the State withheld exculpatory witness statements and failed to disclose grants of immunity and inducements to testify, in violation of *Brady*. The Court finds that jurists of reason would not debate this Court's decision as to Danny Smith's detailed conversations with Carl Hartman, because the Court cannot grant a writ based on

186

Ohio law, and the statements were not exculpatory to Jalowiec; as to Terry Hopkins statements, because Jalowiec has not shown these statements to be material; as to Lynn Altpater's statements, because they were not inconsistent with her trial testimony and poison was not used to kill Lally; as to Michael Smith's phone call to Detective Leiby, because his statement did not materially impeach his testimony, nor was it exculpatory to Jalowiec; as to police reports concerning a fight with Hicks, because the evidence showed that Hicks was struck in a manner that caused severe injury, and another witness said he was hit with a bat by Jalowiec; and, as to Michael Smith's statement to Detective Leiby that he wanted to "take the fall" for his brother's drug crime, because there was overwhelming evidence that Danny Smith bought drugs from Lally.  Further, the Court finds that jurists of reason would not debate this Court's decision as to grants of immunity to Joann Fike, because she did not provide any incriminating evidence; and, as to Tammy Green, because she did not testify.  The Court finds that jurists of reason would not debate this Court's decision as to inducements for the testimony of Sharon Hopkins, because any actions in favor of her boyfriend were not material; as to Michael Smith obtaining shock probation, because it was granted two years before he testified, and whether a letter he sent to the judge contained evidence of a deal was purely speculation.  The Court finds that jurists of reason may not debate this Court's decision as to Danny Smith's statement that he never thought that Jalowiec was involved in this murder, because it could have put the case in such a different light as to undermine the confidence in the verdict; as to Detective Leiby's promise of help on Lynn Altpater's husband's pending drug charges, because it could have been an inducement for her to testify against Jalowiec; and, as to Detective Leiby's gift of money and tires, which could have induced Joann Fike to testify.  Error, if any, was harmless.

187

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's twenty-first claim for relief (prosecutor misconduct, i.e., improperly vouching for the credibility of the State's witness, denigrated defense counsel, argued in the mitigation phase that the jury can consider the nature and circumstances of the crime, also defaulted because it was not presented to the highest state court), because the trial judge instructed the jury that closing arguments of counsel are to assist them and they are not evidence, the jury heard sufficient evidence showing that Jalowiec was present and participated in the murder by running over Lally with the automobile that Jalowiec was driving, and the evidence was strong so that statements vouching for a witness's credibility constitute harmless error.

In his twenty-second claim for relief, Jalowiec alleged prosecutorial misconduct, i.e., the prosecutor misstated evidence to the jury, argued facts not in evidence, mischaracterized defense arguments and made denigrating remarks regarding defense counsel during his closing arguments. The Court finds that jurists of reason would not debate this Court's decision as to this claim, because the competent proof was strong enough to compensate for any of the prosecutor's alleged improper statements, any prosecutorial misconduct as alleged in this claim most likely did not have an effect on the outcome of the trial, and such comments were either in rebuttal to defense counsel, or were fair comments on the evidence.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's twenty-third claim for relief (prosecutor submitted his opinions to the jury as facts), because the Court determined that the prosecutor, in his opening statement, was merely summarizing the evidence.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's twenty-fourth claim for relief that involved the prosecutor's failure to disclose witnesses' inconsistent statements, which occurred after Jalowiec's trial.  The Court held that the prosecutor would not know that these witnesses would make inconsistent statements at a later trial.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's twenty-fifth claim for relief (failing to disclose mental health of Michael Smith), because there was nothing in the record showing that the prosecution had possession of Michael Smith's health records at the time of Jalowiec's trial.  But, even more specifically, upon cross-examination during trial, defense counsel questioned him as to his psychiatric history, such as his attempts to commit suicide and his drug use.

In his twenty-sixth claim for relief, Jalowiec contended that the prosecutor repeatedly misstated the sentencing statute of the Ohio Revised Code during *voir dire*.  The Court finds that jurists of reason would not debate this Court's decision as to this claim, because the prosecutor's questions were intended to ascertain whether the prospective jurors could follow the law.  Further, the jury was able to listen to the evidence, and follow the Court's jury instructions.  The fact that the prosecutor mentioned the Ohio sentencing statute during *voir dire* did not likely have an affect on the outcome of the trial.

The twenty-seventh claim for relief concerned Jalowiec's contention that counsel were ineffective for failing to investigate and present an alibi.  The Court finds that jurists of reason would not debate this Court's decision as to this claim, because Jalowiec's employer and mother had an opportunity to bring this up in the mitigation hearing.  In fact, his mother was asked why she knew her son did not commit the murder.  It appears that an alibi was not available.

Jalowiec contended in his twenty-eighth claim for relief that his counsel were ineffective for failing to seek discovery, inadequately cross-examining witnesses, failing to adhere to a consistent theme, failing to request prior statements of witnesses, failing to object to Leiby's comments on the record, failing to ensure recording of all proceedings, and waiving of speedy trial rights. The Court finds that jurists of reason would not debate this Court's decision as to the failure to seek formal discovery, because Jalowiec's attorneys did, in fact, receive more discovery than that required by Crim. R. 16. They obtained the statements of Raymond Smith, as well as a transcript of his trial, and the order in that case for the medical records of Michael Smith. Michael Smith was deposed prior to trial, and counsel at trial obtained a copy of a prior statement to the police. There is no reference to witness Carl Hartman, Danny Smith or recordings made of Jalowiec and Danny Smith while they shared a jail cell. Jurists of reason would not debate this Court's decision as to deficient cross-examination, because Jalowiec failed to show prejudice from any deficiencies in cross-examination. The same applies to counsels' failure to adhere to a consistent defense theme, because counsel made a strategic decision, based on the evidence presented at trial. Jurists of reason would not debate this Court's decision as to failure at trial to request statements of witnesses, because Altpater's statement would not reasonably put the case in a different light, and possession of Williams' statement under Jencks would not have helped defense counsel. Also, jurists of reason would not debate this Court's decision as to counsels' failure to object to Leiby's comments on the record, because the jury did not hear his comments. Finally, jurists of reason would not debate this Court's decision as to counsels' failure to ensure recording of all proceedings, because no prejudice existed, and, as to Jalowiec's claim that he did not knowingly waive a speedy trial, because he did not allege and demonstrate prejudice.

In his twenty-ninth claim for relief, Jalowiec alleged that his counsel were ineffective for failing to move for change of venue based on pretrial publicity. The Court finds that jurists of reason would not debate this Court's decision as to this claim, because the underlying claim was found to be without merit in the first claim for relief.

The thirtieth claim for relief involved ineffective assistance for failing to investigate, obtain and utilize evidence supporting Jalowiec's innocence. The Court finds that jurists of reason would not debate this Court's decision as to this claim, because counsel were familiar with Raymond Smith's statement. Investigation of Raymond Smith would not have been helpful, because he was not willing to provide exculpatory evidence. Also, as previously stated, Jalowiec's employer and mother failed to testify that he was with them at the time of the murder.

The Court finds that jurists of reason would not debate this Court's decision as to the thirty-first claim for relief (ineffective assistance of counsel when lead counsel Joseph C. Grunda represented him while also representing an important State witness in another criminal case), because the underlying issue was found to be without merit in the eleventh claim for relief.

The Court finds that jurists of reason would not debate this Court's decision as to the thirty-second and thirty-third claims for relief (ineffective assistance of counsel for failing to question prospective jurors on the alleged extensive pretrial publicity and ineffective assistance of counsel for failing to request a jury instruction regarding the pretrial publicity related to his and Raymond Smith's trial), because prejudice was not shown by counsels' manner of conducting *voir dire*. Also, the judge instructed the jury to decide the case on the evidence, and admonished them not to listen to media coverage. Further, there was no proof of extensive media coverage.

The Court finds that jurists of reason would not debate this Court's decision as to the thirty-fourth claim for relief (ineffective assistance of counsel for failing to conduct an investigation into the background of Michael Smith, and to adequately represent him at the guilt-innocence phase of the trial), because Jalowiec's counsel had a transcript of Raymond Smith's trial, and knew that Michael Smith's medical and hospital records had been produced.  Michael Smith was deposed before Jalowiec's trial, and counsel at trial obtained a copy of a prior statement he made to police. On cross-examination during trial, counsel questioned him as to his psychiatric history, such as his attempts to commit suicide, and his drug use.  It appeared that counsel adequately attempted to discover grounds to impeach Michael Smith, and the jury was informed of his mental problems.

The Court finds that jurists of reason would not debate this Court's decision as to sub-claim 35 (a) (failure to object to jurisdictional venue), sub-claim 35 (b), (ineffective assistance of counsel for failing to object to significant portion of proceedings not transcribed), sub-claim 35 (f) (ineffective assistance of counsel for failing to cross-examine the State's witness), sub-claim 35 (i) (failure to object to closing arguments by the prosecution, and sub-claim 35 (j) (cumulative ineffective representation), because the underlying claims were submitted in other claims in the Amended Petition and found to be without merit.

The Court finds that jurists of reason would not debate this Court's decision as to the thirty-sixth claim for relief (ineffective assistance of counsel for failing to investigate, prepare and present compelling mitigation evidence during the penalty phase of the trial), because a similar issue was discussed in Jalowiec's thirty-seventh and thirty-eighth claims for relief, and found to be without merit.

The Court finds that jurists of reason would not debate this Court's decision as to the thirty-seventh claim for relief (ineffective assistance of counsel for failing to gather significant documentation revealing his history, background and character and by failing to hire a qualified psychologist), because the Court determined that Jalowiec experienced some minor injuries, was hyperactive when he was a child, and may have had a delusional belief that did not involve violence, and that the jury's knowledge of those incidents, his hyperactivity and his supposed delusion, would not have changed the outcome of the sentencing, especially given that there was no evidence of brain damage.

The Court finds that jurists of reason would not debate this Court's decision as to the thirty-eighth claim for relief (ineffective assistance of counsel for failing to obtain the expert assistance of a neuropsychologist) because a neuropsychologist was hired during discovery, and no new information was presented.

In his thirty-ninth claim for relief, Jalowiec asserted that his counsel were ineffective for failing to interview the State's mitigation rebuttal witnesses and/or present these witnesses on his behalf.  The Court finds that jurists of reason would not debate this Court's decision on this claim, because defense counsel could have reasonably decided to avoid extending what the jury may have perceived as a collateral trial involving violence and drug abuse by Jalowiec.  Further, the State's rebuttal witness, Kenneth Roland, supported Hicks's statement that Jalowiec had a bat during the bar fight.

Jalowiec alleged, in his forty-first claim for relief, that prosecutorial misconduct and ineffective assistance of counsel resulted in the admission of other acts evidence, and the introduction of an extrajudicial statement of the co-defendant.  The Court finds that jurists of reason

193

would not debate this Court's decision on this claim, because the issues raised in this claim were discussed and rejected in Jalowiec's fourth, seventeenth and thirty-ninth claims for relief.

The Court finds that jurists of reason would not debate this Court's decision on Jalowiec's forty-third claim for relief, involving the allegation that the state courts used improper methods of review, because it does not matter what harmless error standard is used, if, as here, there is no underlying constitutional error.

In his forty-fourth claim for relief, Jaloweic contends that Ohio's post-conviction relief procedures are meaningless. The Court finds that jurists of reason would not debate this Court's decision on this claim, because a state has no obligation to provide post-conviction review. A petition for writ of habeas corpus is not the proper method for a criminal defendant to challenge errors or deficiencies in state post-conviction proceedings, because the claims usually address collateral matters and not the underlying conviction giving rise to the defendant's incarceration. Also, Jalowiec provided no support or explanation for this conclusory allegation that petitioners cannot obtain discovery and present such material at an evidentiary hearing.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's forty-sixth claim for relief (cumulative effect of all errors), because the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.

As to Jalowiec's preserved claims, the Court finds that jurists of reason would not debate this Court's decision as to sub-claim 1 (a) of the Amended Petition (trial court lacked subject matter jurisdiction, personal jurisdiction and venue). The Court determined that there was substantial evidence at trial that the state court could have found, beyond a reasonable doubt, that some of the elements of the offense were committed in Lorain County.

194

In his second claim for relief, Jalowiec alleged that the trial court should have granted his motion for acquittal, when there was insufficient evidence of venue and prior calculation and design. The Court finds that jurists of reason would not debate this Court's decision as to this claim, because the Ohio Supreme Court applied the proper federal law in its analysis of Jalowiec's claim of insufficiency of evidence as to prior calculation and design, and cited specific evidence on record showing prior calculation and design from which a reasonable juror could find the presence of this element. Further, the Court determined that there was substantial evidence at trial that the state court could have found, beyond a reasonable doubt, that some of the elements of the offense were committed in Lorain County.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's third claim for relief (insufficient evidence to support his conviction for aggravated murder), because the evidence showed the existence of prior calculation and design.

Sub-claim 5 (a) was discussed in section II (admission of a co-defendant's statements through State witnesses violated Ohio Evid. R. 801(D)(2)). The Court finds that jurists of reason would not debate this Court's decision as to sub-claim 5 (a), because the statements were allowed under a hearsay exception.

Sub-claims 13 (a) and 14 (b) involved the admission of photographs of the victim and crime scene. The Court finds that jurists of reason would not debate this Court's decision on these sub-claims, because admission of evidence is a matter of state law, and alleged error, such as improper admittance of evidence, usually does not support a writ of habeas corpus. Also, admission of photographs alleged by Jalowiec to be prejudicial is within the sound discretion of the court. An appeal as to admission of photographs almost always fails, as long as the evidence is probative.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's seventeenth claim for relief (allowance of evidence on rebuttal of prior crimes of violence), because Jalowiec opened the door to rebuttal by giving an unsworn statement, and Hicks could have testified as to what happened in a bar fight, whether or not a police report mentioned the presence of a bat.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's sub-claim 19 (a) (improper removal of jurors who whose views on the death penalty would not impair the performance of their duties), because the totality of their responses during *voir dire* provided ample support for the trial judge's decision to excuse them for cause.

The Court finds that jurists of reason would not debate this Court's decision as to sub-claim 35 (c) (*voir dire*), sub-claim 35 (d) (co-defendant Ray Smith's statement), and sub-claim (h) (Petitioner's unsworn statement).  All of these sub-claims were found to be without merit in other claims.  Further, the Court finds that jurists of reason would not debate this Court's decision as sub-claim (e) (forensic expert), because the decision of the state court was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, nor did it result in an unreasonable determination of the facts in light of the evidence presented to the state court.  Sub-claim 35 (g) (jury instructions) would not be debatable among jurists of reason, because there is no constitutional error in instructing on all statutory mitigating factors, and the court made no comment on the factors not presented.  Also, the court defined principal offender as part of the complicity instruction.

The Court finds that jurists of reason would not debate this Court's decision as to the fortieth claim for relief (counsel failed to rehabilitate favorable jurors and failed to timely object to the

excusal of jurors for cause because of their views on the death penalty), because the underlying claim was rejected in Jalowiec's nineteenth claim for relief.

Jalowiec asserted in his forty-second claim for relief that he was denied effective assistance of appellate counsel when counsel failed to raise lead counsel's conflict of interest, the involvement of the trial judge in a witness's criminal case, venue and jurisdiction, failure to quote actual conversation between the judge and counsel about Jalowiec being handcuffed, failure to address witnesses' statements that were excluded from in camera inspection, failure to address trial counsels' neglect to use witness statements during cross-examination, failure to address the court's ruling that two statements of Joann Fike had no inconsistencies, failure to address that witness statements were exculpatory and should have been given to the defense, trial court error, prosecutorial misconduct, and that appellate counsel failed to present a meritorious brief to the appellate court.  The Court finds that jurists of reason would not debate this Court's decision as to this claim, because almost all of the underlying issues have been rejected.  As to the remaining sub-claims, Joann Fike's alleged contradictory statements could not be discussed, as they were not in the record.  The instruction on causation given by the trial court was taken from the Ohio Jury Instruction and, as the state court found, the jury instructions as a whole limited any potential prejudicial effect.  Finally, the trial court's jury instruction on principal offender was part of the court's complicity instruction.  The case involved the specification of killing to prevent testimony under R.C. 2929.04(A)(8); it did not involve the felony-murder specification of R.C. 2929.04(A)(7), where determination of principal offender status may be critical.  The Court finds that jurists of reason would not debate this Court's decision as to these remaining sub-claims.

The Court finds that jurists of reason would not debate this Court's decision as to the forty-fifth claim for relief (Ohio's death penalty statutes are unconstitutional), because all of his sub-claims have been previously rejected by the Sixth Circuit Court of Appeals.

The Court finds that jurists of reason would not debate this Court's decision as to Jalowiec's forty-seventh claim for relief (actual innocence), because he has not established that he is actually innocent.

For the reasons stated in this Opinion, this Court finds that none of the claims asserted in Jalowiec's Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254 are well-taken.  Further, the Motion for Evidentiary Hearing is **DENIED**.  (ECF 156).  Accordingly, Jalowiec's request for habeas corpus relief is **DENIED**.  The Petition is hereby **DISMISSED**.

Further, the Court finds no claims to be debatable among jurists of reason, as no ground for relief comes close to presenting a federal constitutional or legal violation.  The Court finds that jurors of reason would not find the Court's decision as to procedural default to be debatable.  Consequently, for the reasons set forth in the above certificate of appealability analysis, a certificate of appealability pursuant to 28 U.S.C. §2253(c) is **DENIED**.

**IT IS SO ORDERED.**


*s/ Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: January 31, 2008

198